ADAMS, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HOWE, et al., | ) | CASE NO.  5:06CV2779 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| THE CITY OF AKRON, | ) | |
| | ) | |
| Defendant. | ) | |

This action is before the Court upon plaintiffs' Motion Pursuant to Fed. R. Civ. P. 59(e) to Alter or Amend the Judgment in This Case (Doc. 280).  Plaintiffs request that the Court alter or amend the Judgment (Doc. 278), entered on October 2, 2009, to add 11 items.  For the reasons set forth in section II below, Doc. 280 is GRANTED IN PART.

This action is also before the Court upon defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Remittitur (Fed. R. Civ. P. 50(b) and 59) (Doc. 282).  In its Motion for Judgment as a Matter of Law, the defendant renews its motion with respect to plaintiffs' state and federal age and race discrimination claims.  In addition and in the alternative, the defendant moves for a new trial.  Even if the Court declines to order a new trial, the defendant requests remittitur of the damages to ensure the damages properly reflect the evidence in the record.  For the reasons set forth in section III below, the Renewed Motion for Judgment as a Matter of Law is DENIED.  The Court will not disturb the jury's verdict as to liability.  The Verdicts (Doc. 237), however, provide for uniform past and future monetary awards regardless of whether the individual passed, was promoted, or ready to retire.  This

amply demonstrates that the jury lost its way on the issue of  damages.  Therefore, the Court

GRANTS a new trial solely on damages.

Furthermore, this action is before the Court upon defendant's Motion to Alter or Amend

or, in the Alternative, for a New Trial or Remittitur on Plaintiffs' Title VII Claims (Fed. R. Civ.

P. 59) (Doc. 283).  Defendant moves the Court to alter or amend the Judgment (Doc. 278),

entered on October 2, 2009, finding in favor of the plaintiffs on their Title VII race

discrimination/disparate impact claim.  In addition and in the alternative, the defendant moves

for a new trial or a remittitur of excessive damage awards.  For the reasons set forth in section IV

below, Doc. 283 is GRANTED IN PART.  The Court grants a new trial solely on damages.

I.

Plaintiffs are all firefighter/medics for defendant City of Akron's Division of Fire

("AFD").  In December 2004, the defendant conducted promotional examinations for the AFD.

Plaintiffs participated in the promotional selection process seeking promotions to either the rank

of  Lieutenant or Captain.  The eligibility lists for each rank were established by the City of

Akron Civil Service Commission on April 4, 2005.  The eligibility lists for each rank remained

active for two years.

In the performance of the testing portion of the promotion process, the defendant retained

the services of a testing consultant, E.B. Jacobs, LLC ("EBJ").  EBJ was employed to prepare,

administer and score the promotional examinations for the ranks of Lieutenant and Captain.

Each promotional examination included a technical job knowledge examination consisting of

100 multiple-choice questions.  The promotional examination for the rank of Lieutenant also

included two oral assessment exercises:  a subordinate conference and incident command.  The

2

Lieutenant exam also included a written work sample exercise.  The promotional examination for the rank of Captain also included three oral assessment exercises, consisting of a subordinate conference, group exercise and incident command.  101 applicants completed the Lieutenant exam and 41 applicants completed the Captain examination.  Selections for promotion are made from each respective eligibility list under a "Rule of Three," which requires that for each vacant position, the three top-ranked candidates are considered for the vacancy.[1]  Promotion selections for each vacancy are drawn from any of the three candidates under consideration for that position.

Plaintiff Bradley Carr took and passed the Captain's examination, but was not promoted.  He is Caucasian and 40 years of age or over.  Plaintiff Jerry Elie took and failed the Lieutenant's examination.  He is African-American and 40 years of age or over.  On or about January 25, 2006, Carr and Elie filed separate charges alleging race and age discrimination with the Equal Employment Opportunity Commission ("EEOC").  *See* Docs. 80-33 at 9-10[2] and 80-33 at 21-22.  They filed their charges on behalf of themselves and "all others similarly situated."  *See, e.g., Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1198-99 (10th Cir. 2004) (applying single filing rule to case involving 26 plaintiffs).

---

[1]*See* Trial Transcript (Doc. 213) at 178 and 182.  Defendant conducted some interviews as part of the "Rule of Three" promotions.  It is undisputed, however, that the promotions occurred in a straight rank-ordering based on the written and oral exam results.

[2]Carr's Charge states in part: "11) From the Captain's eligibility list, 4 of the 9 promotions made to date have been African-American, who disproportionately scored higher than non-minority participants (violating the 4/5 rules under the EEOC Guidelines)"  *Id.* at 10.

3

On April 7, 2006, the plaintiffs filed *William Howe, et al. v. The City of Akron*, Summit County, Ohio Court of Common Pleas Case No. CV-2006-04-2310.  On November 16, 2006, the plaintiffs filed the case at bar under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq* . ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), against the defendant.  On October 17, 2007, this Court granted the plaintiffs leave to file a First Amended Complaint that includes their pendent state law claims.  *See* Order (Doc. 22).  Thereafter, the plaintiffs dismissed the state case without prejudice pursuant to Ohio R. Civ. P. 41(A)(1)(a).  The First Amended Complaint (Doc. 23) filed in the case at bar contains 12 counts.

Count I - Age Discrimination, disparate impact, 29 U.S.C. § 626, *et seq.*
Count III - Age Discrimination, disparate impact, Ohio Rev. Code § 4112.14
Count V - Age Discrimination, disparate impact, Ohio Rev. Code § 4112.02 and 4112.99

In these counts, 23 of the plaintiffs[3] allege that the promotional examinations for the ranks of Lieutenant and Captain had an illegal and impermissible adverse impact on firefighters on the basis of their age.  ¶¶ 46, 50, and 54.  No claim was specifically brought or pled under Ohio Rev. Code § 4112.02(N), which has a self-contained limitations period of 180 days.[4]

---

[3]William Howe, Bradley Carr, David P. Hull, David O'Neal, Leslie Gaiser, Michael Hausch, Jeffery Layne, Bruce Clough, Jerry Elie, Jeffery Schueller, Gregory Snyder, Michael Reed, Kerry Briggs, John Triola, Bradley Robson, Jerome Crawford, James Feeman, Frank Poletta, Jeffery Derrenberger, William R. Wilkinson, James Farina, Brenda Chapman, and Michael Harvey.

[4]R.C. 4112.02(N) states that a plaintiff filing suit under that section is thereafter "barred . . . from instituting a civil action under section 4112.14," and R.C. 4112.14(B) states that "any person instituting a civil action under this section is . . . thereby barred from instituting a civil action under division (N) of section 4112.02 . . . ."

Count II - Age Discrimination, disparate treatment, 29 U.S.C. § 626, *et seq.*
Count IV - Age Discrimination, disparate treatment, Ohio Rev. Code § 4112.14
Count VI - Age Discrimination, disparate treatment, Ohio Rev. Code § 4112.02 and 4112.99

In these counts, the same 23 plaintiffs as in Counts I, III, and V allege that older firefighter candidates for promotion for both the rank of Lieutenant and Captain were subjected to disparate treatment on the basis of their age in the administration and scoring of the promotional examinations.  ¶¶ 48, 52, and 56.

Count VII - Race Discrimination, disparate impact (Lieutenant's examination),
42 U.S.C. § 2000e, *et seq.*
Count IX - Race Discrimination, disparate impact (Lieutenant's examination),
Ohio Rev. Code § 4112.02(A)

In these counts, three of the plaintiffs[5] allege that the promotional examinations for the rank of Lieutenant had an illegal and impermissible adverse impact towards African-American firefighters on the basis of their race.  ¶¶ 58 and 62.

