**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM HOWE, et al., | ) | CASE NO. 5:06 CV 2779 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | <u>ORDER</u> |
| | ) | |
| CITY OF AKRON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant City of Akron's Motion to Suspend Mandatory Injunction Requiring Automatic Promotion of Plaintiffs Currently Employed filed July 14, 2011.  The motion is DENIED.

**TIMING OF THE MOTION TO STAY**

Prior to reaching the merits of this motion, the Court must outline the procedural history that created the current motion and response.  Re-trial in this matter was set for July 18, 2011 through an order of this Court issued on April 5, 2011.  Doc. 326.  On July 7, 2011, this Court ordered from the bench that Plaintiffs be promoted on July 18, 2011.  The Court supplemented its oral Order on July 13, 2011 with a written order supplementing the Court's oral statements. Doc. 416.  Despite the fact that the Court ordered the promotions on July 7, 2011, Akron waited more than a week and filed its motion to stay on July 14, 2011, at 4:48 p.m., after the close of the Federal Clerk's Office.  Akron then requested that this Court rule on the Motion by no later than noon the following day, effectively providing no time for an opposition.

1

Based upon the late filing of Akron's motion, Plaintiffs requested adequate time to respond to Akron's motion. Doc. 424 (filed on July 14, 2011 at 6:21 p.m.).  On July 15, 2011, this Court conducted an evidentiary hearing in a forfeiture matter, a telephone conference in an environmental matter, and two criminal proceedings.  The Court, however, did not rule on Akron's motion by Akron's self-created deadline of noon.  Thereafter, Akron moved the Sixth Circuit Court of Appeals for an Emergency Stay.  Plaintiffs then opposed Akron's motions to stay in both this Court and the Court of Appeals.

After 5 p.m. on July 15, 2011, the Sixth Circuit issued a temporary stay "[i]n order to allow consideration by a full panel" of that Court.  The Circuit also allowed Plaintiffs to supplement their opposition by 5:00 p.m. on Tuesday, July 19, 2011.  To date, no review of the merits of Akron's motion to stay has been undertaken by the Circuit.  Accordingly, this Court will review those merits, as is appropriate under Fed.R. App. P. 8(a)(1).

## I.  Facts

Plaintiffs are firefighters for the City of Akron ("Akron") who brought this action claiming age and racial discrimination and disparate impact in the promotional examination process that took place in 2004 for the ranks of Lieutenant and Captain.  The Court submitted the question of the amount of front pay to a jury, while reserving its ruling on the issue of reinstatement.  The Court's reservation was consistent with the Sixth Circuit's guidance on this issue. *Bordeau v. Saginaw Control & Engineering, Inc.*, 477 F.Supp.2d 797 (E.D. Mich. 2007), citing *Roush v. KFC National Management Co.*, 10 F.3d 392, 398 (6th Cir. 1993).

At the close of a 16-day trial during which four experts and dozens of witnesses testified, the jury rendered general verdicts accompanied by answers to interrogatories. Doc. 237.  On December 23, 2008, the jury found that Akron's promotional process discriminated against the

Plaintiffs by relying on a promotional examination that had a disparate impact on the Plaintiffs in making selections for promotions. Doc. 237 at 1-9.  The jury awarded each Plaintiff both compensatory damages and front pay.[1]  Doc. 237 at 10-32.

The Court entered Judgment (Doc. 278) in accordance with the jury's verdicts, concluding that the 2004 promotional examination adversely impacted 12 Captain Candidates on the basis of race, adversely impacted eight Lieutenant Candidates based on age, and adversely impacted three Lieutenant Candidates on the basis of age and race. On December 30, 2010, the Court ordered a retrial on damages only.  The retrial was set to commence on Monday, July 18, 2011.  Akron then engaged in the motion practice described above.

## II.  Legal Standard

This Court may issue a stay pending appeal only after consideration of four factors: (1) whether the party seeking the stay has made a strong showing of likelihood of success on the merits on appeal; (2) whether the moving party will suffer irreparable harm if the stay does not issue; (3) whether issuance of a stay will substantially injure other parties to the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 129 S.Ct. 1749, 1756 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## III. Legal Analysis

1. <u>Likelihood of success on the merits</u>

Akron has appealed this Court's July 7, 2011 oral Order, as well as the written supplement filed July 13, 2011. Doc. 416.  Akron's appeal is interlocutory and therefore does not challenge the merits of the underlying jury verdict and Judgment entered in favor of Plaintiffs. Doc. 419.

