UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HOWE, et al., | ) | CASE NO. 5:06 CV 2779 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | <u>ORDER</u> |
| | ) | |
| CITY OF AKRON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiffs' renewed motion for permanent injunctive relief and for the appointment of a receiver. Doc. 573.

I. Background

The Sixth Circuit recently set forth the factual and procedural history in this matter:

A.

In December 2004, the City conducted promotional exams for the positions of Captain and Lieutenant in the Akron Fire Department. The two sets of exams were prepared, administered and scored by E.B. Jacobs, an outside testing consultant. Both the Lieutenant and Captain exams contained a 100–question multiple choice component on technical job knowledge and two oral assessment exercises. The Lieutenant exam also contained a written work-sample exercise. The Captain exam did not have a written exercise, but instead had an additional oral assessment involving a group exercise.

1

Promotion candidates were placed on an "eligibility list" in an ordered ranking. In order to be placed on the eligibility list at all, a candidate had to have a scaled score of at least seventy percent on the promotional exam. The scaled exam score was converted to a ninety-point scale, and then up to ten points were added, corresponding to the candidate's seniority level. The candidates were then ranked in order of their total scores, from highest to lowest, on the eligibility list.

The promotional process dictated that candidates be selected from the eligibility list according to the "Rule of Three," which "required that for each vacant position, the three top-ranked candidates [be] considered for the vacancy." When there was a single vacancy, the chief of the fire department was supposed to interview the three candidates and then select one to promote. When there were multiple vacancies, a number of candidates from the top of the list, equal to 1.4 times the number of vacancies, would be certified for consideration and the chief would choose from among them. In fact, all candidates were promoted congruent with their place in a "straight rank-ordering" based on written and oral exam results. Interviews were conducted, ostensibly pursuant to the Rule of Three, but it is unclear whether or how the interviews contributed to the promotion selections.

Exam pass rates and promotion rates were as follows:

| Rank | Class | Pass Rate | Promotion Rate |
|---|---|---|---|
| Lieutenant | Over–40 | 76% (29/38) | 24% (7/29) |
| Lieutenant | Under–40 | 87% (55/63) | 38% (21/55) |
| Lieutenant | Caucasian | 85% (69/81) | 36% (25/69) |
| Lieutenant | African–American | 75% (15/20) | 20% (3/15) |
| Captain | Caucasian | 81% (26/32) | 27% (7/26) |
| Captain | African–American | 78% (7/9) | 71% (5/7) |

B.

The firefighter plaintiffs initially brought twelve employment discrimination claims against the City, challenging the promotion selection processes.

Counts I, III and V alleged disparate-impact age discrimination on the basis that the promotional exams for the ranks of Lieutenant and Captain had an adverse impact on twenty-three firefighters due to their age. 29 U.S.C. § 621 et seq. ("ADEA"); Ohio Rev.Code Ann. §§ 4112.02, .14, .99. Counts II, IV and VI

alleged disparate-treatment age discrimination on the basis that the same twenty-three candidates for promotion were subject to disparate treatment on the basis of their age in the administration and scoring of the promotional exam. 29 U.S.C. § 621 et seq. ; Ohio Rev.Code §§ 4112.02, .14, .99.

Counts VII and IX alleged that the promotional exam for Lieutenant had an adverse impact on three African–American firefighters due to their race. 42 U.S.C. § 2000e et seq. ("Title VII"); Ohio Rev.Code Ann. § 4112.02(A). Counts VIII and X alleged that the promotional exam for Captain had an adverse impact on twelve Caucasian firefighters due to their race. 42 U.S.C. § 2000e et seq. ; Ohio Rev.Code Ann. § 4112.02(A). Counts XI and XII, which the district court dismissed prior to trial, alleged violations of the Equal Protection Clause of the Fourteenth Amendment.

A jury trial commenced on December 3, 2008. After the close of Plaintiffs' case, the parties stipulated to dismissal of Counts II, IV, and VI (the age discrimination disparate-treatment claims). At the close of all the evidence, Plaintiffs voluntarily dismissed the portions of Counts I, III and V (the age discrimination disparate-impact claims) that related to the exams for Captain rank. The district court denied the City's motion for judgment as a matter of law on the remaining claims, which were submitted to the jury. The jury found in favor of Plaintiffs on all remaining claims.FN1

FN1. The jury's decision on Plaintiffs' Title VII claim was "advisory only" because there is no right to a jury trial on Title VII claims. However, the district court's disposition of the Title VII claim was required to be consistent with the jury's findings on Plaintiffs' other claims. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1332–33 (6th Cir. 1988).

