

# THOMPSON & BISHOP
*EMPLOYEE RIGHTS & SMALL BUSINESS EMPLOYMENT*

**Dennis R. Thompson**
OSBA Board-Certified
Employment Law Specialist
tmpsnlaw@sbcglobal.net

**Christy B. Bishop**
ATTORNEY AT LAW
tmpsnlaw@sbcglobal.net

May 22, 2008

Patricia Rubright, Esq.
Michael Defibaugh, Esq.
City of Akron Law Department
161 South High Street, Suite 202
Akron, Ohio 44308

### VIA FACSISMILE & REGULAR U.S. MAIL

Re: *Howe v. City of Akron*
Case No.: 5:06 CV 2779
Subject: Settlement Proposal

Dear Counsel:

As we discussed today, the May 21, 2008, settlement proposal included a typographical error in the last section entitled "Demotion of Promoted Officers." This letter corrects that error. The entire settlement proposal is included herein for ease of reference.

As we continue through discovery, it seems apparent to us, anyway, that we should be seeking to resolve this case in a manner that minimizes the possible adverse ramifications that could result from a court decision. As we discussed, we have no interest in seeking the demotion of those who have been promoted. Our issue is the selection process used in this instance and avoiding ever having this type of process used for future promotional selections. There are far better alternatives available.

In order to assess the effect of making the promotions for the plaintiffs, we have prepared an estimated attrition analysis through 2011. As the basis for determining those who will leave the department through retirement, 33 years years service was used as the demarcation line. This was due to the eligibility and retirement requirements of DROP – 25 years service to enter the program and mandatory retirement after 8 years.

While it is unknown how many of the firefighters with 33 years service are actually in DROP, it is a safe assumption that the majority of those reaching this service benchmark are in DROP and will be retiring according to the program's requirements.

Based upon this analysis, there will be enough retirements through 2011 to provide for promotions of each of the Plaintiffs for which promotion is needed. This would avoid the City having to undergo another promotional selection process examination for several years and would have the benefit of promoting capable and conscientious officers to fill the need during this same period. During this period, AFD, the City and the Plaintiffs could work together, under Court supervision, to develop a more effective and viable promotional selection process. It should be clear at this point that what was used in this instance and has been used in the past by the City is simply not a sound or even logical basis to make promotional decisions in AFD.

**Attrition Analysis**

Retirements at the more senior ranks have a ripple effect – a vacancy that is filled at the District Chief rank creates similar vacancies at the lower ranks due to successive promotions to fill the related downstream vacancies.

This year to date, 5 additional Lieutenants have retired (Fisher, Hubele, Ziga, Leidel, Lozowy); two more will probably leave later this year (Stokich, Pizzule). With the recent medical uncertainties with Jerome Crawford (a Plaintiff), it is very possible that this Lieutenant position may become vacant, as well. One District Chief will also be retiring (Marina).

By 2011, there will be 15 Lieutenants (including two Plaintiffs), 5 Captains, 1 District Chief, 1 Deputy Chief and the Chief who will have attained 33 years service. Assuming that all retire by 2011 and including those who have retired to date in 2008, the available slots created by these retirements (attrition) look like this:

    1 Chief
    1 Deputy Chief
    3 District Chiefs
    8 Captains
    28 Lieutenants

**Plaintiffs**

In this case there are a total of 29 Plaintiffs: 12 for the rank of Captain and 17 for the rank of Lieutenant. Of the Lieutenants, 2 have already been promoted (Schueller, Weaver) and one has already retired (Harvey); this leaves 14 that are seeking promotion.

**Promotions**

Promoting of each of the Plaintiffs for whom promotion is sought is well within need for AFD and results in some cost avoidance by delaying by a few years, anyway, having to undergo an additional promotional process.

By promoting each of the Captain's examination Plaintiffs (12), an equal number of Lieutenant positions will automatically open up. With the vacancies already in place due to retirements (5), this

means that no new or additional Lieutenant positions are needed to accomplish promotion of the Lieutenant Plaintiffs.

Almost all of the Captain Plaintiffs will be filling existing positions within the next couple of years and certainly by 4 years.

Seniority dates for each of the Plaintiffs will be the same date as the first promotions made from the eligibility lists.

**Promotional Process**

One of the primary objectives of this litigation was to try and change the promotional selection process. None of the Plaintiffs desire to see the existing process in the future – and there are far better methods available.

There is some flexibility on how to accomplish this, but there are several points that must be considered within the scope of this aspect of settlement.

