ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HOWE, et al., | ) | |
| | ) | CASE NO. 5:06CV2779 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| CITY OF AKRON, | ) | <u>ORDER</u> |
| | ) | |
| Defendant. | ) | |
| | ) | |

On February 4, 2015, the Court Monitor issued his second ruling regarding the arbitration agreement. Doc. 766. On February 12, 2015, Plaintiffs objected to that ruling, and on February 19, 2015, the City of Akron responded in opposition to those objections. The Court now reviews those objections.

In order to review the objections presented by Plaintiffs, the Court must briefly review what gave rise to the Court Monitor's ruling. On April 8, 2014, the Court appointed a Court Monitor in this action. The Monitor's primary duties were to facilitate the preparation of a competitive examination process for the City of Akron Fire Department. By all accounts, that process has moved rapidly forward because of the Monitor's actions. In fact, the process has moved forward so quickly that tests were administered on February 7 and 8 of 2015. These were the first promotional examinations administered by Akron since December of 2004.

However, while the Monitor was in the process of the moving the parties forward to this

1

examination, Akron was also in the midst of defending a grievance filed by Akron Firefighters Association, Local #330. Despite overtures by the parties to this action, the Union has declined to become a party to this litigation. The grievance was filed on October 23, 2013, alleging that Akron was in violation of numerous agreements by continuously having firefighters "act as" higher ranks, thereby circumventing the requirements of maintaining a promotional process. The grievance was set for arbitration on October 27 and 31, 2014. Prior to the arbitration, Akron and the Union reached a settlement agreement that would allow for immediate promotions, subject to approval by the Court Monitor and ultimately the Court.

The settlement agreement provided that 60 days after Court approval Akron would fill vacancies to ensure that there would be at least 10 District Chiefs, 17 Fire Captains, and 76 Fire Lieutenants. Under the agreement, promotions would then occur based on an eligibility list wherein rank would be determined by Time in Grade. It is undisputed that the use of Time in Grade places any eligible Plaintiffs at the extreme bottom of any eligibility list. As a result, Plaintiffs have consistently objected to the approval of the settlement agreement.

On two occasions, the Monitor has recommended approving the agreement. On the first occasion, the Court sent the matter back for further review to eliminate even the slightest contention that Plaintiffs did not receive proper process. As such, no challenges to the Court's process remain for review. Plaintiffs' primary, substantive objection, however, remains for review.

At its simplest, Plaintiffs' objection contends that the settlement agreement effectively undercuts the very foundation of the remedy pursued through this litigation – that is, the settlement agreement ensures that at least one category of eligible Plaintiffs will not receive promotions at

any point in the near future.[1] In order to understand this objection, a brief overview of how this case evolved is necessary. Following an initial jury verdict that found in favor of Plaintiffs, the Court ordered a retrial on the issue of damages. Throughout that post-verdict period, Plaintiffs sought equitable relief in addition to and as a substitute for monetary damages. While the Court initially rejected arguments for the promotion of the Plaintiffs, as vacancies accrued within the fire department, the Court found it in the best interest of all the parties and the citizens of Akron to effectuate those promotions. In fact, the Court noted that the Akron was "suffering a hardship' based upon the number of vacancies and that said hardship could be mitigated by promoting Plaintiffs. The Court made this finding on July 13, 2011.

At that time, and to date, the Court left open the question of whether those promotions were a sufficient or "make whole" remedy. It left open questions of whether some future enhancement to Plaintiffs' time-in-grade would be necessary or whether the Court would be required to order that exceptions be made to allow for Plaintiffs to take future examinations with less than the required time-in-grade. The Court is now effectively confronted with that issue, albeit in an indirect manner.

There can be no question that Akron would immediately benefit from approval of the settlement agreement. Akron could conceivably begin filling its vacancies without delay. Of course, there is also no question that Plaintiffs would appeal from any ruling by this Court approving the settlement agreement and would simultaneously seek a stay of any order from this Court. Similarly, the promotional process developed by the parties and the Monitor is now stalled

---

[1] Plaintiffs acknowledge that given the number of openings and eligible candidates for District Chief, all eligible Captains will be promoted to District Chief. As such, Plaintiffs concede that they cannot maintain an objection to the process with respect to District Chief.

by litigation. As of this date, an Ohio state court has pending before it the question of whether to enjoin Akron from utilizing preference points when scoring the examination. Further compounding that litigation is the fact that Akron is likely entitled to an automatic stay of any adverse ruling pursuant to Ohio Rule of Civil Procedure 62(B) and (C). should it choose to appeal.