Count VIII - Race Discrimination, disparate impact (Captain's examination),
42 U.S.C. § 2000e, *et seq.*
Count X - Race Discrimination, disparate impact (Captain's examination),
Ohio Rev. Code § 4112.02

In these counts, 12 of the plaintiffs[6] allege that the promotional examinations for the rank of Captain had an illegal and impermissible adverse impact towards Caucasian firefighters on the basis of their race.  ¶¶ 60 and 64.

---

[5]Jerry Elie, Brenda Chapman, and Michael Harvey.

[6]William Howe, Bradley Carr, David P. Hull, David O'Neal, Leslie Gaiser, Michael Hausch, Gregory Snyder, John Triola, Bradley Robson, Jerome Crawford, James Feeman, and Jeffery Derrenberger.

Count XI - 42 U.S.C. § 1983, Equal Protection

In this count, all 30 of the plaintiffs[7] allege that by administering promotional examinations that have no rational relationship to the ranks for which the defendant purportedly tested, defendant has violated the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.  ¶ 66.

Count XII - 42 U.S.C. § 1983, Equal Protection

In this count, 15 of the plaintiffs[8] allege that by preparing, administering and scoring promotional examinations that have an adverse impact by race and the failure of the defendant to exercise reasonable care in the performance of the duties of preparation, administration and scoring of the promotional examinations, defendant has violated the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.  ¶ 68.

Defendant filed a Motion for Summary Judgment (Doc. 80).  It moved the Court for summary judgment on all claims contending, in sum:  (1) that plaintiffs' claims under Title VII and the ADEA are time-barred by the applicable statute of limitations; (2) that no background evidence supports a reverse discrimination claim; (3) that plaintiffs' claims for race and age discrimination under Ohio Rev. Code § 4112.02 are time-barred by the 180-day statute of limitations; (4) that plaintiffs' claims for age discrimination under Ohio Rev. Code § 4112.14 must be dismissed because there is no evidence to support a claim on either examination, particularly Captain; (5) that the plaintiffs have failed to state a claim for any Section 1983 claim

---

[7]This is the only count that includes Brian Santee, William Yoxthimer, Robert Alestock, Brian Weaver, Brian Jaggers, Kevin Hagan, and Dean Plevrakis.

[8]William Howe, Bradley Carr, David P. Hull, David O'Neal, Leslie Gaiser, Michael Hausch, Jerry Elie, Gregory Snyder, John Triola, Bradley Robson, Jerome Crawford, James Feeman, Jeffery Derrenberger, Brenda Chapman, and Michael Harvey.

6

and lack any evidence to support any claim of intentional discrimination based on race, age or

the Fourteenth Amendment; and (6) that, even if the plaintiffs could proceed with their adverse

impact claims based on race or age, the defendant validated the 2004 Lieutenant's and Captain's

examinations.  Defendant stated at page 11 of its Motion for Summary Judgment:

> The Sixth Circuit focuses on the passing rate when examining adverse impact
> even in promotional testing arenas.  *UBFF v. City of Akron*, 81 F.3d 161 (6th Cir.
> 1996); *N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162 (6th Cir. 1989).  Most
> recently in *Isabel*, our circuit examined the passing rate of candidates when
> addressing disparate impact in a promotional exam.  *Id.* at 408-[09].  Looking at
> both tests pass rates, there is not adverse impact.

Doc. 80 at 20 n. 11.  The Court denied defendant's Motion for Summary Judgment because it

found a genuine issue of fact for the jury to determine.  *See* Memorandum of Opinion and Order

(Doc. 167).  The Court also deferred resolving the issue of whether the plaintiffs needed to make

an election of remedies between Ohio Rev. Code §§ 4112.14 and/or 4112.02 and 4112.99, until

*Meyer v. United Parcel Service, Inc.*, 118 Ohio St.3d 1432 (2008), was decided and the Ohio

Supreme Court ruled that either election is required or not for age claims under § 4112.99.  *Id.* at

10.

The Court subsequently granted defendant's Motion for Reconsideration (Doc. 169) of

the denial of summary judgment on Counts XI and XII.  The Court entered summary judgment

in favor of the defendant and against all 30 of the plaintiffs on Count XI (42 U.S.C. § 1983,

Equal Protection) and against plaintiffs William Howe, Bradley Carr, David P. Hull, David

O'Neal, Leslie Gaiser, Michael Hausch, Jerry Elie, Gregory Snyder, John Triola, Bradley

Robson, Jerome Crawford, James Feeman, Jeffery Derrenberger, Brenda Chapman, and Michael

Harvey on Count XII (42 U.S.C. § 1983, Equal Protection) of the First Amended Complaint.

*See* Order (Doc. 176).

The Court conducted the trial "on the clock."  *See* Order (Doc. 146).  This matter was tried to a jury of seven members.[9]  At the close of plaintiffs' case, the parties stipulated to a dismissal of Counts II, IV, and VI for disparate treatment on the basis of plaintiffs' age in the administration and scoring of the promotional examinations.  *See* Doc. 216; Trial Transcript (Doc. 219) at 2.  Therefore, the Court dismissed the disparate treatment claims.  *See* Marginal Entry Order (Doc. 218).

The Court expressed doubt that the Disparate Impact - Captain Age Claims would go to the jury.  At the close of plaintiffs' case, the Court stated:

> The Court will take the matter under advisement.  We will advise the parties on Wednesday morning as to which, if any, of the claims may be subject to dismissal under Rule 50.
>
> I suspect, perhaps, the one most tenuous is the age claim.  There is no, admittedly no four-fifths Rule violation, and there is a dearth of evidence in the record to support that claim as to the captain, the captain promotion.

Trial Transcript (Doc. 212) at 282.  At the close of all the evidence, the Court opined:

> . . . Based on what I know here today, I have grave doubts as to whether the captain's exam, the challenge -- whether that claim will go to the jury based on all that we've heard today and all the evidence in the record which is -- I think we've already characterized it as limited at best, limited, if any evidence to support that claim.  And so we will -- obviously we'll finalize our ruling, but I have grave doubts as to whether that claim is going to remain for the jury's consideration.

Trial Transcript (Doc. 233) at 61.  At the close of all the evidence, the plaintiffs voluntarily dismissed their allegations that the promotional examinations for the rank of Captain had an illegal and impermissible adverse impact on firefighters on the basis of their age.  *See* Trial Transcript (Doc. 309) at 2.

---

[9]On December 18, 2008, the Court excused Juror No. 8.  *See* Trial Transcript (Doc. 223) at 3.

8

Defendant's motion for judgment as a matter of law made at the close of all the evidence was denied and the case was submitted to the jury.  Trial Transcript (Doc. 233) at 68.  The jury sent the following questions (Doc. 240) to the Court during its deliberations:

1  Did any plaintiff quit the fire dept to pursue another career?  If so . . . when did he/she terminate employment with fire dept.  who?

2  Can we have a list of each plaintiff's age when they plan on retiring.

3  Can we have access to the info written on the board during closing arguments.

4  Can we have the annual salary for each plaintiff for 2004?

5  Can we indicate a percentage for compensatory damages rather than a dollar figure

The Court responded: "As to questions 1 through 4 you are instructed that you are to rely on your memory in recalling the evidence presented to you during the trial.  As to question 5 the answer is no." *Id.*  At the close of a 16-day trial where four experts and dozens of witnesses testified, the jury rendered its general verdicts accompanied by answers to interrogatories (Doc. 237).  The verdicts in favor of the plaintiffs provide for uniform past and future monetary awards regardless of whether the individual passed, was promoted, or ready to retire.   Each Lieutenant Candidate was awarded $9,000 in compensatory damages and $72,000 in front pay.  Each Captain Candidate was awarded $10,000 in compensatory damages and, with the exception of Cynthia J. Crawford (as Executrix of the Estate of Jerome K. Crawford, Deceased), $80,000 in front pay.[10]  The Court subsequently entered Findings of Fact and Conclusions of Law

---

[10]Plaintiffs presented evidence that for each delayed or lost promotion, the foregone raises would have a cumulative effect on the compensation of each plaintiff of almost $20,000 in wages after three years at the Lieutenant level.  *See* Plaintiffs' Exhibit 25.  For the Captain Candidates, the cumulative effect of annual compensation was over $23,000 after three years..  *See* Plaintiffs' Exhibit 26.  Roughly an average of 7 years front pay and pension adjustments were awarded by the jury.