---

[1] With the exception of Cynthia J. Crawford (as Executrix of the Estate of Jerome K. Crawford, Deceased) who was awarded compensatory damages only.

There can be no dispute that the Court has the discretion to order promotions, with back pay, as a remedy to make Plaintiffs whole. 42 U.S.C. §2000e-5(g)(1) provides that "[i]f the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice . . . the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate." 42 U.S.C. §2000e-5(g). As Title VII is a broad remedial statute, the Court may fashion various means of equitable relief, such as reinstatement, front pay, back pay, injunctive or any other equitable means the court deems appropriate. *Id.*

The remedial purpose of the statute (42 U.S.C. §2000e-5) is to make aggrieved parties whole. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975). In acknowledging the purpose of the statute, the Supreme Court stated: "(t)he provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible . . . the scope of relief . . . is intended to make the victims of unlawful discrimination whole." *Id.* at 421 (citing 118 Cong. Rec. 7168 (1972)).

Without question then, this Court has the authority to order the promotion of Plaintiffs. Accordingly, to warrant a stay Akron must show that it is likely to succeed in showing that this Court abused its discretion[2] in ordering that Plaintiffs be promoted (rather than awarding front pay), accepting the prior finding of liability in favor of Plaintiffs which cannot be challenged in the current interlocutory appeal.

Plaintiffs who prove discrimination in violation of Title VII are entitled to reinstatement, unless exceptional circumstances make the chances for a satisfactory employment relationship unlikely. *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985). The object of

---

[2] A district court's decision not to award reinstatement or front pay is reviewable only for an abuse of discretion. *Roush v. KFC National Management Co.*, 10 F.3d 392, 399 (6th Cir.1993), *cert. denied*, 513 U.S. 808 (1994).

reinstatement is to put the plaintiffs in the same position as they would have been but for the discrimination.  Reinstatement is not feasible in some cases such as where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result. *Henry v. Lennox Indus.*, 768 F.2d 746, 753 (6th Cir.1985).  The principles of reinstatement apply equally to the remedy of promotion.  *See Isabel v. City of Memphis*, 404 F.3d 404 (6th Cir. 2005) (affirming the district court's finding that complete relief included back pay and retroactive promotion).

Here, Akron is not likely to succeed in showing that this Court abused its discretion by ordering that Plaintiffs be promoted.  This Court previously declined to grant Plaintiffs' motion for promotions.  However, Akron recently represented to the Court that it critically needed to begin the promotional exam process due to the extraordinary number of vacancies in the positions of Lieutenant and Captain.  Doc. 358 at 13:18-26:15.

Specifically, during the June 15, 2011 status conference, counsel for Akron stated: "there are over 25 vacancies in the lieutenant position and there are five vacancies at the captain position." Doc. 358 at 23:4-6.  Moreover, Akron characterized the Fire Department's current status as "crippled."  Doc. 358 at 23:12.  "I don't think that we can be crippled for the next one, two, or three years if there is a decision by this jury, post-trial motions, then Sixth Circuit appellate issues being litigated. I mean, I see that as a very, very long road, and we just can't survive with that kind of delay."   Doc. 358 at 23:12-17.  The Akron Fire Department's representative and co-counsel also informed the Court of the current need for promotions: "…[s]o we are approaching, you know, a considerable number of years, and we have had a lot of vacancies. So we need to manage, and the fire chief is concerned about how it is being managed, with Band-Aids, and we need to move forward on this examination process." Doc. 358 at 16:10-

14).  Plaintiffs proposed a quick solution: "It sounds to me like you've got a solution right here. You've got 23 plaintiffs right here. Most of them are acting already. It seems to me it's time to sit down and talk about what we're going to do to resolve this case. You've got the vacancies. The need is there." Doc. 358 at 16:14-19.  Throughout the status conference, Akron clearly indicated that the need for promoting firefighters was critical.  Doc. 358 at 13:18-26:15.