The district court entered a judgment in accordance with the jury's verdict. It concluded that the AFD's 2004 promotional exam adversely impacted twelve Caucasian Captain candidates on the basis of their race, adversely impacted three African–American Lieutenant candidates on the basis of their race, and adversely impacted eleven Lieutenant candidates on the basis of their age. Each Lieutenant candidate was awarded $9,000 in compensatory damages and $72,000 in front pay. Each Captain candidate was awarded $10,000 in compensatory damages and, with one exception, $80,000 in front pay. The district court denied the City's renewed motion for judgment as a matter of law, and denied the City's motion for a new trial as to the issue of liability.

The district court, however, granted the City's motion for a new trial solely on the issue of damages. The court held that "[i]n spite of the differing circumstances of each of the 23 plaintiffs, the jury awarded each Lieutenant candidate the same amount and each Captain candidate the same amount (with one exception as above)," thereby "fail[ing] to ... award damages based on the testimony of the

3

> individual Plaintiffs." At the new trial, the court pledged to also consider Plaintiffs' motion to alter or amend the judgment, in which Plaintiffs had requested, among other things, "equitable relief [ ] in the form of promotion to any prevailing Plaintiff electing such relief."
>
> At a pretrial conference on July 7, 2011, the district court said it would grant the motion for equitable relief by ordering promotions:
>
>> I was concerned [earlier] that other employees may be displaced; and ... [believed] perhaps an alternative would be a new test, which ... would be a more appropriate remedy.
>>
>> However, circumstances have changed.... Promotions, it appears, are now feasible.... There are over 25 vacancies in the lieutenant position and there are 5 vacancies in the captain's position.
>
> The court also cited its concern that the City could be "crippled" if no promotions were made until the end of all litigation.
>
> On July 13, 2011, the court issued an order requiring the City to promote Plaintiffs no later than July 18, 2011. The City appealed the preliminary injunction to this Court on July 14, 2011. Plaintiffs moved to dismiss the appeal on the grounds that the district court had not yet entered a final order and piecemeal appeals are disfavored. This Court denied their motion, noting that "[a]n order directing injunctive relief in an employment context, but that leaves damages remaining to be calculated, may be an appealable injunctive order."
>
> The new damages trial commenced as a bench trial on July 25, 2011. During trial, the court acknowledged that it had "discretion in the interim" (presumably between the issuance of the order and final judgment) to "revisit" its decision to promote Plaintiffs. Afterward, among other things, the City moved for judgment on partial findings. *See* Fed. R. Civ. P. 52(c). The district court denied the motion, "conclud[ing] that the better course is ... to render its rulings after the close of all the evidence, testimony, and the applicable law, and after the parties' post-trial submissions." The new damages trial concluded on November 28, 2012.

*Howe v. City of Akron*, 723 F.3d 651, 655-657 (6th Cir. 2013). On August 30, 2013, this Court issued its Findings of Fact and Conclusions of Law for the damages retrial. Doc. 588. The City appealed this Court's preliminary injunction order granting promotions on two grounds: "(1) there is insufficient evidence to support a prima facie case of disparate impact liability; and (2) even if there is sufficient evidence for a prima facie case, the district court abused its discretion

in issuing the injunction." *Id*. at 657. The Circuit declined to visit the City's first objection, *id.* at 657-658, and held that this Court did not abuse its discretion by ordering the City to promote Plaintiffs, *id.* at 663-664.

Plaintiffs have renewed their motion for permanent injunctive relief regarding the City's fire department promotion process. Doc. 573. The parties have both had ample opportunities to brief their respective positions on Plaintiffs' requested injunctive relief.[1]

II. Law and Analysis

To make victims of unlawful discrimination whole, "the [ ] objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975). Once liability for racial discrimination has been established, a district court has the duty to render a decree that will eliminate the discretionary effects of past discrimination and prevent like discrimination in the future. *See Id.* at 418. In order to achieve these purposes, a district court has broad, although not unlimited, power to fashion the relief it believes appropriate. *Shore v. Federal Exp. Corp.*, 42 F.3d 373, 377 (6th Cir. 1994).

Plaintiffs have urged here that the complete lack of job relatedness on the examinations at issue gives rise to a strong inference that the City knowingly discriminated. The Court, while recognizing such an argument, is also cognizant of the fact that this limited group of Plaintiffs is entitled to a make-whole remedy, having proven to the Court and a jury that they were subjected to unlawful discrimination. Accordingly, prospective relief is warranted by both the arguments

---

[1] The City requested oral argument on Plaintiffs' motion for permanent injunction. Doc. 636. In light of the extensive briefing by the parties, the Court finds that an oral argument is not necessary and would not assist the Court in determining the necessity of injunctive relief.

5

raised by Plaintiff above and by the fact that such relief is necessary to provide the make whole remedy to which each Plaintiff is entitled.