- As you may be aware, the past 3 collective bargaining agreements have included a memorandum of understanding regarding the creation of an officer development program. To date, nothing has been done to implement this understanding. Considering the total lack of any type of succession planning in AFD combined with the impending retirements due to DROP, I should think this would be a high priority already. Use of the National Fire Academy and Ohio Fire Academy – with their free courses – would be a necessary part of this. Moreover, the University of Akron has an excellent Fire Science curriculum that could be readily adapted to such a program in AFD. In this program, candidates would receive college credit for the courses they are taking. With the trend throughout the country requiring at least Associate Degrees to be even considered for more senior ranks (Battalion Chief and above), this program would directly result in upgrading not only the quality of officers, but the overall professionalism in AFD as a whole.
- Candidates would have to sign as being part of the AFD officer development program and AFD would have to ensure that all firefighters in the officer development program would be rotated to meet the minimum experience requirements for advancement to each rank.
- The City would have to provide some assistance to the candidates, either through tuition reimbursement to a maximum level each year (Minneapolis sets its limit at $2,000 per year per participant) or by paying the instructors for the classes. To alleviate the financial aspects of this, the coursework part of this program will not be compensible time for the participants, since the commitment of the candidate to the fire department and the promotional process seems to be a priority in the department and among the Plaintiffs, as well.
- The SOGs have to be updated and made to reflect AFD practices, policies and procedures. No officer candidate should be held accountable for policies and practices that AFD does not use.
- Written tests are of little value in determining effective firefighting officers. Such a test should be limited to a pass/fail threshold requirement that does not include questions relating to basic firefighting, specialty units, or tools and practices not used by AFD. The test would be administered at the completion of the pertinent officer development program coursework for the rank being tested. To take the examination, the participant would not be required to undergo the coursework. This avoids any contention that the City is forcing participants to spend their money on mandatory programs for promotion.
- Assessment centers – if done properly – at this point in high stakes testing environments for fire officers are the most reliable and appropriate selection method. However, use of assessors as

role players, unverifiable candidate performances, exercises that vary widely among the candidates and exercises that do not reflect the duties of the tested rank are not acceptable.
- Banding of candidates according to minimum experience levels that vary by rank and then score ranges. For example, those firefighters with at least 5 years experience in suppression and in rank and one year in a specialty unit other than paramedic will be the minimum experience levels for the top band. For the rank of Captain, a minimum of 7 years in suppression, at least 2 of which as a company officer, 2 years as a staff officer and assignment to at least one specialty unit other than paramedic for 2 years and 5 years in rank would be the preferred minimum experience levels for the top band, and so on up the ranks, adding staff assignment and specialty unit experience as one progresses up the chain of command. Each band must be depleted before promotions can be made from the immediately successive band. This ensures that more seasoned and qualified officers are promoted.

We propose that as part of the settlement agreement, we – Plaintiffs and City of Akron under the review of the Court – agree to develop a comprehensive officer development and promotional process to be implemented with the next promotional cycle for any rank.

As part of this, the Court would be given continuing jurisdiction to review our progress at predetermined intervals and order a promotional process should the parties not be able to reach accord on any given aspect of the process. Simply agreeing to form committees to study the problem and hopefully find a resolution will not be amenable to us, as the MOU for the officer development program has demonstrated how ineffective this is. By having the Court supervise our efforts, it is far more likely that a binding and satisfactory process can be developed in a fairly reasonable period of time.

This will take some dedicated effort on all parts and some provision will need to be made to cover the legal fees for the Plaintiffs in this aspect of the settlement. However, the Plaintiffs have already put considerable time and effort in considering this part of their case. Our group of firefighter employees is very capable and are eager, in fact, to work to create a fair and effective promotional process.

**Back Pay**

Our Plaintiffs are each entitled to back pay from the date of promotion. For the purposes of settlement at this juncture, we are willing to reduce this demand to 2 years back pay per Plaintiff at their respective promoted rank at the top step.

**Expert Fees, Costs, Attorneys Fees**

Expert fees and costs of the Plaintiffs will be paid by the City of Akron. For the purposes of settlement at this point, we will accept $300,000 as attorneys fees for services rendered through date of settlement. As you have already noted, these will only continue to increase going forward.

**Emotional Distress Damages and Interest**

For the purposes of settlement at this stage of the proceedings, Plaintiffs will forego any emotional damages and any pre-judgment interest.

**Demotions of Promoted Officers**

Plaintiffs have no interest in nor do they request that any officers promoted from the eligibility lists, albeit from defective promotional selection devices, be demoted.

We are interested in exploring settlement of this case now, before both parties start down a path that make future resolution more difficult.

Please advise as to how the City wishes to proceed.

Very truly yours,

Dennis R. Thompson

cc: Plaintiffs