From this Court's review, further litigation regarding the promotional process is a certainty. Approval by this Court will lead to an immediate appeal and stay request by Plaintiffs. Denial by this Court will only serve to ensure a more vigorous approach to the now-pending state litigation. As such, the Court finds itself in disagreement with the Monitor to the extent that his decision could be read to suggest that the settlement agreement could ultimately result in more expeditious promotions by Akron.

Similarly, the Court does not find dispositive the Monitor's view that the settlement agreement equally affects all Lieutenant candidates who do not have the most time-in-grade. The Court agrees to the extent that using time-in-grade will negatively impact far more firefighters than just Plaintiffs. Many non-Plaintiffs will be deprived of the right to demonstrate through testing that they are better qualified than those with more time-in-grade. However, the Monitor's recommendation fails to sufficiently take into account *why* the settlement agreement has this impact on Plaintiffs.

Absent this litigation, the Court would wholeheartedly agree that the settlement agreement "does not treat the Plaintiffs any differently than any other candidates." However, such a statement ignores the disproportionate impact on Plaintiffs. *All* of Plaintiffs that are candidates for Lieutenant will be at the very bottom of any promotional list. For that matter, Plaintiffs would not even be on these lists but for the Court's order of promotion. The fact remains that a jury

4

found that promotional examinations given by Akron were unintentionally discriminatory. At its simplest, this means Plaintiffs were deprived of a fair promotional process.

The Court has no ability to "undo" the old process. As a result, there can never be a definitive determination of whether Plaintiffs would have been promoted had a fair and legal promotional process been utilized. However, a legal determination of discrimination was made by a jury and has been upheld despite numerous challenges by Akron. The result of that discrimination is that Plaintiffs have less time-in-grade than any other firefighters. From the Court's perspective, allowing the settlement process to move forward would only serve to compound the effects of the prior discrimination.

Yes, a new promotional process has begun. And yes, that process is already the subject of litigation that could, similar to this litigation, become very lengthy. However, using a process that ensures at least a category of Plaintiffs will have no meaningful opportunity for promotion at any time in the near future is untenable.

First, the Court finds little solace in the conclusion that the promotional process developed the Monitor will replace the settlement process upon its completion. Akron has gone more than a decade without voluntarily promoting a single firefighter. They now seek to fill dozens upon dozens of vacancies immediately through the settlement process. As a result, even if the promotional process approved by this Court shoulders aside the settlement process, it could conceivably be numerous years before any further promotions are necessary.

In reaching its conclusion herein, the Court has been very mindful of Akron's assertions that it is in desperate need to promote to ensure the safety of its citizens. However, the Court must balance these assertions with several other factors. First, it would appear that the grievance filed

5

by the Union resulted from Akron repeatedly requiring lesser ranked firefighters to "act as" higher ranks when necessary. Presumably, those chosen to "act as" higher ranked firefighters would be the same individuals promoted under the time-in-grade process. As such, from a safety perspective, it is unclear how Akron's citizens will be safer receiving services from the same firefighter who is now officially a Captain, rather than "acting as" a Captain.

The Court also cannot find itself in agreement with the Monitor with respect to analyzing the settlement process with respect to the following statements: "Plaintiffs complain that the dramatic number of unfilled firefighter positions is the City's own fault, caused by the City's delay in administering any promotional process. But plaintiffs also now fault the City when it undertakes to provide exactly that." Doc. 766 at 16 (footnote omitted). When evaluating Plaintiffs' objection related to this issue, the Court finds itself in agreement with Plaintiffs that the sheer number of unfilled positions with the fire department is the result of voluntary decisions by Akron. In fact, the Court reached precisely this result more than three years ago:

> Akron chose not to engage in a new promotional process once this litigation began. Akron chose to maintain vacancies to the point that it "just can't survive" with any further delay. Doc. 358 at 23:16. Akron chose to maintain vacancies at the District Chief and Deputy Chief levels, artificially decreasing the vacancies at the Captain's level. Akron may not now consolidate all of its voluntary decisions and foist the results of its choices on Plaintiffs.

Doc. 435 at 14. On appeal, the Sixth Circuit agreed: "The City fails to demonstrate that the harm it alleges should be attributed to the district court's preliminary injunction rather than to its own inaction." *Howe v. Akron*, 723 F.3d 651, 662 (6th Cir. 2013).

On numerous occasions throughout this litigation, Plaintiffs have suggested that Akron should be enjoined from future testing until all claims herein were fully resolved. Time and

6

again, this Court declined to issue a full injunction.  Moreover, as the Court's order of promotion of Plaintiffs made clear, the Court has been and remains willing to take any steps necessary to reduce hardships within the fire department.  Those steps, however, cannot come at the detriment of the prevailing parties in this litigation.