9

(Doc. 277) resolving plaintiffs' Title VII race discrimination/disparate impact claims.

Furthermore, the Court entered a Judgment (Doc. 278) in accordance with the jury's verdicts.

The Court concluded that the AFD's 2004 promotional examination adversely impacted 12

Captain Candidates on the basis of race (Caucasian),[11] adversely impacted three Lieutenant

Candidates on the basis of race (African-American), and adversely impacted 11 Lieutenant

Candidates based on age.[12]

II.

In their Motion to Alter or Amend the Judgment (Doc. 280), the plaintiffs request that the

Court alter or amend the Judgment (Doc. 278) to add the following 11 items:

> 1) back pay, to be calculated for each prevailing Plaintiff through the date of judgment or promotion (for any Plaintiffs promoted); 2) "grossing up" for tax liability on wages paid on lump sum payments, that Plaintiffs should be paid but for the discrimination that occurred; 3) prejudgment interest, calculated at Ohio rates pursuant to R.C. 5703.47 and Ohio's reporting rate, from April 5, 2005, compounded annually, through the date of judgment of the Court as part of the compensatory damages due Plaintiffs; 4) equitable relief [ ] in the form of promotion to any prevailing Plaintiff electing such relief; 5) equitable relief for all prevailing Plaintiffs in the form of pension adjustments; 6) per the Court's award of post-judgment interest, Plaintiffs request that it be in the amount of five percent (5%), calculated at the Ohio (R.C. 5703.47 and 1343.03) rate as of October 2, 2009, until such time as Defendant pays the judgment as to all prevailing Plaintiffs; 7) as undisputed by Defendant, posthumous promotion and all proper adjustments for Jerome Crawford, deceased Plaintiff as of September 4, 2008, payable to his estate; 8) permanent injunctive relief in the form of a new and more equitable, valid promotional selection process than that used to discriminate against Plaintiffs in this case, and precluding any test not job-related and having an adverse impact against any protected individual or group, set forth in a consent

---

[11]William Howe, Bradley Carr, David Hull, David O'Neal, Leslie Gaiser, Michael Hausch, Gregory Snyder, Jeffrey Derrenberger, John Triola, Bradley Robson, Cynthia J. Crawford (as Executrix of the Estate of Jerome K. Crawford, Deceased), and James Feeman.

[12]Jeffery Layne (age), Bruce Clough (age), Jerry Elie (age and race), Jeffrey Schueller (age), Michael Reed (age), Kerry Briggs (age), William Wilkinson (age), Frank Poletta (age), James Farina (age), Michael Harvey, (age and race) and Brenda Chapman (age and race).

10

decree or other continuing judgment; 9) appointment of a Receiver to oversee development, implementation and administration of any new promotional process; 10) continuing jurisdiction of this Court over all of the issues in this case until fully resolved to the satisfaction of the Court and parties, and 11) any other relief as set forth in Plaintiffs' motions for equitable relief filed following the end of trial and the judgment entry of the jury's verdicts (Docket Nos. 256, 257, 258).

Doc. 280 at 1-2.

The Court was informed during the Motion Hearing held on April 30, 2010, that two of the plaintiffs are no longer seeking promotion to the rank of Captain.  Furthermore, the first DROP retirees "have to hit" on January 27, 2011.

The Court will take up each of plaintiffs' requests at the new trial on damages.

III.

With regard to the Renewed Motion for Judgment as a Matter of Law, the Court will "consider[ ] the evidence in a light most favorable to the party against whom the motion is made, giving that party the benefit of all reasonable inferences," *Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465, 469 (6th Cir. 1993), "without weighing the credibility of witnesses or considering the weight of the evidence." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1163 (6th Cir. 1990) (quoting *Gootee v. Colt Industries, Inc.*, 712 F.2d 1057, 1062 (6th Cir. 1983)).  The jury's verdicts must be supported by "substantial evidence." *Power-Tek Solutions Services, LLC v. Techlink, Inc.*, 403 F.3d 353, 358-59 (6th Cir. 2005).  If the evidence points so strongly in favor of the movants that reasonable minds could not reach a different conclusion, judgment as a matter of law is appropriate. *Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006); *Cline v. U.S.*, 997 F.2d 191, 196 (6th Cir. 1993).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  For

11

the reasons that follow, the Court will allow the judgment--entered in accordance with the jury's general verdicts accompanied by answers to interrogatories--to stand.

Defendant argues it is entitled to judgment as a matter of law for four reasons.  First, there is insufficient evidence of a violation of the 4/5ths Rule, *see* 29 C.F.R. § 1607.4D, as a matter of law when the only relevant statistics pass rates are analyzed.  Second, even if the 4/5ths Rule was violated, the small sample sizes and individualized factors preclude a finding of statistically significant evidence to support a finding of adverse impact.  Third, the plaintiffs offered no evidence causally connecting any impact to race or age.  Finally, the defendant established job relatedness and the plaintiffs presented no evidence of an alternative testing method that was equally valid with less alleged adverse impact.  Alternatively, the defendant contends that, at a minimum, it is entitled to judgment as a matter of law on the Captain Candidates' claims, the Lieutenant Candidates' time-barred state-based age claims, and on four individual Lieutenant Candidates' claims.

### A.

Defendant argues there is insufficient evidence of a violation of the 4/5ths Rule as a matter of law when the only relevant statistics pass rates[13] are analyzed.  Dr. Richard Jeanneret, a defense witness and the *only* expert to testify on the application of the 4/5 Rule to pass rates,[14] testified that in regard to the Captain's examination, 81% of Caucasian Candidates passed the Captain examination (26/32) and 78% of African-American Candidates passed (7/9).  Applying

---

[13]Table 1 from Dr. Richard Jeanneret's report (Deft Ex. 1071) is a list of all the pass rates.

[14]The jury determined that the plaintiffs' experts were more credible and the Court is compelled to defer to the jury's judgment.  *U.S. v. Alpine Industries, Inc.*, 352 F.3d 1017, 1024-25 (6th Cir. 2003).

the 4/5th Rule:  81% of 78% is .963, and 96.3% is far greater than 80%.  In regard to the

Lieutenant's examination, 75% of African-American applicants passed the examination (15/20)

and 85% of Caucasian applicants passed (69/81); 75% of 85% is .882 and 88.2% is greater than

80%.  Similarly, 76% of applicants 40 years and older passed the Lieutenant's examination

(29/38) and 87% of applicants under 40 years old passed (55/63); 76% of 87% is .874; and

87.4% is greater than 80%.  *See* Trial Transcript (Doc. 223) at 90-92.

The central issue is how to define "selection."  According to the defendant, selection is

properly defined under the facts of this case as selection for the eligibility list, as U.S. District

Judge David D. Dowd, Jr. did in *United Black Firefighters Ass'n v. City of Akron*, No.

5:90CV1678, 1994 WL 774510 (N.D.Ohio Aug. 31, 1994), and as the Sixth Circuit affirmed,

No. 94-3961, 1996 WL 125043 (6th Cir. March 20, 1996).  Plaintiffs, on the other hand, contend

that promotion rate is the proper selection rate to use under a disparate impact theory.