Since Plaintiffs obtained the verdict in their favor, Akron has refused to promote Plaintiffs or engage in the preparation of another promotional examination.  Indeed, it is undisputed that many Plaintiffs are currently acting in the positions to which they would be promoted, yet Akron refuses to actually promote these individuals.  Furthermore, despite the fact that no injunction has been put in place by this Court, Akron has actively represented that others in the Department were "being held back by this litigation."  Doc. 358 at 25:23-24.

In addition, the Court finds that promoting Plaintiffs is feasible.  First, the Court did not order the promotion of Plaintiffs who are no longer working for the Fire Department.  Second, there is no evidence that any non-culpable employees would be displaced, nor that hostility would occur as a result of the promotions.  Akron's primary argument of infeasibility is that ten Plaintiffs would be promoted to fill only 5 vacancies in the Captain rank.  This argument is intertwined with Akron's argument regarding irreparable injury and is addressed in detail in that section.  Notably, however, Akron raises no such argument made for the promotion of the individuals to Lieutenant.

In its argument regarding its likely success on the merits, Akron also ignores that promotion is an *equitable* remedy.  Akron makes no attempt to analyze the equity in promoting Plaintiffs. It is undisputed that Akron promoted certain individuals based on a discriminatory promotional process.  Despite a jury finding of disparate impact that dates back to December of

6

2008, Akron took no steps to demote those individuals.  Instead, those promoted individuals have maintained their rank, gained time in rank, received step pay increases, and been unaffected by this litigation.  In sharp contrast, Plaintiffs have routinely been required to act in a promoted rank, but received only the lowest rate of pay for the rank.  They have also had to endure nearly five years of litigation with more than two years having passed since a jury found that the tests were discriminatory.  In order to *begin* to remedy the results of the discriminatory test, Plaintiffs must begin to approach positions that closely equal those who benefitted from the discriminatory process.  However, the Court must also note that the current order that Akron seeks to stay does not place Plaintiffs in an equal position with those that were promoted from the invalid testing process.  Instead, the Court further deferred ruling on Plaintiffs' request that their promotions be made retroactive, that they be awarded time-in-rank, and that they receive pay increases commensurate with a retroactive promotion.  Instead, the Court's current order only promoted Plaintiffs effective July 18, 2011.  As such, Plaintiffs would still be at a significant disadvantage when compared to those that benefitted from the prior testing process.  As a result, a review of the equities in this matter heavily favors promotion.

Akron also takes issue with the legal analysis put forward by this Court in support of the promotions.  Akron's argument in this arena is likewise flawed in numerous aspects.  First, like many of its prior motions and briefs, Akron willfully ignores the fact that it has waived numerous legal defenses. Like its trial brief for this retrial, Akron refuses to acknowledge that five years of litigation have occurred, instead choosing to argue as if it has a blank slate.  It does not.  For example, Akron again interjects the concept of "lost opportunities" into its motion to stay.  In so doing, Akron contends that each Plaintiff in this matter only had a 28% or 29% chance of promotion and therefore automatic promotions are legally erroneous.  However, Akron

again ignores that its argument regarding the likelihood of a particular Plaintiff being successfully promoted was waived by failing to present such an argument to the first jury in this matter.  In what has become all-too-common since the Court ordered retrial in this matter, Akron attempts to repackage this argument in an attempt to avoid waiver.  Such an attempt is futile.

Akron likewise argues that this Court failed to consider numerous factors when it ordered Plaintiffs' promotions.  In support of its argument, Akron cites cases from the Fifth, Seventh, and Eighth Circuit.  Notably absent from Akron's argument is any binding precedent on these factors from the Sixth Circuit.  In fact, in the sole Sixth Circuit case cited by Akron, *Griffin v. Michigan Dept. of Corrections*, 5 F.3d 186, 189 (6th Cir. 1993), Akron significantly misrepresents the Court's holding.   In its motion, Akron contends that *Griffin* dictates against automatic promotions because "courts will not automatically assume that a person discriminated against possesses characteristics so sterling as to receive every advancement not made illegal or logically impossible under the employer's rules." *Id.* at 189.  *Griffin*, however, does not at all address the propriety of promotions.  The above quote addresses front pay and the hesitation by courts to speculate about possible *future* events.  Accordingly, with respect to the factors that Akron purports this Court should have reviewed, Akron has been unable to cite to any binding authority to suggest that such a review is required.