The City argues that injunctive relief is not necessary since Plaintiffs have been made whole from the City's discriminatory promotion process. The Court disagrees. The Court promoted certain Plaintiffs, thus eliminating front pay damages; and awarded back pay at the conclusion of the damages retrial. However, the Court recognized all along that there was not a simplistic method to determine what level each plaintiff would have been promoted at and how long each would have been at that level. Because of the City's expressed urgent need to promote, and absent a promotional test in the foreseeable future, the Court promoted all Plaintiffs at step one and all were promoted on the same date. The harm that remains is an equitable one. There are many questions that must be answered: e.g. Are there any plaintiffs that deserve additional time in grade? If so, how much? Should there be some type of carve out for the next round of testing to put the victims of the discrimination on equal footing as those promoted earlier off of the discriminatory test? In essence, Plaintiffs were deprived of a fair process and a fair opportunity to be promoted at the outset of the creation of the eligibility list. Injunctive relief is necessary to restore Plaintiffs "to a position where they would have been were it not for the unlawful discrimination." *Albemarle,* 422 U.S. at 421. At a minimum, Plaintiffs must be made a part of any new process to even approach a make whole remedy.

The Court finds that absent injunctive relief Plaintiffs have **not** been made whole. Plaintiffs' motion for permanent injunctive relief, therefore, is GRANTED.

A. PERMANENT INJUNCTION

1. The City of Akron shall not use, in any way, the examination or the separate legal entities involved in the creation of the examination process that was the subject of this lawsuit, as part of any process for the next cycle of promotional examinations given by the City.

2. The City of Akron shall not use as part of any promotional examination process, any examination that in any way results in a disparate impact upon any protected group of applicants and is not job related for the promotional position identified by the examination and consistent with business necessity, or does not otherwise meet the requirements of federal, state, and City equal employment laws.

3. The City of Akron shall not take any step in any process for the promotion of its firefighters, or use any examination as part of such process, without first obtaining the approval of the Court Monitor (the "Court Monitor") through the processes specified by the Monitor.

4. The City of Akron shall not retaliate against or in any way adversely affect the terms or conditions of employment of any person because he or she has complained of discrimination on the basis of their race or age in the promotional process, or has participated in the investigation or litigation of any claim or allegation of such discrimination, or has sought or obtained relief from the court in this case.

5. The City of Akron shall not discriminate on the basis of race or age against its firefighter candidates in the development or implementation of its promotional process.

6. The Parties shall timely comply with the orders of the Court Monitor issued pursuant to this Order.

7. The Court Monitor shall adopt a schedule which requires the City of Akron to notify the Monitor and the Parties before commencing any step in creating a new promotional process.

8. The Court Monitor shall develop a process, at his discretion, which allows Plaintiffs to review the City of Akron's proposals, provide objections or input where appropriate, and be compensated for that review. The Court Monitor, when developing this process, shall specify any and all limitations placed on Plaintiffs with regard to both content and compensation.

9. The Court Monitor may require the City to disclose any information relating to any step in its proposed new promotional process before allowing the City to proceed to any step in the process. The Court Monitor may require the City to establish that it has satisfied conditions specified by the Monitor, or to obtain the Monitor's explicit approval before commencing any step in the proposed new promotional process.

10. The Court Monitor, in consultation with the Parties, shall prepare and file a Document Retention and Preservation Order directing the City of Akron to retain, preserve, and maintain specified broad categories of documents that are relevant to evaluating the City's compliance with this Order, including documents currently in existence and any documents which will be created in the future. The Court Monitor may amend or supplement the Document Retention and Preservation Order at any time.

11. Following the Court Monitor's issuance of the Document Retention and Preservation Order, counsel for the City of Akron shall immediately issue a Document Retention and Preservation Notice advising all individuals currently subject to the Document Retention and Preservation Order of their continuing obligations under the order, and shall

promptly issue a Document Retention and Preservation Notice to any individual who may subsequently become subject to the duties and obligations created by the order.

12. A violation of the terms of this injunction, including but not limited to violations of the document retention policy or deadlines set by the Monitor, by any party, may be punished by court-ordered sanction if another party moves for such sanction. Such sanction may include, but is not limited to, the use of contempt proceedings if the alleged violation is of sufficient gravity to warrant such proceedings.

## B. APPOINTMENT OF A COURT MONITOR

This Court does not have the time or inclination to launch an investigation into the arcana of the City's promotion policy, or any other policy. Going forward, the City will have to mobilize multiple agencies to design a new testing procedure. This Court cannot pore over the city charter, untangle the city's administrative hierarchy, and hold hearing after hearing each time the City invokes some wrinkle of local governance to postpone the imposition of a remedy. This Court is prepared to issue whatever orders are necessary to cut through any red tape, but it cannot do so without an understanding of what is actually feasible, given the City's rules and needs.