Despite the Court's expressed willingness to alleviate these hardships, including the written opinion issued more than 3.5 years ago, Akron has never approached the Court until now with a proposed solution.  Moreover, Akron still made no effort to begin a process following the appeal of this Court's order of promotion.  In July of 2013, the Sixth Circuit affirmed this Court's order of promotion, touching on the underlying merits of much of this matter.  Despite rejecting many of Akron's arguments and finding many others were waived, Akron took no steps to begin a new promotional process.  *See Howe*, 723 F.3d 651.

Furthermore, the Court cannot ignore that any delay in the promotional process designed with the Monitor will be occasioned by Akron's choice to amend its charter, during this litigation, to include preference points in the promotional process for both veterans and residents.  Similarly, Akron has chosen to defend those provisions in the current state court litigation.  As such, it is wholly unfair and without any factual support to suggest that Akron has somehow been prevented from using a promotional process by either Plaintiffs or this Court.

Once again, however, Akron has the opportunity to move forward with promotions.  On March 10, 2015, the state court resolved the Union's request for a preliminary injunction.  *See Akron Firefighters Association, Local 330 v. Akron,* Case No. CV 2015-01-0619 (Summit Cty. Ct. of Common Pleas).  In so resolving, the state court found that veterans' points could be awarded, while residency points would run afoul of the Ohio Constitution.  As such, the framework is in

7

place for the creation of an eligibility list from merit-based testing *now*. Accordingly, this is another fact that weighs against approving the settlement agreement.

Akron's argument appears to be that it is now on the precipice of disaster, i.e., that its ranks are so low that its citizens are now at risk. As demonstrated above, if Akron has reached that precipice, it is because Akron has slowly marched itself to the cliff's edge, while reaping the financial benefit of utilizing "acting as" firefighters.[2] From that perspective, even the Union has repeatedly sought to have Akron engage in some process to permanently promote firefighters, rather than use them in an "acting as" capacity, noting that "acting as" firefighters receive roughly 12% less in pay than if they were formally promoted. Even when the Union highlighted that there was no Court order impeding Akron from engaging in a promotional process, no progress was made.[3] As such, while Akron seeks to blame Plaintiffs for its current dire status, it factually has no one to blame other than itself.

Moreover, during the hearing in which the Court announced its intention to promote, Akron stated that "we feel and have felt from the beginning and still feel that any promotions should be merit based[]." Doc. 404 at 12. "The city still feels that promotions should be merit based, because there are many people that want to vie for the positions that you may grant automatically to the plaintiffs in this case." *Id.* Akron continued: "So the logic here is that we would offer a test as soon as practicable, and hopefully within the next six months, by year end, and that the plaintiffs could then test for those positions." *Id.* at 13. Thus, as far back as 2011,

---

2 Akron used similarly dire language on **June 15, 2011** stating that the "City is now in a far more urgent posture regarding staffing" of the fire department. "[W]e are at a point that we need to move forward and get this promotional process going." Doc. 358 at 18. Again, these statements were made to the Court nearly **45** months ago.
3 In its opinion upholding this Court's order of promotion, the Sixth Circuit noted that "[t]he City fails to demonstrate that the harms it alleges should be attributed [to this Court] rather than to its own inaction." Doc. 584 at 14.

Akron expressed a desire to immediately *test* for promotions. More than 3.5 years later, it now seeks to promote without testing.

No one involved in this litigation seeks to put the citizens of Akron at risk. For that matter, Plaintiffs would stridently assert that they filed this litigation to ensure a future testing process that promoted only those firefighters that would best protect Akron citizens. It is unfortunate that it took years of litigation and a Court-appointed Monitor to put that process in place. The process, however, is now in place. Once again, as it has been for the vast majority of this litigation, it is fully with Akron's ability to ensure that the promotional process moves forward immediately or to once again ensure that promotions are delayed.

Approval of the proposed settlement agreement would undermine the Court's obligation of ensuring a make-whole remedy for victims of discrimination, albeit unintentional discrimination. It would further ensure that parties that convinced a jury that an unfair testing process was in place will continue to not receive an opportunity for promotion under a fair testing process. Accordingly, the Court sustains Plaintiffs' objections and will not approve the settlement reached between Akron and the Union through the grievance process.

In closing, the Court would note that there are no objections related to the use of time-in-grade for promotions to District Chief. As such a process would not have any disproportionate effect on any Plaintiffs, the Court would approve the settlement in that limited capacity. Accordingly, should the parties voluntarily choose to do so, that portion of the settlement agreement could go into effect immediately.

IT IS SO ORDERED.

March 10, 2015                                        */s/ John R. Adams*
Dated                                                           JUDGE JOHN R. ADAMS
                                                                     United States District Judge