The Uniform Guidelines on Employee Selection ("UGES"), 29 C.F.R. § 1607.1-.16,

interpret the Civil Rights Act and include the 4/5ths Rule, 29 C.F.R. § 1607.4D.  The 4/5ths Rule

provides that a selection rate for any group that is less than 4/5ths (or 80%) of the selection rate

for the group with the highest rate is considered as evidence of adverse impact.  The UGES are

entitled to deference on evaluating employee selections, including promotions.

A greater than 4/5ths rate may be considered as a lack of evidence of adverse impact.

This statistic is considered a "rule of thumb."  44 Fed.Reg. 11996, 11998 (1979).  It is not

an absolute, bright line test for adverse impact.  As such, a violation of the 4/5th Rule does not

require that the jury find that there was an adverse impact.  Additionally, compliance with the

4/5th Rule does not require that the jury find that there was no adverse impact.

13

Furthermore, the plaintiffs may rely on alternative statistical analyses, such as the T- and Z-Tests, "chi-square," binomial, and Fisher's exact test, to prove an adverse impact.  Likewise, the defendant may rely on alternative statistical analyses to disprove an adverse impact.  *Isabel v. City of Memphis*, 404 F.3d 404, 412 (6th Cir. 2005).  As a result, the jury looked to the sum of the statistical evidence in the case at bar prior to making its determination in favor of the plaintiffs on adverse impact.

Defendant contends that the plaintiffs only challenged the exam itself by alleging that the development, administration and scoring of the exam was flawed.  Defendant maintained during the Motion Hearing held on April 30, 2010 that *Ricci v. DeStefano*, 557 U.S. ----, 129 S.Ct. 2658 (2009) compels this Court to look at the pass rates because that is a time at which you resolve challenges to the exam.  According to the defendant, the point in time that you look at these disparate impact cases is when the eligibility list is made up; and when you do that in the case at bar, it is absolutely undisputed that you have no 4/5th Rule violation or any alternative statistical violation.  The Supreme Court stated:

> Our holding today clarifies how Title VII applies to resolve competing expectations under the disparate-treatment and disparate-impact provisions.  If, after it certifies the test results, the City faces a disparate-impact suit, then in light of our holding today it should be clear that the City would avoid disparate-impact liability based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability.

*Ricci*, 129 S.Ct. at 2681.

Because the jury has rendered verdicts and the Court has entered Findings of Fact and Conclusions of Law in the case at bar, *Ricci* may not be fully controlling.  In *Ricci*, the City of New Haven had discarding the results of a promotional examination, and the Supreme Court confronted the issue of whether New Haven could defend a violation of Title VII's disparate

14

treatment provision by contending that its challenged employment action was an attempt to comply with Title VII's disparate impact provision.  The Court held that "race-based action like the City's in this case is impermissible under Title VII unless the employer can demonstrate a strong basis in evidence that, had it not taken the action, it would have been liable under the disparate-impact statute."  *Id.* at 2664.  The *Ricci* Court concluded that New Haven would not likely have been liable under a disparate impact theory if it certified the examination results.  *See id.* at 2681.  In doing so, the Court relied on the various steps that New Haven took to validate its civil service examination.  *Id.* at 2678-79.

*Ricci* is a disparate treatment case where the City voluntarily set aside the results.[15]  The City, therefore, never got to the promotion process.  There also was no legal challenge to the exam.  Unlike in the case at bar, the parties in *Ricci* did not dispute that the exams were valid.  Furthermore, there was no issue as to using pass rates or promotion rates.  The racial adverse impact in pass rates in *Ricci* was significant, and the petitioners did not dispute that the City was faced with a prima facie case of disparate impact liability.  129 S.Ct. at 2677.

 Fed. R. Civ. P. 50(a) allows a party to bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury."  Rule 50(a)(2).  The motion

> informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

*Ford v. County of Grand Traverse*, 535 F.3d 483, 491-92 (6th Cir. 2008) (quoting the Advisory Committee Note to the 2006 Amendment to Rule 50).  If the Court denies that motion and the

---

[15]Defendant "readily acknowledges that the ultimate legal issue in *Ricci* (whether New Haven had engaged in discriminatory *treatment* by rejecting test results) is different from the legal issue" in the case at bar.  Doc. 285 at 21 (emphasis in original).

15

case is submitted to the jury, "the movant may file a renewed motion for judgment as a matter of law" within 28 days after the entry of judgment on the verdict. Rule 50(b).

Defendant never mentioned "pass rates," which is a term that would have put the Court and the plaintiffs on notice as to defendant's argument. *See* Trial Transcript (Doc. 233) at 27-61. The Court holds that the defendant waived this argument by failing to raise any issue as to pass rates being the proper standard in a pre-verdict Motion for Judgment as a Matter of Law. *See American and Foreign Ins. Co. v. Bolt,* 106 F.3d 155, 160 (6th Cir. 1997) (noting that the purpose of this policy is "to narrowly restrict the grounds used to overturn a jury verdict by requiring that parties raise important issues *before* the case is submitted to the jury" (emphasis in original)). A post-verdict renewal of a motion for judgment as a matter of law may not advance additional grounds that were not raised in the pre-verdict motion. *See*, *e.g.*, *Ford*, 535 F.3d at 491; *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 316 (6th Cir. 2007); *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 361 (6th Cir. 2006).

To the extent that the case at bar is distinguishable from *Bolt* because the defendant did raise a brief argument that pass rates is the proper standard in its unsuccessful motion for summary judgment, that is a distinction without a difference. *Parker v. Gerrish*, 547 F.3d 1, 12 (1st Cir. 2008) ("even if a defendant raises qualified immunity at summary judgment, the issue is waived on appeal if not pressed in a Rule 50(a) motion"). Defendant's failure to make a pre-verdict motion for judgment as a matter of law under Rule 50(a) on the grounds of pass rates is the appropriate standard precludes it from making a post-verdict motion under Rule 50(b) on that ground. *See Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010) (qualified-immunity claim waived).

16

The case the defendant cites in support of its position on the waiver issue is *Paschal v. Flagstar Bank*, 295 F.3d 565 (6th Cir. 2002), *cert. denied*, 537 U.S. 1227 (2003).  But the Court finds that case readily distinguishable from the case at bar.  The Court of Appeals for the Sixth Circuit will generally not rule on an appeal of the denial of summary judgment if the movant subsequently loses after a full trial on the merits.  *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 537 (6th Cir. 2003).  The Sixth Circuit may hear an appeal of the summary judgment in the case at bar, if the denial of defendant's Motion for Summary Judgment was based on a pure question of law rather than on a material issue of facts.  *Paschal*, 295 F.3d at 572 (appellate review not waived where the appellant failed to raise statute of limitations issue when it moved for judgment as a matter of law after the jury rendered its verdict).  There is a difference, however, between waiving an argument in the district court by failing to raise it in a Rule 50(a) motion and whether appellate review has been waived.

A review of defendant's proposed jury instructions (Docs. 138, 148, and 224) reveals the defendant did not propose an instruction that pass rates is the proper standard.  *See Conseco Finance Servicing Corp. v. North American Mortgage Co.*, 381 F.3d 811, 822 n.7 (8th Cir. 2004) (If North American's legal theory had been conceived prior to trial, it would and should have asked for a jury instruction explaining the theory; and by failing to do so, North American forfeited its argument to the extent that it was not forfeited by the failure to assert those grounds in their Rule 50(a) motion.)  Furthermore, during the charging conference regarding jury instructions, the defendant did not cite any case law, much less mention, that the only relevant statistics were pass rates.  *See* Trial Transcript (Doc. 309) at 4-44.