However, even if this Circuit had adopted the factors listed by Akron, many if not all of those factors were considered by the Court.  In its motion, Akron contends that six factors are applicable herein and should have been reviewed by the Court:

> 1) whether there is a comparable position available for the employee to assume; 2) whether an innocent employee would be displaced by the court's decision; 3) whether the employee's career goals have changed since the unlawful act; 4) whether the parties agree that the appointment is a viable remedy; 5) whether the degree of hostility or animosity between the parties—caused not only by the underlying offense but also by the litigation process—would undermine the

appointment; and 6) whether the appointment would arouse hostility in the workplace.

Doc. 423 at 8.  Akron's contention that this Court reviewed solely the first listed factor is, quite simply, untrue.

First, Akron concedes that the Court addressed the issue of whether positions were available for Plaintiffs to assume.  Second, the premise that the Court did not consider whether innocent employees would be displaced by these promotions is significantly flawed.  The Court on numerous occasions indicated that it would not promote Plaintiffs because it would displace others.  In finding that circumstances had changed, the Court indicated that it did not appear from the record that this displacement would occur with the current level of vacancies.  During the Court's oral pronouncement, Akron did not at any point even hint that individuals would be displaced.  For that matter, the Court's analysis below demonstrates that any such displacement would result from Akron's choice to under-staff its higher ranks, not from any order of this Court.

In a similar vein, it is difficult to believe that Akron asserts that this Court did not consider whether career goals had changed for some of the Plaintiffs.  This Court ordered promotions for solely those Plaintiffs still employed by the Fire Department.  Plaintiffs' counsel accepted this order without reservation.  Moreover, the Court and all parties are well aware that many, if not all, of the Plaintiffs have been acting in higher ranks since the inception of this lawsuit.  As such, the Court quite clearly took into account the wishes and career goals of Plaintiffs before awarding promotions.

It would have been futile for the Court to consider whether the parties agreed that this remedy was viable.  As can be seen simply by the record in this case, the parties cannot agree on anything.  Since day one of this litigation, Plaintiffs have sought promotions.  Similarly, since

day one, Akron has argued that so-called "automatic" promotions would never occur.[3]  As a result, the record before this Court made it abundantly clear that the parties would not agree that this remedy was viable.

The fifth factor that Akron contends that this Court did not analyze is whether the degree of hostility caused by the litigation process and underlying offense is so great as to undermine the appointment.  Analyzing this factor under the facts herein would be nonsensical.  The promoted Plaintiffs have been working within the Akron Fire Department since the inception of this lawsuit in 2006.  Most have been acting as Lieutenants and Captains since early on in this suit as well.  Whatever hostility has arisen from the discriminatory test and litigation process has not affected the ability of these Plaintiffs to perform their job functions.  Accordingly, there is nothing to suggest that their promotions will be undermined by any such hostility.

In the sixth and final factor, Akron asserts that this Court failed to analyze whether there would be hostility in the Fire Department if the Court ordered promotions.  Again, any incremental increase in hostility in the work place must be measured by the existing hostility that has arisen throughout the course of this extensive litigation.  There are no doubt firefighters angry that this lawsuit was filed in the first place, and there are no doubt firefighters that will be angered by *any relief* afforded to these Plaintiffs.  However, the idea that other firefighters may be angered over these promotions is minimized by the fact that these same individuals would be angered by a sizable award of front pay.

Akron's assertions that this Court's legal analysis was flawed seem to be based upon the misconception that the Court must use certain buzzwords in order to "fully" analyze the issue of promotions.   There is no law to support such an argument.  As demonstrated above, the Court

---

[3] It is strange to the Court that Akron routinely belittles the promotions requested as relief by Plaintiffs by labeling them "automatic," but takes no issue whatsoever with the promotions that resulted from a legally discriminatory test.

fully took into account all of the facts known to the Court by virtue of presiding over this dispute from 2006, including presiding over a lengthy jury trial, post-judgment practice, and the discovery process for retrial.