The problem of timely exam construction is compounded by the complexity of the design process. Through the voluminous briefing in this matter, the Court has learned that Title VII requires the designers of employment tests to follow complicated procedural and substantive guidelines. As the parties have both instructed the Court, the development process is highly involved and technical. Furthermore, the parties have sharply disagreed for years over even the simplest facets of such a process, including the number of available positions with the Akron

Fire Department.  Additionally, the Court would be remiss if it did not note that the existence of a collective bargaining agreement and pending arbitration matters related to the lack of a promotional process can only serve to further complicate the matter.  Accordingly, the task of overseeing and developing a valid promotion procedure will require more than just analytic problem-solving skills; it will require management and mediation skills, as well as the time and resources to become educated in the minutiae of municipal firefighting.

This Court does not want the selection procedure to be dictated by experts and presented to it for rubber-stamping.  Rather, development of the new promotion procedure must be overseen by someone who can develop an understanding of the intricacies of the design process and use that understanding to resolve disputes intelligently and move the parties toward the outcomes that Title VII and Plaintiffs require.  Such oversight would improve this Court's confidence in the validity of the resulting selection procedure and help it make informed decisions about future remedial actions.

In light of the pressing need for relief in this case and the complexity of the multitude of issues surrounding this relief, the Court will be unable to expeditiously resolve the complex issues relating to test-development and remedial-phase discovery.  *See* Fed. R. Civ. P. 53(a)(1)(C); *United States v. City of New York,* 717 F.3d 72, 80 (2nd Cir. 2013) (noting that, due to "the complexity of pending relief issues" the trial court appointed a Special Master and also a Court Monitor to "oversee the City's development of a new [firefighter] exam").  In such circumstances, appointment of a Court Monitor is appropriate under Fed. R. Civ. P. 53 and the Court's inherent equitable powers. *See 3 Wright & Miller, Federal Practice and Procedure* § 2602.1 (2008) (reliance on a master appropriate "when a complex decree requires administration or complex policing, particularly when a party has proved resistant or intransigent or special

skills are needed."); *id*. at § 2605 (appointment appropriate to implement complex judgments); *see also Ensley Branch, NAACP v. Seibels*, 31 F.3d 1548, 1574 (11th Cir. 1994) (district court may appoint special master to design and evaluate non-discriminatory job selection procedures); *United States v. City of New York*, 2011 WL 6131136 (E.D.N.Y. Dec. 8, 2011). This Court finds it necessary to appoint a Court Monitor to address post-trial matters in this litigation.

Pursuant to Fed. R. Civ. P. 53(a)(1)(C) and the Court's inherent equitable powers, this Court gives notice to the parties that it intends to appoint David R. Cohen to serve as Court Monitor[2] for post-trial compliance relief in this litigation. Attached to this Order as Exhibit 1 is a copy of Mr. Cohen's resume.

1. The duties of the Court Monitor shall include the following:

    a. Carrying out all responsibilities and tasks specifically assigned to the Monitor in this Order and any future orders of the Court;

    b. Monitoring and reporting on the City's compliance with its obligations under this Order, and issuing any orders the Court Monitor believes will facilitate the city's timely compliance with the terms of this Order;

    c. Facilitating the parties' resolution of any disputes concerning compliance with their obligations with respect to the subject matter of the Court Monitor's duties as set forth in subsections (a) and (b), above, without the court's intervention, and recommending appropriate action by the court in the event an issue cannot be resolved by the parties with the Court Monitor's assistance;

    d. Investigating any matters related to the duties set forth above and enforcing any orders related to the matters set forth above.

---

[2] Prior to being appointed, Mr. Cohen must file an affidavit "disclosing whether there is any ground for disqualification under 28 U.S.C. § 455." Fed. R. Civ. P. 53(b)(3); see also Rule 53(a)(2) (discussing grounds for disqualification).

2. The Court Monitor shall have all authority provided under Fed. R. Civ. P. 53(c).

3. The parties will have ten (10) days to file objections to the Court's appointment of David R. Cohen as Court Monitor. Following resolution of any objections, the Court will, if appropriate, docket an appointment order further specifying the powers of the Court Monitor.

III. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Permanent Injunctive Relief is GRANTED. Plaintiffs' Motion to Appoint a Receiver is likewise GRANTED as detailed herein.

IT IS SO ORDERED.

  March 27, 2014                                  *s/ Judge John R. Adams*
Date                                           JUDGE JOHN R. ADAMS
                                                 UNITED STATES DISTRICT COURT