17

Assuming arguendo that the defendant has not waived the right to make this argument, the plaintiffs called into question the promotion rates, not pass rates, as the selection criteria for a 4/5th Rule violation.  In *Phillips v. Cohen*, 400 F.3d 388 (6th Cir. 2005), a case where the test was in rank-order, rather than pass/fail, the Sixth Circuit, citing *Connecticut v. Teal*, 457 U.S. 440, 448 (1982), stated "[i]n cases involving promotion policies, the relevant inquiry is comparing the number of protected group members benefitting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group."  *Phillips*, 400 F.3d at 399; *see also* Adoption of Questions and Answers to Clarify and Provide a Common Interpretation of the Uniform Guidelines on Employee Selection Procedures, 44 Fed.Reg. 11996, 11998, Question and Answer 12 (1979).

Even Dr. Rick Jacobs, a defense expert witness, testified on direct examination about promotion rates as the selection criteria:

> Q.     In looking at the examination results from both tests -- I'm going to ask you some questions.  And first we will talk about the lieutenant's test.  Did you examine the promotion rates based on be (sic) age and race?
> A.     I have.
> Q.     And what did you conclude with regard to an examination of the promotion rates and any type of evaluation that you did?  What did you do and what did you conclude?
> A.     The guidelines talk about evaluating adverse impact on *promotion rates* based on the four-fifths or the 80 percent rule.  They also talk about the use of statistical tests [--] I actually did both.  And for lieutenant -- on the lieutenant exam, based on race, the *promotion rates* showed a violation of the 80 percent rule.  That is, the *promotion rates* of the black candidates was not within 80 percent of the *promotion rates* of white candidates.
> We then went on to do the statistical test of that same data.

Trial Transcript (Doc. 219) at 62-63 (emphasis added).

> A.     . . . Four-fifths rule is also referred to as the 80 percent rule because 4 divided by 5 is 80.  Is determined by taking the lower *promotion rate* and divide it is (sic) by the higher promotion rate.

18

*Id.* at 68 (emphasis added).

> Q.      And from those differing observations about four-fifths rule, what conclusions, if anything, have you made with regard to the use of the four-fifths rule in this situation and the analysis of adverse impact?
> A.      It's one indicator, and there are other indicators, and in the presence of this instability we should look at as many indicators as we can.  So not only four-fifths rule but the statistical test *promotion rates* and then the statistical rest of the underlying test scores.
> Q.      And you looked at all of those, am I correct?
> A.      Yes, I have.
> Q.      And in particular, on the lieutenant's examination based on race, what is your conclusion on whether or not there is adverse impact against African-American candidates on the lieutenant's examination?
> A.      I do not believe there is evidence to support adverse impact.
> Q.      And what are you relying on to make that conclusion?
> A.      The statistical test significance on the *promotion rates* as well as the highly similar score values for the final promotion score.

*Id.* at 73 (emphasis added).

> Q.      And what is it that you base your opinion on on age with regard to the lieutenant's examination?
> A.      The evidence in its entirety, four-fifths rule violation, as well as the statistical test of the *promotion rate* as well as the statistical test of the mean difference.

*Id.* at 74 (emphasis added).

> Q.      And what do you base that opinion on that there is not adverse impact against white candidates on the captain's test?
> A.      The compilation of information, four-fifths rule violation, and it's [unstable], the statistical tests which showed no adverse impact on the *promotion rates*, and the statistical tests that showed no significant difference between the final promotion scores of black and white candidates.

*Id.* at 76 (emphasis added).  Dr. Jacobs also testified on cross-examination:

> Q.      In the questions and answers, sir, it includes number 12, and how you compute adverse impact.  And the uniform guidelines specify very clearly -- and I highlighted one section there that you divide the number of persons selected from a group by the number of applicants from that group.  And that's how you basically calculate adverse impact, comparing those ratios?
> A.      Correct.

19

*Id.* at 95.

Dr. Richard Jeanneret, another defense expert witness, also testified on cross-examination about promotion rates as the selection criteria.  He stated for captain -- on the examination for the rank of Captain, based on race, the promotion rates showed a 4/5th Rule violation:

> Q.      If we do the same thing with Exhibit 1076, and we talk about initially the protected group and we look at the -- what is now the third line under protected group where it says white, promotions from eligibility list?
> A.      Yes, sir.
> Q.      And we go over to the last column on four-fifths rule, four-fifths rule is .38.
> That's a violation of the rule?
> A.      That's correct.
> Q.      And that's an adverse impact under the rule?
> A.      Well, if that's all you used is the rule, that's true.

Trial Transcript (Doc. 223) at 205.

Finally, with regard to the Disparate Impact - Captain Race Claims, the defendant points out that in *Livingston v. Roadway Exp., Inc.*, 802 F.2d 1250, 1252 (10th Cir. 1986), a reverse sex discrimination disparate impact case, the Court of Appeals for the Tenth Circuit held that "in impact cases, as in disparate treatment cases, a member of a favored group must show background circumstances supporting the inference that a facially neutral policy with a disparate impact is in fact a vehicle for unlawful discrimination."  *See also Jasany v. U.S. Postal Service*, 755 F.2d 1244, 1252 (6th Cir.1985) (in a case of reverse discrimination, presumption that circumstances which normally make out prima facie case are indicative of discrimination is not available, absent showing that background circumstances support suspicion).  "A party who objects to . . . the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Fed. R. Civ. P. 51(c)(1); *see also Lentz v. City of Cleveland*, 333 Fed. Appx. 42, 45-46 (6th Cir. 2009) (finding defendants' objection insufficient under Rule 51).

20

The Court holds that the defendant waived this argument because, while it did submit a proposed jury instruction, *see* Doc. 138 at 30 and Doc. 148 at 14, it did not mention the need for an instruction regarding background circumstances during the charging conference.  *See* Trial Transcript (Doc. 309) at 4-44.

B.

Defendant argues that even if the 4/5ths Rule was violated, the small sample sizes (101 for Lieutenant and 41 for Captain) and individualized factors preclude a finding of statistically significant evidence to support a finding of adverse impact.  Incomplete or inapplicable analyses, simplistic percentage comparisons, and small sample sizes produce statistical analyses with little probative value.  *See, e.g.*, *New York City Transit Authority v. Beazer*, 440 U.S. 568, 582-87 (1979), *Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 620-21 (1974).

The jury was instructed that the number of promotions and number of applicants may affect the proper determination of a violation of the 4/5ths Rule.  Accordingly, they were advised to take into account the sample size for the examinations when determining the weight to give the testimony they had heard.  The jury was told they should use caution when applying the 4/5th Rule to small samples.  It is also true that smaller differences in selection rates may constitute adverse impact where the differences are significant in both statistical and practical terms.

Moreover, the jury heard testimony regarding the "flip-flop rule" (n+1) as it relates to small sample sizes.  The flip-flop rule is specifically set forth in the Questions and Answers to the UGES.  Adoption of Questions and Answers to Clarify and Provide a Common Interpretation of the Uniform Guidelines on Employee Selection Procedures, 44 Fed.Reg. 11996, 11999, Questions

21

and Answers 20 and 21 (1979). In short, the flip-flop rule states that if 1 is subtracted from the group with the highest selection rate and 1 is added to the group with the lowest selection rate, if there is a reversal of adverse impact, then "it is more likely than not that the difference could have occurred by chance." *Id.* at Question and Answer 21.