Akron's arguments that this Court committed legal and factual errors in its analysis lack merit.  For these reasons, Akron is not likely to succeed in showing that this Court abused its discretion by ordering the promotion of the Plaintiffs.

2.  Irreparable harm

Akron properly notes in its motion that as the level of irreparable harm increases, the need to show likelihood of success proportionately decreases.  However, Akron flatly ignores the law and the facts in suggesting that it will be irreparably harmed absent a stay.  First, Akron appears to argue about monetary loss.  Next, Akron asserts that the structure of its fire department will be altered if no stay is imposed.  Neither argument is persuasive.

"The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Here, Akron appears to argue that it may never be able to recover the higher salary paid to Plaintiffs if it succeeds on appeal and the order requiring promotions is overturned.  However, as Plaintiffs will be performing the work associated with the promoted position, Akron will suffer no monetary loss.  Furthermore, as Akron will be receiving the benefit of the work performed by Plaintiffs, a reversal of this Court's order would not lead to repayment in any event.  Accordingly, Akron is in error in numerous aspects of its arguments.  First, monetary loss is not irreparable. Second, there is no set of facts that would support an argument that repayment of the higher salaries will result from reversal. As such, any argument about the inability of Plaintiffs to repay their higher salaries is misplaced.

11

Akron's argument that the structure of its fire department will be altered and that budget restraints make the promotions impracticable is also unavailing.  In its motion, Akron presents the following three alternatives:  "the City will be forced to either: a) create five new Captain positions; b) demote five current Captains; or c) select five of the Plaintiff Captain Candidates to receive the official rank and pay of Captain a rank, but still work as a Lieutenant."  Doc. 423. Additionally, Akron's Director of Finance, Diane Miller Dawson, asserts as follows:

> The implementation of the Court order mandating the promotions of 8 Plaintiffs to Fire Lieutenant and promotion of 10 Plaintiffs to Fire Captain will cause undue economic hardship on the City.  This is because the additional 5 Lieutenant positions and 5 Captain positions are not funded or approved by Akron City Council.

Doc. 426 at 2.  However, Dawson also concedes that there are presently 28 vacancies in the Lieutenant position and five vacancies in the Captain position.

The arguments put forth by Akron simply ignore several pertinent facts.  First, in addition to the vacancies at the Lieutenant and Captain level, Akron's fire department also has four district chief vacancies and two deputy chief vacancies.[4]  While not explained to the Court, Akron has chosen to allow these vacancies to occur.  Simply filling the vacancies at the upper level of the department would create sufficient openings to allow Plaintiffs to be promoted without any alteration to the departmental structure.

Furthermore, the fact that the Akron has not budgeted to fill these positions has no impact on whether promotions are warranted *by law*.  This litigation has been ongoing since November 16, 2006.  Since the inception of litigation, Plaintiffs have sought a remedy that included promotions.  Akron's liability was first established on December 23, 2008.  Akron's liability was reaffirmed by this Court on September 30, 2010.  As such, the prospect of promotions has

---

[4] The promotional rank structure for Akron's fire department begins at Lieutenant, then Captain, then District Chief, then Deputy Chief, then Fire Chief.

12

existed for a lengthy period of time.  Akron's decision not to factor this possibility into its budget has no legal effect on whether promotions are equitable and appropriate.

Furthermore, Dawson's statements regarding a limited budget and the hardship that Akron will endure fly in the face of prior statements made by Akron less than one month ago in this litigation.  Akron made it very clear on June 15, 2011 that there is a strong need for promoting individuals to the rank of Lieutenant.  Doc. 358 at 13:18-26:15.  Specifically, Akron stated that "there have been a considerable number of individuals in the department leaving the department perhaps earlier than anticipated. And we have a considerable number of vacancies, in particular at the lieutenant's level. We are at the point that our Interim Fire Chief Ross has indicated we just can't keep going on like this without a promotional exam." Doc. 358 at 15:25-16:6.  Indeed, counsel for Akron indicated that "the City is now in a far more urgent posture regarding staffing of the Akron Fire Department."  Doc. 358 at 13:18-20.