With regard to the Disparate Impact - Captain Race Claims, Dr. Rick Jacobs testified on cross-examination that reversal did not occur until n+3; and there is no support anywhere to justify the use of an n+3 computation to demonstrate that the sample size is too small for application of the 4/5ths Rule:

> Q.  Let's go to captain race. And would you agree with me that five out of the nine captain African-American candidates were promoted at the rank of captain?
> A.  Correct.
> Q.  Okay. And that would mean that the balance of 12 would be 7 -- 8 out of 32 white candidates with an N plus one would have been promoted?
> A.  Correct.
> Q.  And if we use the statistics for this, N plus one still shows four-fifths rule violation, doesn't it?
> A.  It does.
> Q.  If we do the N plus one computation, take one away from the black, the group with the highest selection rate, and we add one more to the white, the group with the lower selection rate, still no flip-flop, is there?
>                              *   *   *
> A.  No flip-flop but no violation of the 80 percent rule.
> Q.  Very specifically, question 21 says got a flip-flop. When you're talking small sample size N plus one means it flip[ ] flops, doesn't it?
> A.  It does say that.
> Q.  Okay. So we have to get to N plus three at captain race before we get the flip-flop, isn't that correct?
> A.  Looks like that would do it.
> Q.  And, again, there is no justification or any support anywhere in the uniform guidelines that allows an N plus two or N plus three or N plus four?
> A.  Yes.

Trial Transcript (Doc. 219) at 107-108.

22

Dr. Rick Jacobs testified on cross-examination that reversal also did not occur until n+3

for the Disparate Impact - Lieutenant Race Claims:

> Q.      And as we go to N plus one, is we add one, so we add plus one, and that
> makes it four blacks out of 20, and we have to take one from the white, that takes it
> down to 24.  So N plus one still shows a four-fifths rule violation in this
> circumstances, doesn't it?
> A.      My calculation was that it went from .49, the promotion, the actual
> promotions, to .68, so there was still a four-fifths rule violation, with N plus one.
> Q.      So the answer is yes, still a four-fifths rule violation?
> A.      Yes.
> Q.      And then we do N plus two.  And that shows where we now take one more,
> and we deduct one more.  And at the rank of lieutenant, race, we now have, using
> N plus two, correct, we now have 25 percent selection rate for black, correct?
> A.      Correct.
> Q.      And 28.3 percent for white.  Still hasn't flip-flopped, has it?
> A.      No, but it's gone to 88 percent.
> Q.      Listen to the question.  N plus two, it still has not flip-flopped, has it?
> A.      It has not flip-flopped.
> Q.      So as laid out in question 21 of the questions and answers of the EEOC
> guidelines, we have now gone to N plus two, and we still don't have a flip-flop, do
> we?
> A.      Hold on a minute.  Let me read exactly what it says.
> Q.      Sure.
> A.      We do not have a flip-flop.
> Q.      Okay.  Good.  And it's not until you get to N plus three where we add one
> more and deduct one more that we actually start to see that flip-flop; isn't that
> correct?
> A.      Correct.
> Q.      That's when you get the 30 percent here, about, and right around 27
> percent here.  Sir, you would agree with me, would you not, that there is virtually
> nothing in the uniform guidelines of employee selection that justify use of an N
> plus two or an N plus three?
> A.      That is correct.

*Id.* at 102-104.

C.

Defendant argues the plaintiffs offered no evidence causally connecting any impact to race

or age.  According to the defendant, the Captain Candidates failed to present evidence that the

23

alleged flaws in the examination were connected to being Caucasian and the Lieutenant Candidates failed to present evidence that the alleged flaws in their exam were connected to being African-American and/or 40 years and older.

It is undisputed that the Disparate Impact - Captain Race Claims, the Disparate Impact - Lieutenant Age Claims, and the Disparate Impact - Lieutenant Race Claims did meet the 4/5ths Rule. *See* Trial Transcript (Doc. 212) at 273.

Plaintiffs alleged that the development, administration and scoring of the promotional examinations for the AFD was flawed. According to *Phillips v. Gates*, 329 Fed. Appx. 577 (6th Cir. 2009), when the promotional process itself is challenged, the causation element and discrete parts of the process merge:

> . . . The prima facie case is sometimes said to comprise three elements-identification, disparate impact, and causation. *See, e.g.*, *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 601 (1st Cir. 1995). If, however, "the employee challenges the employer's promotion process as a whole . . . then the disparate impact and causation elements merge." *Phillips II*, 400 F.3d at 397-98 n. 8. Accepting *arguendo* Appellants' argument that the DFAS-CO promotion practices are incapable of separation, we consider the disparate-impact and causation elements to address the same question: "whether the evidence in the record supported a finding that African-American employees were promoted at a lower rate than white employees." *Id.*

*Id.* at 581 (footnote omitted).

## D.

Finally, the defendant argues that it established job relatedness and the plaintiffs presented no evidence of an alternative testing method that was equally valid with less alleged adverse impact. But, the plaintiffs only had to show an alternative measure of equal validity if the defendant succeeded in carrying its own burden of proof to show business necessity. The Supreme Court recognized the concept of "alternative employment practice" in *Albemarle Paper*

24

*Co. v. Moody*, 422 U.S. 405 (1975).  In considering the situation after an employer has proved

that its test is "job related," the Court held that the employee may prevail by showing "that other

tests or selection devices, without a similarly undesirable racial effect, would also serve the

employer's legitimate interest in 'efficient and trustworthy workmanship.'"  *Id.* at 425 (quoting

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)).

An employer may defend against liability by demonstrating that any given requirement is

"job related for the position in question and consistent with business necessity."  42 U.S.C.

§ 2000e-2(k)(1)(A)(i).  If the plaintiff succeeds in establishing a prima facie case of

discrimination, the employer must show that the protocol in question has "a manifest relationship

to the employment"-- the so-called "business justification." *Griggs v. Duke Power Co.*, 401 U.S.

424, 432 (1971).  Defendant's motion, however, contains only a limited discussion of the defense

of the business necessity of the methods it used.

If the employer succeeds in validating the evaluation method, the plaintiff must prove that

there was "another available method of evaluation which was equally valid and less

discriminatory." *Bryant v. City of Chicago*, 200 F.3d 1092, 1094 (7th Cir.2000).  Plaintiffs are

not required to have proposed the alternative.  The requirement is only that the alternative was

available. *Johnson v. City of Memphis*, Nos. 00-2608 DP, 04-2017 DP, 04-2013 DA, 2006 WL

3827481, at *14 (W.D.Tenn. Dec. 28, 2006).  According to the testimony of plaintiffs' expert,

Kyle Brink Ph.D., had the defendant chosen a different weighting scheme than it did, the City

could likely have avoided or diminished the disparate impact of the promotional process.  *See*

Plaintiffs' Exhibit 127 at 25-26; Trial Transcript (Doc. 204) at 78-84.

25

E.

Alternatively, the defendant contends that, at a minimum, it is entitled to judgment as a matter of law on the Captain Candidates' claims, the Lieutenant Candidates' time-barred state age claims, and on four individual Lieutenant Candidates claims.

Defendant argues that it is entitled to judgment as a matter of law on the Lieutenant Candidates' state adverse impact age claims because the claims were not raised within the 180-day statute of limitations.  *See McNeely v. Ross Correctional Inst.*, No. 06AP-280, 2006 WL 2949014, ¶ 20 (Ohio Ct. App. Oct. 17, 2006) (holding that a state law age claim under R.C. 4112.02 must be asserted within 180 days of the alleged discriminatory act); Ohio Rev. Code § 4112.02(N).  According to the defendant, the filing of these claims in *William Howe, et al. v. The City of Akron*, Case No. CV-2006-04-2310 (C.P. Summit) on April 7, 2006, was well over 180 days from the alleged discriminatory act, which took place or happened on April 4, 2005, when the eligibility lists for each rank were established by the City of Akron Civil Service Commission.

The statute of limitations for most age discrimination claims brought under Ohio Rev. Code § 4112.99 is 180 days.  *Meyer v. United Parcel Service, Inc.*, 122 Ohio St.3d 104, 113 (2009).  The statute of limitations for age discrimination claims brought under Ohio Rev. Code § 4112.14, however, is six years.  *Id.* at 109 n. 6.  The Court concludes that the First Amended Complaint (Doc. 23), filed on October 17, 2007, was within six years of the posting of the list in April 2005.