Thus, it is clear that management within the Fire Department, including the interim Fire Chief, see promotions as immediately necessary.  However, following this Court's order, Akron now argues that it cannot afford promotions – promotions that it had previously indicated were not only a necessity, but that Akron had indicated it was already beginning the process to facilitate.

Furthermore, Akron's budgetary arguments must fail for an additional reason.  There is no dispute that each vacancy, at every level, in the fire department is routinely filled by an "acting" Fire Department employee.  However, the record indicates these "acting" individuals are only paid at the lowest level of pay for the higher position.  As a result, by filling its vacancies with "acting" officials since the inception of this litigation, Akron has substantially reduced the overall pay to these positions.    Accordingly,  any  argument  about  budgetary

13

restraints ignores the reality that Akron has relied upon this pending litigation to decline to give a new promotional test.  Up until June 15, 2011, Akron has taken the view that it was not willing to move forward with a new exam while this litigation was pending.  That voluntary choice by Akron has ultimately saved Akron a considerable sum of money by allowing vacancies to remain and effectively denying higher step increases in wages by utilizing only "acting" persons.  Akron's budgetary arguments, therefore, not only *lack* factual support, but actually *conflict* with the facts known to the Court.

In summary, Akron has continued its prior litigation practice.  Herein, Akron posits that it has only 3 available options to comply with this Court's order and that none of the options is feasible for myriad reasons.  However, Akron omits that its options are limited only by its own voluntary actions.  Akron chose not to engage in a new promotional process once this litigation began.  Akron chose to maintain vacancies to the point that it "just can't survive" with any further delay.  Doc. 358 at 23:16.  Akron chose to maintain vacancies at the District Chief and Deputy Chief levels, artificially decreasing the vacancies at the Captain's level.  Akron may not now consolidate all of its voluntary decisions and foist the results of its choices on Plaintiffs.

The Court readily acknowledges that its order will cause changes within the structure of the fire department.  However, it will not in any manner *alter* that structure unless Akron again makes a voluntary decision that leads to that result.

From the Court's perspective, Akron will suffer no harm from the promotion of Plaintiffs.  No monetary harm will flow because Plaintiffs will only be paid for work they are actually performing.  Moreover, as Plaintiffs have been acting as Lieutenants and Captains throughout this litigation, there can be no argument that safety will in any way be compromised

by these promotions.  Finally, the structure of the Fire Department can easily be maintained if these promotions go into effect.

Based upon the above analysis, this prong of the Court's required review weighs heavily against the issuance of a stay.

3.  <u>Substantial Harm to Others</u>

Staying the promotion of the firefighters will cause substantial harm others.  Akron's last promotional examination was in 2004.  Since then, Akron has refused to develop an examination because of the pending litigation: "in fairness to the fire department and the citizens of Akron, we need to do something. This has impeded us for a considerable number of years. I realize that there are many factors that go into that, but we are at a point that we need to move forward and get this promotional process going."  Doc. 358 at 18:19-24.

There is nothing preventing Akron from developing a new, non-discriminatory promotional examination to fill its numerous vacancies.  Despite the fact that this Court has never enjoined Akron from developing a new promotional examination, Akron has hid behind this litigation and refused to promote Plaintiffs, or anyone for that matter, despite the admitted need for such promotions.  By promoting Plaintiffs, Akron will be encouraged to move on with developing a promotional examination without the worry that these Plaintiffs may disrupt any future eligibility list.

In stark contrast, staying the promotions will allow Akron to continue down the same path it has travelled since 2006 – ignoring the problem, refusing to develop a test, and effectively doing nothing.  A stay would harm not only Plaintiffs but other non-culpable firefighters and the citizens of the City of Akron as well.  There is little doubt that Akron will continue to use this litigation as a reason to further delay testing and have its employees informally fill in the vacant

15

positions without paying commensurate salary, benefits or pension.  As a result, more than four years have passed since the last eligibility list *expired*.  There are an untold number of Akron firefighters that have never even been able to test for a promotion because Akron has unilaterally made the decision not to create a new test during litigation.  Further staying these promotions would only push any future testing out to an even later date.