Next, the defendant argues that it is entitled to judgment as a matter of law on the adverse impact age claims of David O'Neal, Jeffery Layne, Jeffery Schueller, and Frank Poletta because

26

they were all under the age of 40 when they took the Lieutenant's examination.  Moreover, Schueller's adverse impact age claim fails because he was promoted.

The Court finds that David O'Neal, Jeffery Layne, Jeffery Schueller, and Frank Poletta are able to pursue their adverse impact age claims because they each reached the age of 40 prior to the final expiration of the eligibility list when the promotional process was completed.  The Supreme Court instructs in *Lewis v. City of Chicago, Ill.*, --- U.S. ----, 130 S.Ct. 2191, 2197 (2010) that "[d]etermining whether a plaintiff's charge is timely . . . requires identifying precisely the unlawful employment practice of which he complains."  *Id.* at 2197 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)) (internal quotations omitted).  The promotional process itself is challenged in the case at bar.  Jeffery Layne and Jeffery Schueller turned 40 after the examination, but before April 4, 2005, when the eligibility list for the rank of Lieutenant was established.  Layne reached the age of 40 after the administration of the Lieutenant's examination.  Trial Transcript (Doc. 202) at 151.  Schueller turned 40 before the eligibility list for Lieutenant was finalized and posted.  Trial Transcript (Doc. 213) at 3.  Frank Poletta reached the age of 40 during the existence of the eligibility list.  Trial Transcript (Doc. 211) at 198.

F.

In addition and in the alternative, the defendant moves for a new trial because the verdicts are against the manifest weight of the evidence, the damages are excessive, and two legal and three prejudicial evidentiary errors occurred during the trial.  In applying the standard of the Court of Appeals for the Sixth Circuit to the evidence presented at trial in the case at bar, this Court must conclude that, with the exception of the issue of damages, the general verdicts and answers to the interrogatories arrived at by the jury could have reasonably been reached based

27

upon the evidence presented at trial.  The Verdicts (Doc. 237) provide for uniform past and future monetary awards regardless of whether the individual passed, was promoted,[16] or ready to retire.[17] This amply demonstrates that the jury lost its way on the issue of  damages.  Based upon this finding, the Court GRANTS a new trial solely on damages to ensure the proper damages are awarded.

Fed. R. Civ. P. 59(a)(1)  provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  The Court, in considering a motion for a new trial, must weigh the evidence, compare the opposing proofs, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence.  *J.C. Wyckoff & Associates v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991) (citing *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981)).  The Court should deny the motion if the verdict is one which could reasonably have been reached.  *Id.*  The verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.  *Id. See also Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.), *cert. denied*, 389 U.S. 913 (1967).  Furthermore, where the verdict is reasonable, the motion should be denied "regardless of whether the trial judge might have reached a different conclusion were he

---

[16]Jeffery Schueller was awarded the same amount of damages as every other Lieutenant Candidate, even though he was promoted "about a year and half" after the eligibility list for Lieutenant was established by the City of Akron Civil Service Commission.  *See* Trial Transcript (Doc. 213) at 4-5.  Schueller even testified on direct examination that "[his] economic damages of course, are going to be less than other plaintiffs in this case."  *Id.* at 19.

[17]Michael Harvey retired on September 17, 2005.  *See* Trial Transcript (Doc. 196) at 14.

28

the trier of fact." *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994) (citing *U.S. v.*

*L.E. Cooke Co., Inc.*, 991 F.2d 336, 343 (6th Cir.1993)).

  According to the defendant, the Verdicts are against the manifest weight of the evidence

because (1) the evidence presented precludes a finding of statistically significant evidence to

support a finding of adverse impact and (2) neither the Captain Candidates nor the Lieutenant

Candidates connected the alleged disparity to their protected class status.  As stated in *Barnes v.*

*Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000),

> . . . new trials are not to be granted on the grounds that the verdict was against the
> weight of the evidence "unless that verdict was unreasonable[.]"  *Holmes v. City of*
> *Massillon*, 78 F.3d 1041, 1047 (6th Cir.1996).  Thus, if a reasonable juror could
> reach the challenged verdict, a new trial is improper.  *See id.* at 1048.  "'[C]ourts
> are not free to reweigh the evidence and set aside the jury verdict merely because
> the jury could have drawn different inferences or conclusions or because judges
> feel that other results are more reasonable.'"  *Duncan*, 377 F.2d at 52 (citation
> omitted). . . .

For the reasons set forth, supra, in Section III.B and C, defendant's argument that the Verdicts are

against the manifest weight of the evidence is lacking in merit.

  Defendant cites the questions the jury sent to the Court during its deliberations  (Doc. 240)

as evidence of actual jury confusion about damages.  The Court agrees with the defendant that

"[t]hese jury questions clearly show that the jury recognized, but failed to follow, their duty to

award damages based on the testimony of the individual Plaintiffs."  Doc. 285 at 28. The Court

instructed the jury that any award it makes should be fair in light of the evidence presented at the

trial.  Each plaintiff testified to different study habits for the examinations and some plaintiffs

testified to a history of failing multiple examinations.  *See, e.g.*, Trial Transcript (Doc. 194) at 41

and 114; Trial Transcript (Doc. 195) at 36-37, 173-74, and 214; Trial Transcript (Doc. 196) at 11,

61-62, 207-208, 216-17, and 233-35; Trial Transcript (Doc. 202) at 109-10, 211, and 227; Trial

Transcript (Doc. 213) at 34 and 73-74; Trial Transcript (Doc. 211) at 196.  In spite of the

differing circumstances of each of the 23 plaintiffs, the jury awarded each Lieutenant Candidate

$9,000 in compensatory damages[18] and $72,000 in front pay and each Captain Candidate $10,000

in compensatory damages and, with the exception of Cynthia J. Crawford (as Executrix of the

Estate of Jerome K. Crawford, Deceased), $80,000 in front pay.  *See Biondo v. City of Chicago,

Ill.*, 382 F.3d 680, 688-689 (7th Cir. 2004) (finding, in a discrimination case, that "it is hard to

swallow a conclusion that *all* candidates held back from promotion . . . were sure to [be

promoted] (emphasis in original)), *cert. denied*, 543 U.S. 1152 (2005).

Next, the defendant argues that two legal errors warrant a new trial.  First, the Court erred

in denying summary judgment to the defendant on Counts II, IV, and VI for disparate treatment

on the basis of plaintiffs' age in the administration and scoring of the promotional examinations

for both the rank of Lieutenant and Captain.[19]  This argument lacks merit.  "The Supreme Court

has rejected rigid mathematical formulas in analyzing statistics purporting to show disparate

impact . . . . the 'entire evidence' in the record must be considered in determining whether a claim

for discrimination has been proven."  *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 908 (6th Cir.

1991) (quoting *Bazemore v. Friday*, 478 U.S. 385, 404 (1986)).  Moreover, the Court instructed

the jury that the claims against the defendant for disparate treatment on the basis of age had been

terminated; and that they should not concern themselves with the disposition of those claims, but

---

[18]The compensatory damages awarded by the jury are not available under Ohio Rev. Code
§ 4112.14.

[19]Defendant states "[a]s was evident from the Plaintiffs voluntary dismissal of those claims *after*
the damage was complete, no genuine issues of material fact existed as to the required showing that
African-American, Caucasian, and 40 years and older applicants were treated unfavorably and that the
motivating factor for the unfavorable treatment was race and/or age."  Doc. 285 at 29 (emphasis in
original).  But, it is to be noted that plaintiffs' alleged only age-related disparate treatment claims (*i.e.*,
intentional discrimination because of age) and not race.

should consider the remaining issues between the remaining plaintiffs and the City in accordance with the instructions of the Court and the evidence in the case.