Plaintiffs will also be substantially and irreparably harmed if the promotions are stayed. Plaintiffs have been the prevailing party for over two years but have not been allowed any remedy.  As Akron has made it clear, this litigation will likely continue, in this Court and into the Court of Appeals, for the "next one, two, or three years[.]"  While these appeals drag on, Plaintiffs go without a remedy of any kind.  In contrast, an immediate promotion serves both parties well.  Akron's vacancies are reduced, while Plaintiffs receive some immediate remedy. In addition, any harm to Akron is minimized because they are only paying Plaintiffs a higher salary *in exchange* for services actually performed.

Additionally, many Plaintiffs are currently acting as Lieutenants or Captains but are not receiving the same pay as those who have been formally promoted.  Despite Akron's critical need for promotions, it has used Plaintiffs and others in "acting" positions. Although the actors have been doing the job for years, they are paid at the lowest step increase, rather than the step which is commensurate with their time in service.  Akron's continued use of Plaintiffs in this manner harms them by artificially limiting their salary, benefits, and pension, while they provide the services required by Akron and Akron's citizens.

Third, Plaintiffs have lost, and will continue to lose, the ability to gain experience and advance in their careers.  Failing to promote the Plaintiffs prior to any test being given prevents Plaintiffs from testing for their next promotional rank.  On June 15, 2011, Akron indicated it

16

intended to immediately begin the promotional process in order to fill its critical need for Lieutenants and Captains. Doc. 358 at 13:18-26:15. Should Akron give the promotional examination prior to the conclusion of this litigation, Plaintiffs will not be able to test for the appropriate rank. Despite having "acted" as Lieutenants and Captains, Plaintiffs will still have to test into those positions. Even with the promotions ordered by this Court, Plaintiffs will have to seek additional injunctive relief from this Court in order to test for the next higher rank because they will not have the required time-in-grade at the time of the next examination. In contrast to Plaintiffs, Akron formally promoted 39 individuals off of the invalid 2004 promotional exam -- those non-culpable employees remain promoted and will be able to test into the next rank as soon as the examination is developed. As a result, every firefighter that is eligible to test will be harmed through a ruling that continues to keep Akron from giving new and appropriate tests.

Additionally, those who are not currently acting as officers are also losing their ability to gain experience and advance in their careers. *See Johnson v. City of Memphis*, 2009 WL 3784599, at *5 (W.D.Tenn. Nov. 10, 2009). In *Johnson*, the District Court found "persuasive the testimony of the plaintiffs who testified that they have lost and will continue to lose the ability to gain valuable work experience as lieutenants, compete for future promotions to major due to their inability to meet the two-year lieutenant service requirement, and otherwise advance in their chosen careers, if the court does not grant the relief requested." This Court agrees. Plaintiffs herein are suffering the same immeasurable, irreparable harm as the plaintiffs in *Johnson*. A stay would only serve to extend the period of the irreparable harm.

Promotion is the only remedy that leaves the Plaintiffs in the same position as those who benefitted from the discriminatory promotion process. The goal of a remedy in a discrimination suit is to return the victim of the discrimination to the state he/she would have been in but for the

17

discrimination.  *Albemarle*, 422 U.S. at 418.  To accomplish this goal, the victims of the discrimination need to be placed at least in a position comparable to those who benefitted from the discriminatory process.  Akron promoted 39 people based off tests that were found invalid. Akron has not taken any steps to demote any of the 39 people who benefitted from the discriminatory promotion process.  Because the Court will not demote those individuals[5], and in fact took great steps not to order promotions until it was certain that demotions would not result, the only remedy that leaves Plaintiffs on somewhat even footing with those advantaged by the test is promotion.

Moreover, the Court's promotions will not cause substantial harm to others.  Many Plaintiffs currently serve as "acting" officers above their official rank.  The only requirement for an "acting" officer is seniority.  For example, the longest time-in-rank Lieutenant on any given shift where a Captain is not on duty serves as "acting" Captain.  The "acting" Captain's job duties are the same as a Captain's.  The "acting" Captain is required to make the same split-second decisions as a Captain would make.  The "acting" Captain is just as responsible for his/her crew and the public's safety and well-being as the Captain.  Moreover, most Plaintiffs seeking promotion were eligible for promotion based off the discriminatory test, and all Plaintiffs have an additional seven years of experience since the last exam.