The second legal error alleged is that both state-law claims brought pursuant to Ohio's age discrimination law and the Title VII race discrimination/disparate impact claims should not have been presented to the jury.  According to the defendant, the state-law claims of the Lieutenant Candidates brought under Ohio Rev. Code §§ 4112.14 (Count III) and 4112.02 and 4112.99 (Count V) should not both have been submitted to the jury because the statutes each require plaintiffs to select under which statute the claim for age discrimination will be pursued.  Plaintiffs claim *Meyer v. United Parcel Service, Inc.*, 122 Ohio St.3d 104 (2009 ), is dispositive on this election issue.  *See* Plaintiffs' Interpretive Memorandum (Doc. 269).  The Court agrees with the defendant that *Meyer* did not eliminate the requirement to elect under § 4112.14 and § 4112.02. *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 318 (2007).  But, the proofs of disparate impact under both statutes are substantially the same.

The Ohio Supreme Court's ruling in *Meyer* focused on the source of remedies for age discrimination claims under § 4112.99, explaining that the source of such is the substantive provisions of § 4112.02 and § 4112.14.  *Meyer*, 122 Ohio St.3d at 112.  Plaintiffs now request that the Verdicts be conformed to the current state of the law in Ohio.  According to the plaintiffs:

> Based upon the *Meyer* decision, and because Plaintiffs[ ] pled specific claims under § 4112.14, and not specific claims under §4112.02(N), *Plaintiffs submit that they are bound by the provisions of § 4112.14*.  Plaintiffs' ADEA claims, which were properly tried to the jury, mirror the § 4112.14 claims, with respect to the issues of liability.  The difference is that the remedies available under § 4112.14 and the ADEA are awarded differently, the remedies under § 4112.14 may only be awarded by the Court.  (Emphasis added.)

Doc. 290 at 20.

31

There is no error in having allowed the jury to decide the underlying facts of the state law age discrimination claim, as the Court is bound to find the facts consistent with the jury's factual findings underpinning the ADEA claim.  As the Court previously stated with regard to plaintiffs' Title VII race discrimination claims:

> Defendant is correct that Plaintiffs are not entitled to have a jury determine their Title VII claim.  However, as the facts of each cause of action are overlapping, the jury made the factual findings underpinning all of the claims that have been pled. Furthermore, the Court utilized its powers under Fed.R. Civ.P. 39(c) and permitted the jury to consider the Title VII claim in an advisory capacity.  As such, the jury considered the Title VII claim, but its decision is advisory only. . . . [H]owever, any factual findings made by the jury in conjunction with Plaintiffs' remaining claims are binding on the Court.

Order (Doc. 238) at 2.

Finally, the defendant argues that three prejudicial evidentiary errors occurred during the trial.  First, the Court should not have allowed certain testimony of Jeffery Layne, John Triola, and Kerry Briggs about age-related comments.  Jeffery Layne testified that an unnamed assessor told him after the promotional examination was over that another assessor told him that age was important to him because it was important to have senior firefighters.  *See* Trial Transcript (Doc. 202) at 144-46. John Triola testified that then Deputy Chief Bunner (now present Chief) told him and others that he thought he would not be promoted to Chief because he is "a little long in the tooth."  *See* Trial Transcript (Doc. 196) at 211-212.  Kerry Briggs testified that an assessor commented on his white hair.  *See* Trial Transcript (Doc. 211) at 116-18.  The Court will adhere to its prior rulings for the reasons set forth on the record, *see, e.g.* Trial Transcript (Doc. 202) at 133, and in its prior Order (Doc. 189) at 2-5.

Second, citing Fed. R. Evid. 403, the defendant contends it is entitled to a new trial because Bradley Carr and Gregory Snyder were permitted, over the objection of the City, to

32

provide "irrelevant, prejudicial, and inherently misleading statistical testimony about alleged scoring irregularities and pass and promotions rates."  Doc. 285 at 33.  It is to be noted that large portions of the document prepared by Carr were redacted by the Court before he testified.  The source data that Carr testified about came from the data sheets of EBJ.  *See* Trial Transcript (Doc. 211) at 51-53, 55.  The Court will adhere to its prior ruling regarding Carr 's testimony for the reasons set forth on the record.  *Id.* at 58.  *See* Fed. R. Evid. 1006.

Contrary to defendant's assertion, Gregory Snyder testified about Plaintiffs' Exhibit 54 (a summary of the Captain rating forms) without objection.  *See* Trial Transcript (Doc. 211) at 231-34.  Defense counsel made no objection to any of the questions pertinent to this issue asked by plaintiffs' counsel.  Defendant now complains.  This issue has been waived under Fed. R. Evid. 103(a)(1).  Nor is this omission cured because the defendant had filed a Motion *in Limine* (Doc. 140) at the start of trial, *see Kimberly F. v. Mary Hitchcock Memorial Hosp.*, No. 93-1438, 1993 WL 498026, at *7 (1st Cir. Dec. 3, 1993), which the Court granted in part, *see* Order (Doc. 189) at 1-2.  It is incumbent, therefore, upon the party aggrieved by a ruling on a motion *in limine* to raise the issue at trial.  Defendant forfeited this objection when it did not object to this evidence at trial.  *See Bowman v. Corrections Corp. of America*, 350 F.3d 537, 548 (6th Cir. 2003).

Third, the defendant argues that the plaintiffs were erroneously permitted to present testimony from Kyle Brink Ph.D. about the content validity/job relatedness of the 2004 promotional examination for the AFD because he had not previously developed and administered a written job knowledge examination for any position in a safety force.  The Court qualified Dr. Brink as an expert in psychology.  *See* Trial Transcript (Doc. 204) at 16.  At pages 14-15 of his

33

original report, dated September 7, 2007 (Plaintiffs' Exhibit 127), Dr. Brink rendered an opinion

regarding the written job knowledge test in the case at bar.  He also testified without objection

about why he doesn't use written job knowledge tests:

> Q.     As part of the testing process that you use in Jefferson County, do you use
> written job knowledge tests?
> A.     No, we [ ] don't.
> Q.     Explain to the jury why not?
> A.     Written job knowledge tests tend to have higher adverse impact.  We try to
> avoid those types of tests because of that.  We feel like there [are] other methods
> that can be used to test job knowledge and in more appropriate ways, so we try to
> avoid job knowledge tests or we do avoid job knowledge tests.

Trial Transcript (Doc. 204) at 14.  His opinion was tested on cross-examination and subjected to

further criticism by defendant's own experts, and the accuracy of his opinion went to the jury's

duty to weigh the evidence, not to admissibility.  *In re Scrap Metal Antitrust Litigation*, 527 F.3d

517, 531-32 (6th Cir. 2008).

G.

Even if the Court declines to order a new trial, the defendant requests remittitur of the

damages to ensure the damages properly reflect the evidence in the record.  For the reasons set

forth, supra, in Section III.F, the Court GRANTS a new trial solely on damages.

IV.

Defendant's Motion to Alter or Amend or, in the Alternative, for a New Trial or

Remittitur on Plaintiffs' Title VII Claims is GRANTED IN PART.  The Court grants a new trial

solely on damages.

Fed. R. Civ. P. 59(a)(1)  provides that "[t]he court may, on motion, grant a new trial on all

or some of the issues . . . after a nonjury trial, for any reason for which a rehearing has heretofore

been granted in a suit in equity in federal court."

This motion challenges the Title VII violation this Court found as a result of the jury verdicts.  It parallels defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Remittitur.  The Court finds that the evidence presented at trial permitted more than one reasonable conclusion.  Therefore, it is the holding of this Court that there is substantial evidence and testimony that supports the verdicts of the fact finder on plaintiffs' Title VII race discrimination/disparate impact claims.


IT IS SO ORDERED.


  December 30, 2010                             /s/ John R. Adams
Date                                    John R. Adams
                                        U.S. District Judge