Akron appears to argue that others will be harmed within the Fire Department because they will be denied the opportunity to be promoted because Plaintiffs will fill nearly all of the openings for Captain.  However, this argument again is founded upon Akron's own voluntary choice to under-staff the upper ranks of the Fire Department.  Furthermore, it ignores the fact that many current Captains and several of the Plaintiffs being promoted to Captain will enter

---

[5] Even if those promoted based off the 2004 exam were demoted and required to retest for the promotions, they would have the advantage over Plaintiffs of having three to six years of experience at the higher rank.

DROP or retire soon.  As such, any assertion that this Court's order will limit future opportunities to test for Captain again ignores the facts as they currently exist.

In summary, there will be a substantial harm to others if the Court's order is stayed.  That harm will only grow as an appeal extends out the time for relief in this matter.  Accordingly, this prong also weighs heavily against granting a stay.

4.  Public Interest

Public interest weighs against granting a stay for multiple reasons.  First, as detailed above, promoting the Plaintiffs encourages Akron to develop a new promotional exam.  Without a new test, the Akron Fire Department will never be fully staffed, so the City will never be as safe as it should be.  There are currently 28 vacancies at the Lieutenant's rank and five at the Captain's rank.  By the end of July, there could be ten vacancies at the Captain's rank, and even more by the end of the year.  The vacancies at Deputy Chief and District Chief could be filled in by District Chiefs and Captains, respectively, causing Lieutenants to fill in as Captains, thus causing even more vacancies at Lieutenant, which will need temporary fill-ins as well.  This pattern of filling the vacancies with "acting" officers must cease. The public has an interest in having formal, stable officers in the Fire Department, and the way to accomplish that is to encourage Akron to develop and give a promotional exam.  Granting the stay allows Akron to continue to hide behind the litigation and only minimally staff the Fire Department.

More important to the citizens of Akron, however, is the fact that there is currently no mechanism for determining the quality of its Lieutenants and Captains.  39 individuals were promoted through the use of an invalid, discriminatory test.  Whether those individuals were *properly* qualified for promotions at that time will never be known.  That fact, however, has not caused enough concern to Akron to generate a new examination process.  Akron's citizens,

19

however, deserve a new process that will ensure that all future promotions are based on a proper testing procedure.  Promoting Plaintiffs will serve to encourage this testing process to begin. Furthermore, any concern over the ability of Plaintiffs to perform in their elevated positions is alleviated by the substantial period of time that they have been force to work as "acting" Lieutenants and Captains.

Second, having established that the 2004 test was discriminatory in December of 2008, the public has a strong interest in the prompt enforcement of federal discrimination laws.  *See General Tel. Co. v. EEOC*, 446 U.S. 318, 326 (1980).  Eradicating any form of discrimination vindicates the public interest.  This public interest is only heightened when the discriminating entity is a public employer.

Third, there is a strong public interest in a stable and reliable public safety force.  Akron admits, as it must, that it routinely uses "acting" Captains and Lieutenants to fill its vacancies. As such, the leadership of Akron's Fire Department changes from shift-to-shift and day-to-day based upon little other than work schedules.  This ever changing chain of command does not bode well in an environment where co-workers must routinely trust one another with their lives. Instead, both Akron's citizens and its firefighters deserve stability in leadership positions.

Finally, liability in this matter was first established in December of 2008 and recently reaffirmed in September of 2010.  However, due to lengthy post-judgment practice along with an order to retry the issue of damages, Plaintiffs have been left with no remedy since the jury's verdict 30 months ago.  The public has an interest in seeing that the victims of discrimination receive a timely remedy.  As such, for this reason and all the reasons stated above, the public interest weighs against granting a stay.

**IV. Conclusion**

For the above reasons, this Court DENIES the City of Akron's Motion to Suspend Mandatory Injunction Requiring Automatic Promotion of Plaintiffs Currently Employed.

IT IS SO ORDERED.


 July 18, 2011            _____/s/ Judge John R. Adams_____
Date                     JUDGE JOHN R. ADAMS
                         UNITED STATES DISTRICT COURT

21