# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HOWE, et al., | ) | CASE NO. 5:06-cv-2779 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CITY OF AKRON, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On September 17, 2015, the Sixth Circuit Court of Appeals issued a decision reversing the award of back pay and remanding the matter for further proceedings before a different judicial officer. *Howe v. City of Akron*, 801 F.3d 718, 757-58 (6th Cir. 2015). Following reassignment to the undersigned on October 9, 2015, the parties resolved all issues relating to damages and interest, leaving only the question of the proper award of attorney's fees and costs for the Court to decide. Now before the Court are plaintiffs' various applications for attorney's fees and costs. (Doc. Nos. 615, 668, 806.) Defendant has filed a response to each fee petition. (Doc. Nos. 635, 680, 809, respectively.) Defendant also submitted separate oppositions to plaintiffs' requests for costs and expenses.[1] (Doc. No. 637, 681, 810, respectively.)

## I. BACKGROUND

In December 2004, defendant City of Akron ("defendant" or "City") administered promotional examinations for firefighters interested in consideration for the positions of

---

[1] Plaintiffs filed a combined reply in support of their supplemental motion for attorney's fees. (Doc. No. 689.) Plaintiffs also filed two bills of costs. (Doc. Nos. 614, 667.)

lieutenant and captain of the Akron Fire Department. Over the next eleven years, the parties litigated the results of these examinations, and the promotions based on the examination results, in federal and state court. It is not surprising, therefore, that the facts surrounding this litigation have been the subject of numerous opinions issued by the district court and the court of appeals. Rather than retrace that well-trodden ground, the Court shall limit its recitation of the factual and procedural background of this case to those facts necessary to properly frame the present fee petitions.

### A.   The Pleadings

Plaintiffs are Akron City firefighters who sat for the 2004 examinations. The first lawsuit was filed in state court on April 7, 2006, challenging the examinations under Ohio law. *William Howe, et al. v. The City of Akron*, Summit County Common Pleas No. CV-2006-04-2310. Plaintiffs filed the present lawsuit approximately seven months later, on November 16, 2006, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. A year later, on October 17, 2007, the Court granted plaintiffs leave to amend their complaint to include the pendent state law claims. Following the filing of the First Amended Complaint ("FAC") in this case, the state action was dismissed without prejudice. *See Howe v. City of Akron*, 789 F. Supp. 2d 786, 791 (N.D. Ohio 2010).

The FAC contained twelve causes of action—divided among various federal and state statutes and constitutional provisions—alleging race and age discrimination and equal protection violations. (Doc. No. 23.) With respect to discrimination, plaintiffs raised both disparate impact and disparate treatment claims. After a period of discovery and motion practice, the Court denied

2

defendant's motion for summary judgment, finding the existence of genuine issues of material fact. (Doc. No. 167.) Upon reconsideration, the Court dismissed the equal protection claims. (Doc. No. 176.)

### B.  The First Trial (December 2008)

In late 2008, the case proceeded to trial.[2] On December 23, 2008, the jury returned interrogatory answers favoring plaintiffs on all legal issues submitted to them for consideration and awarding each plaintiff compensatory damages and front pay. (Doc. No. 237.) Following the receipt of the jury's interrogatory answers, the court entered an order finding that it was bound, for purposes of plaintiffs' equitable claims, by the jury's fact findings. (Doc. No. 238 at 7401[3].) On October 2, 2009, the Court issued findings of fact and conclusions of law on the portion of the lawsuit that was reserved for it to decide. (Doc. No. 277.) In accordance with the fact findings of the Court and the jury, the Court entered final judgment in favor of each plaintiff, awarding compensatory damages, front pay, and costs. (Doc. No. 278.)

The parties engaged in substantial post-trial motion practice. On December 30, 2010, the Court granted, in part, the City's Rule 59(e) motion to alter or amend the judgment. (Doc. No. 311.) While the Court affirmed the jury's determinations as to liability, it granted a new trial solely on damages, finding that the jury "lost its way on [this] issue," and noting that the verdicts provided for uniform past and future monetary awards for each plaintiff "regardless of whether the individual passed [the examination], was promoted, or ready to retire." (*Id*. at 16399.) It was the opinion of the Court that the jury's confusion over damages was the result of a "very poor, to

---

[2] The first trial took place between December 3, 2008 and December 23, 2008.

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

say the least, presentation" by plaintiffs' counsel on damages making it "unclear then what [counsel] were seeking on behalf of these plaintiffs[.]" (Doc. No. 467 at 12519.) The Court set a new trial limited to the issue of damages for July, 2011.

### C.      Rancorous Damages Discovery Period and Retrial on Damages

"What followed was a contentious discovery period, during which the City repeatedly attempted to invoke privilege with respect to its damages calculations, and [p]laintiffs refused to answer questions relating to their promotional exams." *Howe v. City of Akron*, 557 F. App'x 402, 403 (6th Cir. 2014). The difficulties with damages discovery were exacerbated by the fact that plaintiffs would not commit to a theory for calculating back pay. During this subsequent discovery period, plaintiffs advised the City that they would be abandoning the second of their two theories—the Carr method—in favor of their first method—the Snyder method.[4] Based on this representation, defendant conducted no discovery on the Carr method. Ten days before trial, plaintiffs amended their exhibit lists to include a document using the Carr method of calculation. Defendant objected to what it characterized as a "bait and switch." After the trial commenced, the City argued that, due to plaintiffs' discovery hijinks, it could not effectively cross-examine plaintiffs on the Carr method. The district court suspended the trial, excluded part of plaintiffs' damages evidence as a non-monetary sanction, and reopened discovery on damages on this alternative theory. *Howe*, 557 F. App'x at 404. On September 24, 2012, the district court awarded defendant monetary sanctions in the form of fees pursuant to 28 U.S.C. § 1927, finding that plaintiffs had needlessly multiplied the proceedings and abused the judicial process. (Doc.

---

[4] Bradley Carr and Gregory Snyder were Akron City firefighters and two of the plaintiffs in this lawsuit.

4

No. 530.) Plaintiffs' took an interlocutory appeal from the sanctions order.[5] The bench trial was subsequently resumed on November 28, 2012, and, on August 30, 2013, the district court issued findings of fact and conclusions of law and awarded individualized damages to each plaintiff. (Doc. No. 588.)

On February 4, 2014, the Sixth Circuit issued an opinion dismissing plaintiffs' interlocutory appeal for lack of jurisdiction. *Howe*, 557 F. App'x at 405. In a concurring opinion, however, Judge Gilman questioned the propriety of sanctions, stressing that both sides had engaged in dilatory and obstreperous conduct. *Id.* at 405-07. Following the Sixth Circuit's ruling, the district court reconsidered its sanctions order. Relying, in part, on Judge Gilman's concurring opinion, and further underscoring the fact that "neither party has cleans hands with respect to" damages discovery, the district court vacated the prior sanctions leveled against plaintiffs. (Doc. No. 722 at 18053.) The Court explained that, "[i]n lieu of adhering to its current monetary sanction, the Court will take into account [p]laintiffs' counsel's conduct as well as [d]efendant's counsel's conduct when determining the proper amount of fees to award." (*Id.*)

### D.    Final Appeal to the Sixth Circuit and Proceedings Before this Court

The City appealed the Court's award of back pay, the issuance of a permanent injunction, and the appointment of a court monitor to oversee the selection process and address interim issues arising in the litigation. In its September 17, 2015 decision, the Sixth Circuit panel

---

[5] On July 13, 2011, while the parties were sparring over damages discovery, the district court issued an order requiring the immediate promotion of all plaintiffs. (Doc. No. 416.) The City's interlocutory appeal from this order also had the effect of delaying the retrial on damages. *See Howe v. City of Akron*, 723 F.3d 651, 657 (6th Cir. 2013). On July 15, 2011, the Sixth Circuit stayed the promotions, and the stay was dissolved on July 21, 2011. (Doc. Nos. 438, 443.)

5

recounted the lengthy and, at times, contentious proceedings in the district court, noting that the "district judge faced parties who have engaged in petty, scorched-earth litigation tactics." *Howe*, 801 F.3d at 757 ("The parties' appellate briefs have provided a taste of the unpleasant and unnecessarily bitter dynamic of this litigation.") The Court accused both sides of playing a "childish withholding game" during damages discovery, "rather than providing necessary information to determine how best to make the [p]laintiffs whole." *Id*. at 750. Nevertheless, the court determined that the evidentiary sanction against plaintiffs was unwarranted, as any harm resulting from late discovery disclosure could have been alleviated on cross-examination. *Id*. at 749. Ultimately, the court affirmed the liability judgment, reversed the back pay award, and remanded the matter to a different district judge for a new trial on the issue of back pay. The court also acknowledged that the newly assigned judge would need to "undertake the difficult task of calculating and awarding attorney's fees to the [p]laintiffs' attorneys." *Id.* at 757. Finally, the circuit panel also modified the district court's appointment of a court monitor by limiting the court monitor's involvement to one promotional cycle. *Id.* at 757-58.

On December 1, 2015, this Court held a settlement conference wherein the parties reached agreement as to the issue of back pay. At the conclusion of the settlement conference, the parties agreed to return to attempt to mediate the issue of fees and costs. On December 8, 2015, the Court conducted a mediation of attorney's fees and costs. Though the mediation ended that day without a final resolution, the parties agreed to continue informal efforts to wrap-up these remaining issues. When the parties finally advised the Court that they were unable to reach agreement as to fees and costs, the Court permitted additional briefing to bring the fee petitions up to date.

6

### E. Attorney's Fees Proceedings

The issue of attorney's fees became a rather robust offshoot of the overarching litigation, due, in no small part, to the fractured and disjointed nature in which plaintiffs' counsel approached it.[6] Plaintiffs filed their first motion for fees and costs on October 19, 2009, shortly after the Court entered its first judgment for plaintiffs. (Doc. No. 281.) In this filing, plaintiffs represented that their calculation of fees to date was merely an "estimate[,]" and indicated that they would supplement their request after post-trial motions were resolved. According to plaintiffs, this approach would "help avoid constant supplementation issues and piecemeal, secondary litigation and filings on fees." (*Id.* at 7759.)

On June 27, 2011, plaintiffs filed a motion for interim attorney's fees. (Doc. No. 361.) This motion also promised supplementation by way of full documentation of all fees "after the conclusion of the damage . . . trial." (*Id.* at 8459.) The motion further represented that the "estimated fees through the end of May 2011 on behalf of Plaintiffs [were] approximately $1,075,000 plus costs." (Doc. No. 361-3 (Declaration of Bruce B. Elfvin) ¶ 5.) In reliance on these representations, the Court, on July 8, 2011, issued an interim award of $250,000 in attorney's fees. (Doc. No. 390.)

On February 19, 2014, plaintiffs filed their second motion for interim attorney's fees. (Doc. No. 615.) This application purported to seek fees of $1,386,922 for work performed through December 30, 2010, and promised a further filing for work performed after December 30, 2010, "when all other matters in this case have been resolved, unless another interim fee

---

[6] This Court has had to expend an extraordinary amount of time and effort sifting through and trying to piece together the plaintiffs' disorganized, poorly summarized, and insufficiently documented requests for fees and costs.

petition is appropriate." (*Id*. at 16737.) Based upon these latest representations of fees to date, the Court entered a second interim award to plaintiffs of $250,000 in attorney's fees on March 27, 2014. (Doc. No. 644.)

Plaintiffs' supplemental motion for attorney's fees was filed on May 23, 2014. (Doc. No. 668.) This motion sought fees for work performed through January 31, 2014. (*Id*. at 17465.) The Court conducted a two-day fees hearing on October 2 and October 6, 2014. (Doc. Nos. 732, 733.) The most recent supplemental motion, seeking fees from February 1, 2014 to December 14, 2015, was filed on December 18, 2015. (Doc. No. 806.)

From the inception of the litigation, plaintiffs were represented by the Akron-based law firm of Thompson & Bishop and its two partners, Dennis Thompson and Christy Bishop. In the fall of 2008, immediately prior to trial, attorney Bruce Elfvin, of the law firm of Elfvin & Besser, entered an appearance on behalf of plaintiffs. At the fees hearing on October 6, 2014, attorney Thompson testified that it was necessary to involve a second law firm because attorney Bishop was otherwise occupied with another major disparate impact case in Jacksonville, Florida and several personal matters that demanded her attention. (Doc. No. 733 at 18579-80.) Plaintiffs hired a third law firm, Marshall & Morrow, to prosecute the interlocutory appeal of the Court's 2012 award of sanctions.

The resolution of the attorney's fees component of this litigation was complicated by the deaths of both partners from Thompson & Bishop. Attorney Thompson died on December 8, 2014. Attorney Bishop represented the interests of Thompson & Bishop after the death of attorney Thompson until her own death on December 2, 2015. Attorney Elfvin has represented to the Court that the executor of attorney Bishop's estate intends to appoint his law firm to

represent the interests of Thompson & Bishop in these proceedings, but the Court has yet to receive confirmation that this appointment has taken place. (*See* Doc. No. 806 at 19157.)

## II. PLAINTIFFS' APPLICATIONS

### A. Plaintiffs' Request for Attorney's Fees

As a matter of general course, federal court litigants are responsible for their own attorney's fees and litigation expenses. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010). 42 U.S.C. § 1988 provides an exception to this general rule for certain civil rights cases, permitting a court to award a "prevailing party . . . a reasonable attorney's fee as part of the costs[.]" Title VII also provides for a recovery of reasonable attorney's fees by a prevailing plaintiff. 42 U.S.C. § 2000e-5(k). The standard of awarding attorney's fees to a prevailing party under § 1988 is equally applicable to awards under Title VII. *Virostek v. Liberty Twp. Police Dep't/Tr.*, 14 F. App'x 493, 509 (6th Cir. 2001) (citations omitted). A party is considered a "prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (quotation marks and citation omitted). Because the purpose of the civil rights fee shifting provisions is to ensure "'effective access to the judicial process' for persons with civil rights grievances[,] . . . a prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* at 429 (quotation marks and citations omitted); *see also Perdue*, 559 U.S. at 550 (an award of fees serves to ensure "that federal rights are adequately enforced").

"The most useful starting point for determining the amount of a reasonable fee is the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). This product has come to be known as the "lodestar." *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 642 (6th Cir. 2009). After calculating the lodestar, the Court may modify the amount by applying a multiplier or fee enhancement in a case of "exceptional success." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). "The key issue is whether an adjustment is necessary to the determination of a reasonable fee." *Id.* (citing *Blum*, 465 U.S. at 895).

Although not exclusive, the Court may consider twelve factors in determining whether an adjustment is necessary:

> (1) the time and labor involved; (2) the novelty and difficult[y] of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Perry v. Autozone Stores, Inc.*, 624 F. App'x 370, 372 & n.1 (6th Cir. 2015) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

At all times, the Court's focus is on the reasonableness of the fees requested, and the party seeking fees bears the burden of proving that they are reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999) (citations omitted). The fee applicant "should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433; *see Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007) ("To justify any award of attorneys'

fees, the party seeking compensation bears the burden of documenting its work.") (citations omitted); *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (The party seeking attorney's fees "bears the burden of proof on the number of hours expended and the rates claimed.") (citation omitted).

In preparing a fee petition, counsel is expected to exercise billing judgment by excluding from his petition "hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 ("Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ".") "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Reed v. Cracker Barrel Old Country Store, Inc.*, 171 F. Supp. 2d 751, 758 (M.D. Tenn. 2001) (internal quotation marks and citation omitted, emphasis in original).

Plaintiffs, therefore, must come forward with documentation that substantiates the reasonableness of the hourly rate charged and the hours incurred. *See McCarthy v. Ameritech Publ'g, Inc.*, 289 F.R.D. 258, 263 (N.D. Ohio 2013) (citation omitted), *aff'd in part and rev'd and remanded on other grounds*, 763 F.3d 488 (6th Cir. 2014). The documentation submitted must be sufficiently detailed to enable the Court to determine whether the time *actually* expended was *reasonably* expended. *See id.* ("Where the documentation is inadequate, the court may reduce the award accordingly.") (citations omitted).

### 1. Prevailing Party Status

The City does not seriously dispute that plaintiffs, with the exception of those individuals dismissed from this action on summary judgment, qualify as prevailing parties under Title VII

and § 1988. Plaintiffs substantially prevailed at every step of the litigation. They obtained a judgment of liability and established their entitlement to damages, and they secured previously contested promotions. Further, it cannot be denied that the litigation served as the impetus for the change in the promotional process for the Akron City Fire Department. While the City attacks both the hourly rates and the number of hours expended by plaintiffs' counsel to achieve these results—not to mention the route counsel took, at times, to obtain those results—there is no question that counsel achieved a significant level of success for their clients.[7]

### 2.  Reasonable Hourly Rate

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994) (citation omitted). A reasonable hourly rate will be sufficient to attract competent counsel, and yet will avoid producing a windfall for lawyers. *Reed*, 179 F.3d at 469 (citation omitted). "A useful guideline in determining a reasonable hourly rate is the 'prevailing market rate[] in the relevant community.'" *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009) (quoting *Blum*, 465 U.S. at 895). The prevailing market rate is defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command[.]" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2007); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citation omitted); *see Coulter v. State of Tenn*., 805 F.2d 146, 149 (6th Cir.

---

[7] "The Supreme Court has instructed that 'the most critical factor' governing the reasonableness of a fee award 'is the degree of success obtained.'" *Waldo v. Consumers Energy Co*., 726 F.3d 802, 822 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 436). "In cases when 'a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.'" *Id*. (quoting *Hensley*, 461 U.S. at 435). Given the level of success enjoyed by plaintiffs, the Court finds that a fully compensatory fee is appropriate, and the Court remains mindful of the results plaintiffs' counsel obtained as it determines a reasonable fee.

1986) ("hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question").

In establishing a fair hourly rate, the district court may "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co*., 436 F. App'x 496, 499 (6th Cir. 2011) (citations omitted); *see Dowling*, 320 F. App'x at 447 (affirming a district court's calculation of a reasonable hourly rate based on the court's "knowledge of local billing practices" and counsel's customary billing rates).

In support of their requested hourly rates, plaintiffs offered sworn affidavits from each attorney and paralegal for whom fees are requested, setting forth that individual's experience, professional affiliations, previous awards, and billing rates. In conjunction with the filing of plaintiff's second motion for interim attorney fees (Doc. No. 615) in February 2014, these legal professionals averred as follows:

> Attorney Dennis Thompson, plaintiffs' lead counsel, was the managing partner of Thompson & Bishop and had been engaged in the active practice of law since November, 1985. He was among the first group of attorneys to receive from the Ohio Bar Association a certification as a specialist in the area of labor and employment law in 2001. His employment practice was "national in scope," with an emphasis on "complex federal litigation involving firefighting, disparate impact, race discrimination, retaliation, and hostile environment." He had considerable trial experience, including disparate impact cases—with substantial judgments for his clients—and he was a member of several professional organizations. At the time, his hourly rate was $475, which he believed was "commensurate with the rates charged by similar employment law specialists and trial attorneys in the market area with similar experience." (Doc. No. 615-1 (Declaration of Dennis R. Thompson).)
>
> Attorney Christy Bishop had been licensed to practice law since 2003 and had become a certified specialist in labor and employment law in 2008. Prior to becoming an attorney, she had worked for 12 years as a law clerk. She married her law partner, Dennis Thompson, in 1988, and had worked with attorney

13

Thompson since 1991. Like attorney Thompson, Bishop belonged to a number of professional organizations. She also had experience with disparate impact employment cases, including cases involving firefighters. Her then current billing rate was $425 an hour, which she represented was "reasonable based on [her] past awarded rates, experience, successes, the nature of the case, the extraordinary length and difficulty, the amount of work involved, novel issues, and [her] own expertise in both this and firefighting." (Doc. No. 615-2 (Declaration of Christy B. Bishop).)

Attorney Bruce Elfvin was the managing party of the law firm of Elfvin & Besser Co., LPA (now Elfvin, Besser, Royer & Torch)[8], and has been an actively practicing attorney since November 1972. His practice has been "predominately focused on representing individuals in employment-related matters." Like attorney Thompson, he was among the first group of attorneys to be certified as a specialist in employment and labor law, and he is a member of a number of professional organizations. He is also admitted to practice before a number of courts. He has handled over 1,500 employment discrimination claims in his career, including disparate impact cases, and has testified as an expert on statutory awards of attorney fees. His then current billing rate was $500 an hour. The current billing rates of other employees of his law firm include: attorney Barbara Besser ($450), attorney Stuart Torch ($275), and attorney Katie Sanz ($165). Paralegals and law clerks of the firm billed at the hourly rate of $100. Attorney Elfvin opined that "all of the attorney and support staff hourly rates [of his firm] are consistent with or lower than the rates charged in Northeast Ohio for this type of work by individuals of comparable skill, knowledge and experience." (Doc. No. 615-4 (Declaration of Bruce B. Elfvin).)

Attorney Barbara Besser is a partner in the law firm of Elfvin & Besser, and has been actively practicing law for more than 40 years in the area of employment law. She also has a labor and employment law certification and is admitted to practice in a number of courts. (Doc. No. 615-5 (Declaration of Barbara Kaye Besser).)

Attorney Stuart Torch graduated from law school in 2005, and is currently a partner of Elfvin & Besser. His practice has focused on "representing employees in employment-related matters, defendant individuals and companies being charged with or sued for employment-related discrimination." (Doc. No. 615-6 (Declaration of Stuart Torch).)

Tammy Byers is a paralegal who, at the time of the petition, was employed by the firm of Thompson & Bishop. She received her bachelors degree in Paralegal Studies in 2008, and was responsible for preparing trial exhibits and notebooks,

---

[8]For ease of reference, the Court will continue to refer to attorney Elfvin's firm as "Elfvin & Besser."

scheduling depositions, and other tasks related to the present litigation. (Doc. No. 615-3 (Declaration of Tammy Byers).)

In support of the requested hourly rates, plaintiffs also offered the affidavits of numerous attorneys and experts who each opined that counsel's 2014 billing rates, which are the rates plaintiffs are seeking in their fee petitions for all work performed in this case, are reasonable and appropriate for the Northeast Ohio legal market. (Doc. No. 615-7 (Declaration of John C. Brittain) ¶ 14; Doc. No. 615-8 (Declaration of Amy S. Glesius) ¶ 11; Doc. No. 615-9 (Declaration of Edward A. Icove) ¶ 7; Doc. No. 615-10 (Declaration of Neil E. Klingshirn) ¶ 18; Doc. No. 615-11 (Declaration of Patrick J. Perotti) ¶ 7; Doc. No. 615-12 (Declaration of James B. Rosenthal) ¶ 6.) Attorneys Thompson and Bishop also cited to a 2013 decision, wherein a district court located in Houston, Texas approved an hourly rate of $425 for attorney Thompson and $400 for attorney Bishop. (Doc. No. 615-1 ¶ 29 (citing *Bazile v. City of Houston*, 2013 U.S. Dist. LEXIS 153381 (S.D. Tx. Oct. 25, 2013); Doc. No. 615-2 ¶ 36 (same).)

At the outset, the Court observes that, while plaintiffs are seeking fees for services rendered over a number of years beginning in 2005, they are seeking compensation at their current hourly rates (or at least at the rates they charged in 2014). The Court may, within its discretion, approve applications based on current—rather than historical—rates where the litigation has been ongoing for a number of years to reflect the delay in payment of fees. *See generally Barnes*, 401 F.3d at 745 (discussing practice of using current rates) (citing *Missouri v. Jenkins*, 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)); *see also Perdue*, 559 U.S. at 556 (compensation for delay in receiving fees in civil rights litigation "is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value'") (quoting *Missouri*, 491 U.S. at 282).

The Sixth Circuit has made clear, however, that a district court is not *required* to apply current rates to all work performed over a period of time. *Gonter*, 510 F.3d at 617 ("But *Barnes* does not stand for the proposition that this Court mandates—or even prefers—application of current rates; rather, as the *Barnes* Court itself stated, the application of current rates was 'within the contemplation of the attorneys fees statute.'") (quoting *Barnes*, 401 F.3d at 745) (further citation omitted). Instead, the option to use current billing rates rests within the discretion of the district court, and all such discretion is constrained only by a duty to explain "how the decision comports with the ultimate goals of awarding reasonable fees." *Id.*

Awarding fees at counsel's current billing rates for all of the work performed in this case would be inappropriate, inasmuch as plaintiffs received two substantial interim fee awards of $250,000 in 2011 and 2014. While these payments did not represent the entire amount of fees incurred to date, they had the effect of alleviating some of the burden associated with the substantial delay in receiving full compensation for the legal work performed in this case.[9] Thus, while the Court finds that plaintiffs are entitled to some adjustment in the hourly rate for the delay in payment, full compensation at current rates would result in an impermissible windfall to plaintiffs' attorneys.[10] Accordingly, the Court shall fix two billing rates for each attorney. The higher rate, which shall represent a reasonable "current" rate for each attorney, shall be applied

---

[9] Indeed, in their first request for interim fees, plaintiffs represented that a "fair award of interim attorney fees [was] required to ameliorate the burden this continued litigation places on the small firms representing plaintiffs." (Doc. No. 361 at 8456.)

[10] This is especially true given that plaintiffs' counsel seem to have substantially increased their hourly rates over the last several years. In their 2011 fee petition, plaintiffs sought an hourly rate of $425 for attorney Elfvin, $400 for attorney Thompson, and $350 for attorney Bishop. (Doc. No. 361-3 (Declaration of Bruce B. Elfvin) ¶ 8; *see also* Doc. No. 732 at 18424; Doc. No. 733 at 18606-07.) An increase of $75 per hour over a two year period appears to be well in excess of the normal rate of increase in the relevant market. (*See* Doc. No. 635-1 (Affidavit of James D. Kurek)  ¶ 16); *see also* Ohio State Bar Association, *Cautious Optimism: The Economics of Law Practice 2013*, https://www.ohiobar.org/NewsAndPublications/OhioLawyer/Pages (last visited Mar. 10, 2016) (providing that the reported median hourly billing rate for attorneys only rose from $200 in 2010 to $207 in 2013).

to all fees earned between 2011 and the present. A lower rate, adjusted to reflect a reasonable rate for 2010, shall be applied to all fees earned from 2005 to December 31, 2010. By applying the "current" (or highest) rate for each time period, counsel will be adequately compensated for the delay in receiving full compensation, while the use of two rates will account for the fact that plaintiffs did receive interim fee awards.

Defendant also challenges the reasonableness of the hourly rates sought by plaintiffs upon the basis that plaintiffs "have failed to justify their proposed rates as reasonable in the relevant community – i.e., the community in which the case was tried, Akron, Ohio." (Doc. No. 635 at 17217.) It complains that plaintiffs' experts offered their opinions on legal rates for the general area of "Northeast Ohio," or the "Northern District of Ohio," or "Cleveland," as opposed to Akron, Ohio.[11] Because this Court sits in Akron, defendant insists that the inclusion of rates charged in greater northeastern Ohio, including Cleveland, will result in artificially inflated rates. In support of its position, the City offers the affidavit of attorney James Kurek, who has been practicing employment discrimination law in the Akron area since 1981, and bills at the more modest hourly rate of $330. (Doc. No. 635-1 (Affidavit of James D. Kurek) ¶12.) Attorney Kurek opines that the rates charged by plaintiffs' counsel "are well in excess of prevailing market rates for employment litigation representation in the *local* market," which he appears to limit to Akron, Ohio. (*Id*. ¶¶ 9, 14, emphasis in original.)

There is further support for the City's position. The Ohio State Bar Association's 2013 survey shows that while the median hourly rate for attorneys in downtown Cleveland was $275,

---

[11] Attorney Brittain, an attorney licensed to practice in Connecticut, Mississippi, and California, did not specify the legal market in which he was opining, merely indicating that the rates charged by attorneys Thompson and Bishop were "reasonable for [the present] matter." (Doc. No. 615-7 ¶¶ 4, 14.)

the median for attorneys in Akron was only $200. *See* Ohio State Bar Ass'n, *The Economics of Law Practice in Ohio in 2013: A Desktop Reference* ("OSBA 2013 Survey"), at 39, https://www.ohiobar.org/NewsAndPublications/Documents/OSBA_EconOfLawPracticeOhio (last visited Mar. 10, 2016) This represents a 38% higher median rate for Cleveland fees. Even plaintiffs' own evidence would support the idea that hourly attorney rates in Akron lag behind the rates charged by attorneys in Cleveland. Attorney Neil Klingshirn, plaintiffs' only proffered attorney's fee expert from Akron, charges $300 per hour for "routine employment law matters" and $350 per hour for "fee award civil rights litigation[.]" (Doc. No. 615-1 ¶ 12.) Attorney Klingshirn, a board certified labor and employment specialist who has served as lead counsel in over 200 civil rights and employment cases, has been practicing law in the area of labor and employment law for roughly the same number of years as plaintiffs' lead counsel, the late Dennis Thompson. (*Id.* ¶¶ 1, 3.) His declaration demonstrates that there are attorneys available in the relevant market to take on such litigation at a much lower hourly rate.[12]

Of course, the Court is not constrained to only consider rates charged in the immediate local market. "'District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases.'" *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014) (quoting *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983)). Given the specialized nature of the litigation, the Court is not convinced that it would be appropriate to exclude from its consideration evidence of rates from the surrounding areas, such

---

[12] In fact, at the hearing on October 6, 2014, attorney Thompson testified that, during pendency of this case, he had referred matters to attorney Klingshirn. (Doc. No. 733 at 18585.)

as Cleveland, and even awards made nationally for similar litigation (especially where those awards were made to the attorneys participating in this lawsuit). Still, the Court finds that the hourly rates charged by the Akron attorney experts, Klingshirn and Kurek, are more in line with the Court's own experience of hourly rates charged by civil rights attorneys appearing in this Court and should serve as the baseline for the Court's calculations.

Therefore, the Court begins with attorney Kingshirn's hourly rate in February 2014 for "routine employment law matters" of $300. (Doc. No. 615-10 ¶ 12.) Plaintiffs' lead counsel, attorney Thompson, had roughly the same level of experience in the general area of employment law and civil rights litigation. Nonetheless, the Court also acknowledges that attorney Thompson had considerable experience with the less common, and arguably more complicated and more labor intensive, disparate impact cases. Given this level of expertise, and in recognition of the level of success achieved by counsel, the Court finds that $400 represents a reasonable hourly rate. Attorney Elfvin has comparable expertise as attorney Thompson, but substantially more experience. The Court, therefore, sets his hourly rate at $425. Attorney Besser has more experience than Thompson but does not (at least from the record) appear to have the same familiarity with disparate impact litigation. Her hourly rate is set at $400. Attorney Bishop had substantially less experience than attorneys Elfvin, Besser, and Thompson, but also had demonstrated an expertise in the area of disparate impact claims involving firefighters and other public employees. Her hourly rate is set at $325. Attorney Torch has less experience than

attorney Bishop, and his hourly rate is set at $225.[13] In each instance, the Court has awarded a premium rate to reflect the success achieved by these attorneys, *see Hensley*, 461 U.S. at 434, and the Court shall apply these hourly rates to all work reasonably performed from 2011 to the present.

Next, the Court shall reduce each rate to a reasonable hourly rate for the billing year 2010. This reduced rate (which for the three most experienced attorneys, Elfvin, Besser, and Thompson, is still higher than the 2014 rates charged by Klingshirn and Kurek in 2014) shall be applied to all work performed between 2005 and December 31, 2010.

Accordingly, the hourly fees that will apply are as follows:

| Attorney | 2005-2010 | 2011-2016 |
|---|---|---|
| Dennis R. Thompson | $350 | $400 |
| Bruce B. Elfvin | $375 | $425 |
| Barbara Kay Besser | $350 | $400 |
| Christy B. Bishop | $275 | $325 |
| Christina M. Royer | N/A | $260 |
| Stuart Torch | $200 | $225 |
| Sara Tackett | N/A | $145 |
| Kathleen J. Sanz | N/A | $145 |
| Law Clerks | $80 | $90 |
| Paralegals | $90 | $100 |

---

[13] Based upon the submissions of the parties, the Court also finds that a reasonable hourly rate for attorneys Sara Tacket and Kathleen Sanz, both of whom had only been practicing law for two years at the time of the filing of the second supplemental application, is $145. (Doc. No. 615-4 at 16773 n.1; Doc. No. 806-1 (Supplemental Declaration of Bruce B. Elfvin) ¶ 8.) A reasonable hourly rate for Christina Royer, who has been practicing law in the general area of labor and employment for approximately 15 years, is $260. (*Id.*; *see* Doc. No. 615-13.) Further, the Court finds that a reasonable rate for work performed by law clerks is $90 and for paralegals it is $100, and this rate shall be used for fees generated from 2011 to the present, with an appropriate reduction for services rendered between 2005 and 2010. The Court does not set hourly rates for the attorneys from Marshall & Morrow because, as discussed *infra.*, the Court does not award fees for plaintiffs' interlocutory appeal from the district court's 2012 sanctions order.

3.   Reasonable Number of Hours

The City also challenges the number of hours expended by plaintiffs' counsel in this litigation. Its objections to the various fee petitions can be grouped into the following categories: (a) excessive or duplicative effort; (b) inadequate documentation and block billing; (c) time related solely to non-prevailing plaintiffs; (d) time spent litigating the state action; (e) clerical/administrative work; (f) fees for damages and sanctions; and (g) post-February 1, 2014 fees for the law firm of Thompson & Bishop. The Court shall address each category in turn. The Court has reviewed counsel's billing records, and while it does not agree that every category identified by the City represents improper billing, many of the categories raise serious cause for concern. Ultimately, as will be demonstrated below, the Court is forced to conclude that counsel's poor recordkeeping—when coupled with suspect entries—inspires little confidence that all of the hours claimed were reasonably expended.

a)      *Excessive or duplicable effort*

Defendant complains that plaintiffs' counsel's supporting billing statements are replete with instances of overstaffing, redundancy, and excessiveness. The City insists that each of plaintiffs' fee petitions seeks compensation for instances where multiple attorneys unnecessarily performed the same task, or sat in on conferences with the Court or court monitor when one attorney's presence would have sufficed, or spent inordinate amounts of time on simple tasks. Over the three petitions, the City challenges 217 entries totaling more than 1,150 hours. (*See* Doc. No. 635-2; Doc. No. 680-1; Doc. No. 809-1.)

Hours that are "excessive, redundant, or otherwise unnecessary" are not reasonably expended. *Hensley*, 461 U.S. at 430; *see Hisel v. City of Clarksville*, No. 3:04-0924, 2007 WL

21

2822031, at *4-6 (M.D. Tenn. Sept. 26, 2007) (reducing attorney's fee award for excessive billing for simplistic tasks where the issues in the case were "hardly new or novel" to counsel). District courts, therefore, have discretion to cut hours for duplication of effort or padding of an attorney's hours. *See Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 636-37 (6th Cir. 1979). Additionally, the Sixth Circuit has observed that while "multiple representation can be productive[,]" there is also "the danger of duplication, a waste of resources which is difficult to measure." *Coulter*, 805 F.2d at 152.

The Court has reviewed the billing statements, including those entries specifically contested by the City, and is troubled by the fact that excessive amounts of time were repeatedly expended on certain tasks by both Thompson & Bishop and Elfvin & Besser. For example, billing records demonstrate that two attorneys devoted 133.85 hours to reviewing and drafting a response to the City's Rule 59 motion, two attorneys spent 9.10 hours researching and drafting a notice of supplemental authority, and 26.25 hours was spent by attorneys Thompson and Bishop collectively to draft an opposition to a motion to alter or amend.[14] (Doc. No. 635-2 at 17249-51; *see* Doc. No. 615-14.) Given the level of experience of the attorneys representing plaintiffs, these time expenditures are excessive.

Plaintiffs' counsel's billing statements also contain evidence of redundancy. There are numerous instances of billing for multiple reviews of the same docket entries, including short notices and uncomplicated documents. For example, on July 22, 2013, attorney Torch billed .30 hours to review the Sixth Circuit's opinion on the 2011 appeal, while Thompson and Bishop

---

[14] On June 21, 2011, attorneys Thompson and Bishop each billed 3.25 hours for discussing the reset of the trial date and the subject of non-economic damages. (Doc. No. 668-2 at 17484.) There were other, repeated instances where multiple attorneys billed time to review simple notices. These are, of course, only examples and do not constitute an exhaustive list.

collectively devoted 8.25 hours to the review of the same opinion. (Doc. No. 668-2 at 17498; Doc. No. 668-6 at 17667.) Likewise, on October 1, 2014, attorney Besser billed .30 hours to review the fee bill the Court ordered Akron to submit, while attorneys Bishop and Thompson billed a total of 4 hours for the task. (Doc. No. 806-2 at 19177; Doc. 806-8 at 19235.) Additionally, while the Court recognizes that time spent by counsel conferring "does not automatically constitute duplication of efforts[,]" *Sigley v. Kuhn*, 205 F.3d 1341, at *8 (6th Cir. 2000) (unpublished table decision), the billing sheets reflect that counsel often double and triple billed for both inter-office and intra-office communications.[15]

Indeed, the Court questions the need for the involvement of two law firms in this litigation, given the fact that the firm of Thompson & Bishop regularly litigated civil rights disparate impact cases both locally and across the country, and its attorneys had significant trial experience litigating these types of cases. (Doc. No. 635-1 ¶ 17.) At the fee hearing, one of plaintiffs' fees experts, attorney Klingshirn, underscored the fact that there are only a handful of firms in the country that are able and willing to take on this type of litigation, and that Thompson & Bishop was the only local firm capable of doing so. (Doc. No. 732 at 18464.) Such a statement begs the question of why it was necessary to bring in a second law firm, especially one with a senior partner billing at an hourly rate that exceeded the rates charged by the experts in the field—Thompson & Bishop.

As previously noted, attorney Thompson attempted to answer that question at the fees hearing when he testified that he sought the involvement of attorney Elfin and his law firm in

---

[15] The Court has less confidence in the evidence supporting this sub-category as, discussed below, counsel often used vague references such as "conference," without any other illuminating details, to describe communications among attorneys. However, given the dates of many of the "conferences," it appears that the same conferences were billed by multiple attorneys.

2008 because attorney Bishop was busy tending to litigation in Florida and several family matters. Yet, attorney Bishop's billing records show that she continued to bill a considerable number of hours to this litigation. In fact, billing records from Thompson & Bishop demonstrate that attorney Bishop appeared in all but 2 days of the 12-day trial in 2008, and billed 7.5 hours or more for all but two of those 10 days.[16] (Doc. No. 615-14.) The record does not, however, reflect that attorney Bishop played an active role during the trial.[17] By the end, the case was staffed by eight lawyers, two paralegals, and two law clerks. The evidence of overstaffing in this case is evident, and the Court is left with a firm conviction that a reduction in the number of hours of attorney time is necessary to account for these excesses.

### b)  *Inadequate documentation and block billing*

The task of trimming the fat to exclude excessive or redundant hours is hindered by the fact that the billing records suffer from a troubling lack of detail. The City is correct when it observes that vague entries denoting simply "E-mail to clients," "meeting with clients," "conference call and email," and "Phone call with DT," without any indication of the subject matter of these events, "deprive[] this Court of the detail necessary to determine with a high degree of certainty that the time spent on these tasks was actually and reasonably expended in

---

[16] Neither Bishop nor Thompson billed time for December 18, 2008—though their paralegal, Tammy Byers, billed 7.50 hours for trial attendance that day. (Doc. No. 615-14 at 16834.) At the fees hearing, attorney Thompson testified that he and attorney Bishop were unable to attend trial on one day (presumably December 18, 2008, the only day both attorneys were absent) due to the death of Thompson's brother. (Doc. No. 733 at 18582; Doc. No. 689 at 17868.)

[17] At the fees hearing, attorney Thompson explained that attorney Bishop did most of the writing and research for the firm, while he generally focused on drafting complaints and engaging in discovery. (*Id*. at 18555-56.) And it is true that it appears from the Thompson & Bishop billing records that Bishop was responsible for the bulk of the legal research, including the research that was needed during trial. However, plaintiffs have not adequately demonstrated why it was necessary for attorney Bishop to sit through the majority trial in order to research issues that may have come up in trial. While it might be *desirable* to have an attorney tasked with such a responsibility to hear the testimony live, it is certainly not *necessary* or *reasonable*.

pursing this case." (Doc. No. 635 at 17226.) In total, the City challenges 635 such entries accounting for more than 1,073 hours. (Doc. No. 635-2; Doc. No. 680-1; Doc. No. 809-1.)

While the Court can determine at least the general nature of many of the tasks or activities, too many of the entries relating to meetings and correspondence with clients and other counsel—without any indication as to the subject of the meetings or correspondences (or sometimes even the participants involved) stand as an impediment to meaningful review. There are also numerous entries, scattered throughout the billing sheets, claiming substantial amounts of time devoted to "research." Obviously the Court cannot begin to determine the reasonableness of the time allotted to these ill-defined activities.

An example from the fees hearing underscores the difficulty that arises from vague entries. On April 8, 2006, Thompson billed 1.25 hours for a variety of items including "Research." When asked what the research was for, he acknowledged first that the subject of the research was not included in the entry, but added that "It was probably for the TRO and the hearing is probably what it was. In Ohio would be – that would be the concept, yes. That's my guess. We were getting ready for a hearing, so that's probably what it is." (Doc. No. 733 at 18640-1.) At the risk of stating the obvious, if counsel cannot determine from the entry the subject of the task billed, there is no way the Court can determine it. In fairness to counsel, the word "TRO" is listed in the string of four activities identified for this time entry, and it may be that the research was in connection with the TRO hearing (as opposed to the other two listed activities). However, given the fact that other entries purport to document time spent on research

for the TRO, the Court cannot determine if the time was *reasonably* or even *actually* spent on this endeavor.[18]

This entry highlights another difficulty the Court has encountered in reviewing counsel's time entries:  the practice of lumping together a series of activities under one general time entry. In their briefs and during the fees hearing, plaintiffs have strenuously defended their counsel's practice of "block billing," and it is true that the Sixth Circuit has not forbidden the practice. However, attorneys who engage in block billing do so at their own risk. While block billing can be sufficient "so long as the description of the work performed is adequate," *Smith*, 592 F. App'x at 371, "[w]here the documentation is inadequate, the district court may reduce the award accordingly." *Id.* (citation omitted); *see Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (citing block billing as one possible form of inadequate documentation). The "use of block-billing introduces a level of unreliability in time entries and thus less confidence in the documentation[.]" *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 736 (D. Md. 2009), *vacated and remanded on other grounds*, 606 F.3d 1353 (Fed. Cir. 2010). Where block billing prevents the Court from assessing the reasonableness of the time expended, a reduction in the number of hours claimed is warranted. *See, e.g., Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006).

Here, many of the entries from both law firms list a string of activities using only the most general of descriptors—like "telephone call, emails, revise and edit letter"—leaving the

---

[18] The billing increments utilized by counsel and their staff have also led to confusion. For example, while attorney Thompson testified that a billing increment of .25 represented 15 minutes, Thompson's paralegal, Byers, testified that she believed that the same increment represented 20-25 minutes. (Doc. No. 772 at 18513; Doc. No. 773 at 18620-21.) Attorney Thompson also offered a variety of "guestimates" as to how much time ".35" represented in an entry, suggesting 20, 25, or 30 minutes, or "one-third of an hour." (Doc. No. 733 at 18645.)

26

Court to guess as to the nature of each task. The Court cannot and will not engage in such conjecture. The City suggests that the insufficiency and inconsistency of the billing records can be explained by the fact that they were either not contemporaneously kept or the result of fraud. By way of example, it cites an entry wherein Thompson & Bishop billed a combined total of 15 hours for time spent attending trial on a date that no trial took place. (Doc. No. 635 at 17225.) The City complains that "[p]laintiffs offer no explanation for why, if they were keeping contemporaneous records, their attorneys did not record time in a consistent manner, or why they chose to bill 15 hours for a trial day that never occurred." (*Id.* at 17214.) Both firms have offered evidence that their attorneys record time in a contemporaneous manner. (Doc. No. 615-1 ¶ 615-4 ¶ 8.) As to the specific entry highlighted by the City, Attorney Thompson testified that the entry was the result of a typographical error in that it should have provided for 15 hours spent on trial *preparation* not trial *attendance*. (Doc. No. 733 at 18583.)

Giving counsel the benefit of every doubt, and assuming that the billing records do not demonstrate an intention to deceive, they still reflect a severe lack of care. This case was litigated by seasoned attorneys who were well aware that, should their clients prevail on the merits, they would need to justify the number of hours they expended on this litigation. (*See, e.g.*, Doc. No. 732 at 18439.) Instead of supporting their fee requests with clear and succinct records that properly documented the hours expended, counsel have proffered time records that can only be described as sloppy. Under these circumstances, the Court finds that a deduction is necessary to account for the deficiencies.

### c) *Time related to non-prevailing plaintiffs*

The City has also identified several categories of hours that should not have been included in the fee petitions. For example, the City takes issue with time entries for work performed on behalf of plaintiffs Brian Santee, William Yoxthimer, Robert Alestock, Brian Weaver, Brian Jaggers, and Dean Plevrakis. These individuals were only identified in Count XI of the FAC, the federal equal protection claim. (*See* Doc. No. 311 at 16404 n.7.) When the Court granted, in part, the City's motion for reconsideration of its ruling on summary judgment, it dismissed Count XI. (Doc. No. 176 at 4196.) The City, therefore, challenges 9 entries reflecting work perform on behalf of these dismissed plaintiffs.[19] (Doc. No. 635-2.)

Because these individuals did not "'succeed on any significant issue in litigation which achieve[ed] some of the benefits the party sought,'" they cannot be considered "prevailing parties" and are not entitled to fees.[20] *See Berger v. City of Mayfield Hts*., 265 F.3d 399, 406 (6th Cir. 2007) (quoting *Hensley*, 461 U.S. at 424); *cf. McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010) (describing "prevailing parties" as "winning parties," and finding that a "plaintiff crosses the threshold to prevailing party status by succeeding on a single claim") (citation omitted). Because these individuals cannot claim "prevailing party' status, any fees attributed

---

[19] In addition to these entries, the Court's review of the billing statements revealed a tenth entry seeking time on behalf of these individuals. On October 11, 2007, attorney Thompson billed .35 hours for the following services: "Draft transmittal of EEOC Charge re: Plevrakas." (Doc. No. 615-14 at 16812.)

[20] It is doubtful whether these plaintiffs could be considered prevailing parties under the "catalyst" theory, where their allegations of equal protection violations would not have caused any change on the part of the City. Nonetheless, plaintiffs did not advance *any* argument as to why these individuals are entitled to attorney's fees.

exclusively to the representation of them would be properly excluded.[21]

   d)  *Time litigating the state case*

   The City also insists that plaintiffs cannot recover fees for time spent litigating the lawsuit filed in 2006 in the Summit County Court of Common Pleas and voluntarily dismissed a year later. Noting that plaintiffs would not have been able to recover fees under Ohio law for this litigation, defendant argues that plaintiffs should not be permitted to recover in federal court under § 1988. (Doc. No. 635 at 17222.) Defendant challenges 68 entries reflecting 89.75 hours billed by Thompson & Bishop for time spent in state Court. (Doc. No. 635-2.)

   In *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 105 S. Ct. 1923, 85 L. Ed. 233 (1985), the Supreme Court ruled that a teacher who prevailed in a federal civil rights action, brought under 42 U.S.C. § 1983, challenging his termination was not entitled to recover fees under § 1988 for time spent pursuing optional administrative remedies before the local school board. The Court based its ruling on two findings. First, it determined that these administrative proceedings were not "proceedings to enforce" § 1983 because they were not required as a perquisite to seeking relief under the federal statute. Second, the Court found that time spent in these proceedings was not "reasonably expended" on the litigation, as that term is understood under *Hensley*, rejecting the plaintiff's argument that the time spent in the administrative hearing amounted to discovery, research, or investigation for the civil rights litigation. *Id.* at 242. While

---

[21] At least five of the entries highlighted by the City did not involve time exclusively limited to the representation of these former plaintiffs. For example, attorney Thompson's April 3, 2008 entry claims 8 billing hours and reads: "Depositions – Derrenberger, Robson, Hull, Santee, Schueller." (Doc. No. 615-14 at 16818.) Two of these individuals—Derrenberger and Robson—were not dismissed from this action, and the Court has determined, from looking at their filed deposition transcripts, that the time spent attending their depositions (approximately one hour) is compensable. Of course, the Court should not have to undertake its own investigation into the record to make these determinations and this entry is a further example of the dangers of block billing.

the Court noted that prevailing civil rights plaintiffs are entitled to recover fees for some pre-filing activities, the Court also noted that the plaintiff "did not suggest that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation[.]" *Id*. at 243.

> Here, plaintiffs argue that:

> Thompson & Bishop reasonably billed and used billing judgment in the Summit County aspect of this case. Plaintiffs had sought a temporary restraining order in state court in order to receive the promotional examination documents. Thompson & Bishop also suggested that the parties enter into a protective order. This work was part of the core of the facts of this case and therefore, compensable. At a minimum, at least two of Akron's trial witnesses in December 2008—Stacey Doty and Ruth Miller Salmon—testified during the Summit County proceeding. The prior testimony obtained during the Summit County case was utilized by Plaintiffs during the December 2008 trial to further their case, and ultimately succeed in obtaining favorable verdicts.

(Doc. No. 689 at 17878.)

The Court finds that, even if some of the time spent pursuing the state litigation could be considered "useful and of a type ordinarily necessary to advance the civil rights litigation," the focus of the state court action was the prosecution of an unsuccessful TRO and the pursuit of purely state law claims. At a minimum, defendant would be entitled to a reduction in the number of hours billed to the state court action that did not advance their constitutional claims and, without more detailed descriptors for the work performed in state court, a line-by-line review is not possible.

### e)    *Clerical/administrative work*

The City also challenges 218.35 hours claimed for work that it believes was non-compensable because it related to "clerical and administrative tasks" including drafting emails about conference call-in numbers, scheduling depositions, copying and preparing exhibit books,

creating spreadsheets, and drafting transmittal letters. (Doc. No. 635-2; Doc. No. 680-1; Doc. No. 809-1.) Most of the challenged entries were recorded by Tammy Byers, a paralegal with Thompson & Bishop, though some work was performed by attorneys.

Fees for paralegal services are recoverable, as the term "attorney fees" embraces fees of paralegals as well as attorneys. *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580, 128 S. Ct. 2007, 170 L. Ed. 2d 960 (2008). Activities such as filing service requests, and filing return-of-service forms are clerical tasks that may be considered sufficiently "legal work" to permit compensation, although any compensation would be at a lesser rate. *Rodriguez v. Astrue*, No. 3:11CV398, 2012 WL 2905928, at *3 (N.D. Ohio July 16, 2012) (quotation marks and citation omitted). Still, "[p]urely clerical or secretarial tasks, that is, non-legal work, should not be billed—even at a paralegal rate—regardless of who performs the work." *Bernhart v. Comm'r of Soc. Sec.*, No. 5:12CV2367, 2013 WL 3822141, at *2 (N.D. Ohio July 23, 2013) (quoting *Rodriguez*, 2012 WL 2905928).

The Court has reviewed the contested entries and finds that the City's objections are largely without merit. While some of the cited routine work performed by counsel should have been performed by a paralegal—especially numerous entries from attorney Elfvin, the highest billing attorney on the case (and thus an adjustment for the *attorneys* performing such work is in order)—the Court notes that the vast majority of the challenged entries were performed by paralegals. Of those entries, most appear to have involved work properly performed by a paralegal. *See Cmty. for Equity v. Mich. High Sch. Athletic Ass'n*, 1:98-CV-479, 2008 WL 906031, at *13 (W.D. Mich. Mar. 31, 2008) (compiling witness lists and trial notebooks, and scheduling depositions, treated as paralegal work). Even the case authority relied upon by the

City suggests that most of the entries could legitimately be considered "legal work," and, thus, properly billed, though perhaps at a reduced rate.[22] *See Bernhart*, 2013 WL 3822141, at *3 (filing the complaint, faxing and mailing information to an agency, and calling the agency regarding a stipulation all treated as properly compensable as paralegal work).

### f)  Fees related to damages and sanctions

According to the City, plaintiffs should be precluded from recovering any fees for the time spent on damages prior to and during the trial in 2008 (or the 2011-12 retrial on damages), due to counsel's poor presentation that purportedly resulted in the need for a new trial. (Doc. No. 635 at 17226-27.) It also believes that fees associated with the appeal of the sanctions order issued by the district court should be denied, given that plaintiffs' misleading and deceptive conduct regarding their damages calculations also added unnecessary cost and delay to these proceedings. (Doc. No. 680 at 17746; Doc. No. 680-1; Doc. No. 809 at 19303.) Finally, the City seeks to prevent plaintiffs from recovering fees for what it deems counsel's own mistakes, neglect, or failure to follow court orders.[23] (Doc. No. 635 at 17224-25.)

---

[22] A finding that these entries are compensable is especially appropriate where, like here, small firms are involved. Courts have refused to strike billing entries for attorneys and paralegals who perform routine work if they are not involved in large law practices because they lacked the support staff to delegate these tasks to lower level and/or clerical staff. *See Waldo v. Consumers Energy Co.,* No. 1:06CV768, 2012 WL 1085190, at *4 (W.D. Mich. Mar. 30, 2012) (rejecting argument that attorneys and paralegals billed for administrative or clerical tasks, noting that the "allocation of assigned work to the legal and support staff in Plaintiff's counsel's law firm is entirely reasonable for a firm consisting of seven attorneys"); *Cmty. for Equity*, 2008 WL 906031, at *13 (citing *Roberts v. Natl'l Bank of Detroit*, 556 F. Supp. 724, 728 n.1 (E.D. Mich. 1983) (similar)).

[23] The City challenges time it views as time spent correcting attorney "mistakes" resulting from failing to comply with court orders. Defendant points out that plaintiffs billed 51.60 hours on amending their proposed findings of fact and conclusions of law. (Doc. No. 635 at 17224-25.) Plaintiffs maintain  that counsel was not correcting a mistake, "[i]nstead, the time was spent locating and adding citations from the trial record to the findings, as directed by the Court *after* the first proposed findings were submitted." (Doc. No. 689 at 17873.) While the Court finds that the amount of time spent on this task was excessive, a properly reduced amount for this task is recoverable.

32

The Court begins with fees associated with damages. The Court has reviewed the transcript from the 2008 trial. While counsel's presentation of damages evidence was not a model of clarity, the Court is aware that there can be any number of reasons why a jury may "lose its way" during its deliberations. There are no guarantees at trial, and even the most polished and well-organized presentations may not secure the results anticipated by counsel. The question before the Court is whether the expenditure of counsel's time was reasonably expended on the litigation. *See Hensley*, 461 U.S. at 433. While a reduction may be appropriate to reflect the unnecessarily lengthy route taken by counsel to achieve success for their clients, the Court cannot say that some properly reduced amount was not reasonably expended on the litigation. Consequently, it will not deny plaintiffs their right to attorney's fees for their counsel's effort to secure damages and, thereby, more fully vindicate their clients' civil rights.[24] *See also Blanchard v. Burgeron*, 489 U.S. 87, 96, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (Section 1988 plays an important role in civil rights litigation).

The fees associated with the efforts to appeal the district court's sanctions order are a different story. Plaintiffs argue that the time spent pursuing an improvident interlocutory appeal is properly compensable because they ultimately prevailed on the issue, "insofar as the trial court vacated all monetary sanctions award[ed] against the attorneys largely relying on Judge Gilman's concurring opinion in" the decision dismissing the appeal for want of jurisdiction. (Doc. No. 806

---

[24] It is entirely possible that the Court might have reached a different conclusion had it presided over the 2008 trial. While the Court has endeavored to thoroughly familiarize itself with the voluminous record in this case, there is no substitute for having presided over the proceedings. *See Howe*, 801 F.3d at 757 (recognizing that "fee applications are usually best handled by the district judge 'intimately familiar with the facts'") (quoting *Lavin v. Husted*, 764 F.3d 646, 652 (6th Cir. 2014)). A jurist with a more intimate understanding of how the facts unfolded at trial may have more fully appreciated the relationship between counsel's presentation of damages and the jury's verdicts, and may have found that a substantially higher reduction is appropriate in this category of fees. That said, the Court shall give plaintiffs the benefit of the doubt and treat this category of fees no differently than others when determining a reasonable and necessary fee.

at 19159.) Plaintiffs further posit that the Sixth Circuit, relying "on the work done to date[,]" found that the evidentiary sanction—the exclusion of certain damages evidence—was improper, leading to a reversal of the back pay award and, ultimately, a favorable settlement. *Id.* Because plaintiffs view the sanctions issues as "intertwined" with the rest of the litigation, they insist that they cannot be viewed as "discrete claims." (*Id.* (quoting *Hensley*, 461 U.S. at 435).)

The Court disagrees. Plaintiffs did not "prevail" on the issue of sanctions at any level. The district court reconsidered its sanctions order, not because it determined that plaintiffs' conduct during discovery was appropriate, but because it found it improper to impose sanctions against only one side when both sides had engaged in reprehensive behavior. (Doc. No. 722 at 18052.) Moreover, while it is true that reconsideration of the sanctions order was motivated, in part, by Judge Gilman's concurring opinion, it is important to note that Judge Gilman did not suggest that plaintiffs' conduct should not factor into a determination of fees. Likewise, while the Sixth Circuit reversed the evidentiary sanction, it did not absolve plaintiffs of liability for their actions, finding that their discovery disclosure on the eve of trial was simply "more likely the result of negligence, confusion, and lack of information [rather] than underhanded gamesmanship." *Howe*, 801 F.3d at 749. In remanding for a new trial on damages, the Sixth Circuit made clear that both sides were responsible for the toxic atmosphere their acrimonious behavior created. *Id.* at 757 (both sides engaged in "petty, scorched-earth litigation tactics"). Because plaintiffs also participated in this misconduct, it would be unreasonable to shift the entire burden of the cost of that misconduct to the City and the Court has not done so. Nonetheless, the plaintiffs must assume responsibility for the inefficiency caused by their eleventh hour reversal relative to damages calculations.

34

More to the point, the Court does not believe that the reach of the civil rights attorney's fees statutes are broad enough to allow a prevailing party to recover fees incurred, not to advance the civil rights litigation, but to defend their own litigation misconduct. Plaintiffs have not directed the Court to authority that would suggest otherwise.[25] While they ultimately secured back pay through settlement upon remand, plaintiffs would have received an award of back pay several years sooner but for their own (and that of their counsel's) impropriety. Accordingly, the Court finds that the fees associated with defending the imposition of sanctions were not "useful and of a type ordinarily necessary to advance the civil rights litigation[.]" *See Webb*, 471 U.S. at 243.

g)      *Post-February 1, 2014 fees for Thompson & Bishop*

Finally, the City objects to an award of fees for any time from February 1, 2014 to November 10, 2015 for the law firm of Thompson & Bishop, "as there is no authentication or verification of the hours or that the hours spent are reasonable." (Doc. No. 809 at 19296.) Because attorney Bishop died before she could supply an affidavit attesting to the reasonableness of the fees requested in the latest fee petition, the City believes that plaintiffs have failed to satisfy their burden of adequately documenting their request. (*Id*. at 19297 ("While it is an unfortunate collateral effect of the deaths of [attorneys Thompson and Bishop], as a matter of law and procedure, Akron cannot be held responsible for unverified time entries."). Defendant's position is without merit.

As previously noted, attorney Thompson attested to the fact that the firm of Thompson &

---

[25] In fact, courts have denied a party attorney's fees to which it was otherwise statutorily entitled as a sanction for attorney misconduct. *See, e.g., Lee v. Am. Eagle Airlines, Inc*., 93 F. Supp. 2d 1322 (S.D. Fla. 2000) (substantially reducing § 1988 fees for counsel's misconduct).

Bishop maintained contemporaneous time records. (Doc. No. 615-1 ¶ 11.) While the Court has some doubts as to this practice, the Court, for the most part, will take counsel at their word on this score. Further, attorney Thompson averred that he and attorney Bishop exercised billing judgment to reduce the number of hours submitted. (*Id.* ¶¶ 13-14.) In support of the current petition, plaintiffs have supplied the affidavit of Tammy Byers, Thompson & Bishop's paralegal, who has identified the time records attached to the latest fee petition as the firm's billing records. (Doc. No. 806-7 ¶ 3.) While Byers cannot attest to the reasonableness of the requested fees, her identification of the records, along with the Court's understanding of the law firm's billing practices, is sufficient to bring these records before the Court. In the end, it is the Court's job to determine whether any requested fee is reasonable, based on the totality of the record, and it is capable of performing this function without counsel's representation that the requested fees are reasonable.

### 4.  Across-the-Board Reduction

Given the voluminous nature of the fee documentation, coupled with the serious and repeated documentation deficiencies, the Court finds that "an-hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). The Court, instead, elects to follow the lead of other courts that have applied an across-the-board reduction to account for the afore-mentioned excessive, redundant, and questionable time entries. *See Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005) (approving of across-the-board approach to fee determination) (citation omitted); *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995) (across-the-board percentage cut is "a practical means of trimming the fat of a fee application") (quotation marks and citation

36

omitted); *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 419 (6th Cir. 2004) (noting that while cutting a percentage of hours may appear "arbitrary," it is an "essentially fair approach"). While the City urges a 50% reduction (which is not entirely unwarranted), the Court finds that, in conjunction with the Court's establishment of a reasonable hourly rate, a 35% reduction in hours claimed "represents a fair and expeditious solution to determining the sum total of reasonable fees" that plaintiffs have incurred litigating this civil rights action.[26] *Cobell v. Norton*, 407 F. Supp. 2d 140, 166 (D.D.C. 2005) (quotation marks and citation omitted); *see, e.g., Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 764 (N.D. Ohio 2010) (50% reduction for excessive billing and inadequate documentation); *Healthcall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, 632 F. Supp. 2d 676, 685 (E.D. Mich. 2009) (40% reduction in fees to account for inadequate "summaries" of activities); *Tinch v. City of Dayton*, 199 F. Supp. 2d 758, 764-65 (S.D. Ohio 2002) (fee reduced by 30% to account for duplicative hours and vague and inconsistent entries). This reduction accounts for counsel's excessive and block billing, overstaffing, and vague entries. Also factored into this percentage reduction is the reality that there are entire categories of activities for which no fees should have been sought. Though the Court considered imposing a larger reduction, the 35% selected rate reflects the fact that counsel achieved an excellent result for their clients, and that plaintiffs' counsel was not alone in causing the problems that unnecessarily delayed this action.

     5.  <u>Enhancement</u>

     Plaintiffs seek a fee enhancement by a 1.2 multiplier factor. Relying on the *Johnson*

---

[26] The Court shall not cut the hours claimed by paralegals in this case as the Court finds that those hours were generally reasonably expended.

factors, plaintiffs note that they litigated this case on a contingency basis for more than a decade, and that they did so at the expense of being unable to take other work. They also insist that the issues were novel as this case represented the first age discrimination impact disparate case in the country, and that, as a result, specialized skill was required to achieve an excellent result for their clients.

"The Supreme Court has emphasized that, although application of the *Johnson* factors is limited, upward adjustments are permissible in certain 'rare' and 'exceptional' cases." *Geier*, 372 F.3d at 793 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)). The Supreme Court has also stressed, however, that "there is a strong presumption that the lodestar is sufficient[.]" *Perdue*, 559 U.S. at 546.  The Court in *Perdue*, explained that:

> factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified.

*Id*. Thus, "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably [are] more fully reflected in the number of billable hours recorded by counsel.'" *Id*. at 553 (quoting *Blum*, 465 U.S. at 898). Likewise, "the quality of an attorney's performance generally should not be used to adjust the lodestar '[b]ecause considerations concerning the quality of the prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" *Id*. (quoting *Delaware Valley I*, 478 U.S. at 566).

The Court finds that the lodestar amount already adequately reflects the *Johnson* factors such that an enhancement is not warranted. The number of billable hours recorded by counsel

adequately takes into account the novelty and complexity of the case, especially when that number is used in connection with a current—rather than historic—*reasonable* billing rate. The contingent nature of counsel's engagement is also adequately reflected in the billing rate, especially in light of the fact that counsel received two generous interim payments. Additionally, the Court has already adjusted the hourly rate to fully reflect the experience and skill of counsel and the success they achieved for their clients, and, given some of the shortcomings or miscues of counsel recounted in this opinion, the Court finds that plaintiffs have not demonstrated their counsel's performance warrants an additional adjustment.

6.  Lodestar Amount

Applying a 35% reduction in hours claimed to the hourly rates approved for counsel, the Court awards plaintiff's additional attorney's fees in the aggregate amount of $984,502.50 broken down by attorney as follow:

| THOMPSON & BISHOP – Fees Through December 30, 2010 | | | | |
|---|---|---|---|---|
| Biller | Hours Requested | Hours Awarded | Rate | Amount |
| Dennis R. Thompson | 1,299 | 845 | $  350.00 | $  295,750.00 |
| Christy B. Bishop | 1,016.2 | 661 | $  275.00 | $  181,775.00 |
| Tammy Byers (Paralegal) | 112.25 | 112.25 | $    90.00 | $    10,102.50 |
|  |  |  | Sub-total: | $  487,627.50 |

| THOMPSON & BISHOP – Fees December 31, 2010 through December 14, 2015 | | | | |
|---|---|---|---|---|
| Biller | Hours Requested | Hours Awarded | Rate | Amount |
| Dennis R. Thompson | 800.9 | 521 | $  400.00 | $  208,400.00 |
| Christy B. Bishop | 1,005.55 | 654 | $  325.00 | $  212,550.00 |
| Tammy Byers (Paralegal) | 111.45 | 111.45 | $  100.00 | $    11,145.00 |
|  |  |  | Sub-total: | $  432,095.00 |

| ELFVIN &  BESSER – Fees Through December 30, 2010 | | | | |
|---|---|---|---|---|
| Biller | Hours Requested | Hours Awarded | Rate | Amount |
| Bruce B. Elfvin | 555.5 | 362 | $  375.00 | $  135,750.00 |
| Barbara Kaye Besser | 67.8 | 45 | $  350.00 | $  15,750.00 |
| Stuart Torch | 57.2 | 38 | $  200.00 | $  7,600.00 |
| Christina M. Royer | N/A | N/A | N/A | $  0.00 |
| Sara Tackett | N/A | N/A | N/A | $  0.00 |
| Kathleen J. Sanz | N/A | N/A | N/A | $  0.00 |
| Law Clerks | 8.3 | 6 | $  80.00 | $  480.00 |
| Paralegal | 20.5 | 20.5 | $  90.00 | $  1,845.00 |
| | | | Sub-total: | $  161,425.00 |

| ELFVIN &  BESSER – Fees December 31, 2010 through December 14, 2015 | | | | |
|---|---|---|---|---|
| Biller | Hours Requested | Hours Awarded | Rate | Amount |
| Bruce B. Elfvin | 1,049.8 | 683 | $  425.00 | $  290,275.00 |
| Barbara Kaye Besser | 138.4 | 90 | $  400.00 | $  36,000.00 |
| Stuart Torch | 451.1 | 294 | $  225.00 | $  66,150.00 |
| Christina M. Royer | 8.4 | 6 | $  260.00 | $  1,560.00 |
| Sara Tackett | 18.7 | 13 | $  145.00 | $  1,885.00 |
| Kathleen J. Sanz | 20 | 13 | $  145.00 | $  1,885.00 |
| Law Clerks | 91.6 | 60 | $  90.00 | $  5,400.00 |
| Paralegal | 2 | 2 | $  100.00 | $  200.00 |
| | | | Sub-total: | $  403,355.00 |

| ATTORNEYS' FEE AWARD | | | |
|---|---|---|---|
| Law Firm | Total Fees | Less Interim Award | Balance of Award |
| Thompson & Bishop | $  919,722.50 | $  372,500.00 | $  547,222.50 |
| Elfvin & Besser | $  564,780.00 | $  127,500.00 | $  437,280.00 |
| | | | |
| Total Attorneys' Fees | $1,484,502.50 | $  500,000.00 | $  984,502.50 |

The Court finds that the total fee amount adequately recognizes the success counsel achieved for their clients, while ensuring that the charged fees are not excessive.

### B.  Plaintiffs' Request for Costs and Expenses

As part of their fee petitions, plaintiffs also seek costs and expenses associated with this civil rights litigation. Although it is not entirely clear from these applications, it appears that plaintiffs are relying on both Rule 54(d) and 42 U.S.C. § 1988 to support their requests for costs. (Doc. No. 668 at 17473-74.) *See Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d

624, 639 (6th Cir. 1979). The first source, Rule 54(d), provides that costs are generally allowed to the prevailing party. Fed. R. Civ. P. 54(d). While Rule 54(d) creates a presumption in favor of an award of costs, a court's discretion to award costs is also limited by the statutory definition of costs in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons Inc.*, 482 U.S. 437, 441-42, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987); *Frye v. Baptist Mem'l Hosp., Inc.*, 863 F. Supp. 2d 701, 704 (W.D. Tenn. 2012) (citing, among authority, *Knology, Inc. v. Insight Commc'ns Co.*, 460 F.3d 722, 726 (6th Cir. 2006)). Pursuant to 28 U.S.C. § 1920, the following costs may be recovered:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed and electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

In reviewing a request for costs under Rule 54(d), a court must look "first to whether the expenses are allowable cost items and then to whether the amounts are reasonable and necessary." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 591 (6th Cir. 2004) (citation omitted). The prevailing party has the burden of establishing that the expenses it seeks to have taxed as costs "are authorized by applicable federal law, including proof of necessity and reasonableness under 28 U.S.C. § 1920." *Berryman v. Hofbauer*, 161 F.R.D. 341, 344 (E.D.

Mich. 1995) (citation omitted); *see also Elabiad v. Trans-West Exp.*, *LLC*, No. 3:03CV7452, 2006 WL 1866137, at *1 (N.D. Ohio June 30, 2006) ("“[i]n order to award costs to a prevailing party, the court must determine that the expenses are allowable cost items and that the amounts are reasonable and necessary'”) (quoting *Baker v. First Tenn. Bank Nat'l Assoc.*, 142 F.3d 431, at *2 (6th Cir. 1998) (unpublished table decision)).

The second source plaintiffs look to is 42 U.S.C. § 1988. "Recoverable out-of-pocket expenses are those 'incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as '[r]easonable photocopying, paralegal expenses, and travel and telephone costs.'"[27] *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (quoting *Northcross*, 611 F.2d at 639); *see Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1023 (N.D. Ohio 1997). It is the role of the district court to determine whether such costs were reasonable and necessary. *Waldo*, 726 F.3d at 827 (citing *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *8 (6th Cir. 2000) (quotation marks omitted)).

The City challenges several categories as non-recoverable under federal law. Defendant also insists that some costs sought by plaintiffs—though legally recoverable in federal court—are not properly documented such that the Court can determine whether they were reasonably incurred in the course of the litigation. The Court addresses each category in turn.

   1.  <u>State Court Action</u>

Plaintiffs seek to recover a variety of costs and expenses, including filing fees, associated with certain litigation in state court, particularly that which is related to the motion for a

---

[27] Costs and expenses are also available to the prevailing plaintiff under Title VII. *See* 42 U.S.C. § 2000e-5(k).

temporary restraining order. Also, while § 1920 provides for a recovery of "fees of the clerk[,]" this refers only to the fees of the "clerk of *this* Court," and not fees paid to state clerks or agencies. *TD Prop., LLC v. VP Bldgs., Inc.*, 635 F. Supp. 2d 123, 125 (D. Conn. 2009) (emphasis added). Further, because the Court has already determined that attorney's fees are not available for most of the legal work performed in the state court action, costs and expenses associated with that non-compensable work are not available under the relevant civil rights statutes. These costs and expenses are disallowed.

2.      <u>Legal Research</u>

The City objects to the claimed legal research costs incurred by plaintiffs' counsel, such as Westlaw and Lexis charges. Online legal research fees are not listed in § 1920, and are, therefore, not recoverable under Rule 54(d). *See Vistein v. Am. Registry of Radiologic Tech.*, No. 1:05CV2441, 2010 WL 918081, at *5-6 (N.D. Ohio Mar. 10, 2010) (collecting cases finding Westlaw and Lexis charges not recoverable under § 1920). While the Sixth Circuit has yet to address the question of whether such expenses are recoverable under § 1988, other circuits and district courts within the Sixth Circuit have treated such costs as reasonable out-of-pocket attorney expenses. *See Cmty. for Equity*, 2008 WL 906031, at *23 (collecting cases from the Third, Seventh, Tenth, and District of Columbia Circuit Courts and finding such costs "routinely billed to clients and . . . necessary in the studied practice of law"); *see, e.g., Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, at *19 (N.D. Ohio Mar. 31, 2009) (allowing legal research costs under § 1988) (citations omitted). The Court finds these expenses to have been reasonably incurred by counsel, and of the kind generally billed to a client in the course of providing legal services and, therefore, recoverable.

3.     Mediation Costs

In their second supplemental application, plaintiffs seek reimbursement for a $500 mediation fee and $1,587.50 charged by attorney William Dowling in a private, mutually agreed upon mediation. Plaintiffs cite no authority to suggest that such expenses are recoverable under § 1988. Moreover, "[s]ection 1920 does not list mediator fees or mediation fees as a taxable cost." *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2010 WL 989802, at *4 (W.D. Mich. Mar. 16, 2010) (collecting cases denying mediation fees under 28 U.S.C. § 1920). Accordingly, plaintiffs are not entitled to recover these costs. *See, e.g., Madison Capital Co., LLC v. S & S Salvage, LLC*, Civil Action No. 4:08-CV-134-JHM, 2010 WL 3667673, at *6 (W.D. Ky. Aug. 22, 2011).

4.     Copying Costs

Over their three applications, plaintiffs seek more than $6,000 in copying costs. The City challenges these costs primarily upon the basis that plaintiffs have provided insufficient documentation to support their requests. "As a general rule, a prevailing party can recover costs to photocopy 'papers necessarily obtained for use in the case.'" *Vistein*, 2010 WL 918081, at *8 (quoting 28 U.S.C. § 1920(4)). Photocopying expenses are also reimbursable as an attorney's out-of-pocket expense under § 1988. *See Waldo*, 726 F.3d at 827 (citing *Northcross*, 611 F.3d at 639). Permissible photocopying expenses include "costs for photocopying documents necessary for maintenance of the action, including copies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the court's consideration." *Charboneau v. Severn Trent Labs., Inc.*, No. 5:04-CV-116, 2006 WL 897131, at *1 (W.D. Mich. Apr. 6, 2006) (quotation marks and citations omitted).

44

"Copying costs are generally limited to those costs incurred for copies of documents prepared for the court's consideration or for the opposing party." *Id.* (quotation marks and citations omitted). Costs for copies made only for the convenience of counsel are not recoverable. *Visteon*, 2010 WL 918081, at *8 (citations omitted); *Charboneau Severn Trent Labs.*, 2006 WL 897131, at *1 (citations omitted).

The party seeking reimbursement for copying costs bears the burden of coming forward with documentation that shows that the costs were necessarily incurred for use in the case. *Hartford Fin. Servs. Grp., Inc. v. Cleveland Pub. Library*, No. 1:99 cv 1701, 2007 WL 963320, at *9 (N.D. Ohio Mar. 28, 2007); *see Bowling v. Pfiser, Inc.*, 132 F.3d 1147, 1152 (6th Cir. 1998) (courts should scrutinize photocopying expenses and should not simply "rubber stamp" such costs). In support of their requests, plaintiffs have offered affidavits attesting to the general reasonableness of all costs and that they are the type typically billed to a client. (Doc. No. 668-1 ¶ 11; Doc. No. 668-5 ¶ 10; Doc. No. 806-1 ¶ 9.) Plaintiffs also offer invoices setting forth the specific copying expenses. While some of the entries indicate the nature of the documents being copied (including copying expenses incurred for the state law case which are not compensable here), many simply provide that they represent "in-house copying." Where, as here, the documentation does not adequately permit the Court to determine whether the costs are properly recoverable and not simply incurred for the convenience of counsel, the Court is permitted to reduce the number of copies to account for impermissible copying charges. *See, e.g., Charboneau*, 2006 WL 897131, at *2 (reducing by 75% non-itemized photocopying costs and collecting cases providing percentage reduction in reimbursable copies). Plaintiffs total copying expenses do not seem entirely disproportionate to the number of years this action has been

pending. Nonetheless, a reduction is necessary to account for non-reimbursable copies.

     5.   <u>Transcripts</u>

Plaintiffs seek to recover $19,901.35 for fees for transcripts from trials, hearing, depositions, and telephone conferences. (Doc. No. 614 at 16656-59; Doc. No. 667 at 17448, 17451, 17457, 17462, 17463; Doc. No. 668-4 at 17501-03; Doc. No. 806-8 at 19258-64.) According to plaintiffs, these transcripts were "necessarily obtained for use in the case." (Doc. No. 614 at 16656-59.); *see Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989) ("Ordinarily, the costs of taking and transcribing depositions reasonably necessary for litigation are allowable to the prevailing party."); 28 U.S.C. § 1920(2) (Allowable costs include "[f]ee for printed or electronically recorded transcripts necessarily obtained for use in the case[.]").

While the City does not challenge plaintiffs' general right to recover certain expenses associated with the creation of the transcripts, it insists that plaintiffs have sought certain ancillary charges—such as multiple transcripts, DVD duplication, shipping, emailing charges, compressed transcript fees, binding, postage, CD-litigation support, and Raindaince—which are not compensable. *See Whirlpool Corp.*, 2011 WL 3321291, at *12 (disallowing postage charges associated with deposition orders); *Vistein*, 2010 WL 918081, at *6 (collecting cases providing that costs of condensed transcripts and other computerized legal support for depositions were not recoverable). The Court agrees that these charges are not recoverable.

Plaintiffs also include costs associated with obtaining *hourly* trial transcripts of the 2008 trial. The Court has discretion to consider whether daily trial transcripts were necessary for proper preparation at trial. *See White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732 (6th Cir. 1986). Plaintiffs have failed to even address the need for expedited trial transcripts

at all, let alone explain why they required hourly trial transcripts, which were the most expensive transcription option available to them. (*See, e.g.*, Doc. No. 668-4 at 17607.) These expenses are disallowed.[28]

Finally, plaintiffs seek to recover $400.50 for a "TRO" transcript in the Summit County case. (Doc. No. 688-4 at 17501.) For all the reasons set forth above, this expense from the state court case is not recoverable here. *See Caudill v. Sears Transition Pay Plan*, No. 06-12866, 2011 WL 1595044, at *1 (E.D. Mich. Apr. 26, 2011) (denying costs of deposition noticed in a related case) (citation omitted); *Am. Auto. Accessories, Inc. v. Fishman*, 991 F. Supp. 995, 997 (N.D. Ill. 1998) (disallowing cost of depositions because "depositions were not 'necessarily' obtained for use in *this* case[,]" but rather for use in a separate state court case).

### 5.  Expert Fees

Plaintiffs also seek to recoup the fees, costs, and expenses associated with the experts they employed in this case. The City challenges these expenditures in their entirety. "Section 2000e-5(k) permits a court to award the prevailing party in a Title VII action 'a reasonable attorney's fee (including expert fees).' A plain reading of the statute confirms that expert fees are included within, or a subset of, attorney's fees." *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 592 (6th Cir. 2013) (citing, generally, *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978)). "The benchmark for awarding expert fees under the statute is reasonableness—a court may award 'a reasonable attorney's fee (including expert fees)." *Id*. at

---

[28] In contrast, plaintiffs might have been able to demonstrate a need for expedited transcripts for the damages trial, inasmuch as that was a bench trial and the district court requested that the parties file proposed findings of fact and conclusions of law. *See Knop*, 712 F. Supp. at 591 ("Where a trial is long and involves complex issues or where the Court requires proposed findings of fact from the parties, transcript costs are generally allowed.") (citations omitted). In any event, plaintiffs made no effort to justify any of these expenses.

594 (quoting 42 U.S.C. 2000e-5(k)). The party requesting expert fees and costs must come forward with sufficient documentation to enable the district court to test the reasonableness of the request. *Id*. at 594-95 ("The statute requires that the expert fees be reasonable, and if the moving party did not present the court with adequate documentation, there would be no basis for the court to decide whether the fee was reasonable.").

In *Peoplemark*, the defendant, as the prevailing party, was awarded fees associated with the retention of an expert. On appeal, the non-prevailing party argued that the district court abused its discretion by awarding expert fees, suggesting that the documentation was legally inadequate. The Sixth Circuit rejected the argument. While the bill used generic descriptors–such as "research" or "document preparation" or "telephone conference and review"—the court held that these entries were sufficient. In reaching this conclusion, the court found that the expert's declaration, along with his twenty-four page bill, provided enough description from which the district court could assess the reasonableness of the expenses. *Id*. at 595.

In contrast, here, the Court has before it nothing but generic descriptors to guide its analysis. For example, plaintiffs have submitted an invoice that merely provides "Expert costs from Bellenger, Brink, and Crenshaw (see enclosed invoice) . . . $24,250.00." (Doc. No. 614 at 16678.) The referenced invoice offered no more clarity as to the nature of these fees, as it merely stated in a one-line item "Expert review of City of Akron Fire Lieutenant & Fire Captain selection processes[,]" with a stated unit price of $200 per hour. (*Id*. at 16682.) Plaintiffs' bill of costs and fee petitions—which are littered with these vague and perfunctory entries—are woefully inadequate to support the court's reasonableness analysis. (*See, e.g*., Doc. No. 614 at 16700 ("Expert Services . . . EB Jacobs . . . $1,500").) It appears that the plaintiffs' request for

48

costs and expenses suffers from many of the same deficiencies that plagued their fee request. Because of this, a reduction is in order. *See, e.g., Libertarian Party of Ohio v. Brunner*, No. 2:04-CV-08, 2007 WL 4171630, at *4 (S.D. Ohio Nov. 20, 2007) (striking the entire requested expert fee due to "total absence of support for the amount and no separation of the fee for time and services versus the ordinary witness costs").

The only documentation that approaches the level sufficient to support a reasonableness analysis is that of Robert J. Johnson, Ph.D. In addition to the generic invoices for Dr. Johnson's services, plaintiffs also submit letters from Dr. Johnson that contain breakdowns of the services performed by this expert in the litigation. (Doc. No. 614 at 16683-84, 16706-07, 16735-36.) In addition, the Court has undertaken its own review of the expert testimony Dr. Johnson offered in the 2008 trial during which he described, in detail, the complex statistical analysis he performed on behalf of plaintiffs. (Doc. No. 203 at 5434-5484.) While Dr. Johnson's letters rely on generic descriptors, such as "Phone consult" and "Review documents," the Court finds that the breakdowns in the letters, in combination with the expert's testimony at trial, provide the Court with enough information from which to evaluate the reasonableness of the services performed.

As is often true with disparate impact litigation, statistical evidence played a critical role in establishing liability in this case. Because there is no direct evidence of discrimination, plaintiffs alleging a disparate impact must come forward with statistical evidence that supports their entitlement to relief. Thus, given the nature of this case, coupled with the Court's self-guided review of the record, the Court finds that the services of Dr. Johnson were reasonably performed in the context of this litigation, and, therefore, the fees and expenses associated with his services are recoverable.

The Court also finds some record support for the expert work performed by Kyle Brink. Though the details of the services Mr. Brink has provided have not been supplied to the Court, it appears—again, from the Court's own investigation—that this particular expert was employed for the purpose of consulting with the court monitor to facilitate the last promotional cycle. As such, the Court finds that plaintiffs are entitled to recover a portion of Mr. Brink's expert fee, properly reduced to reflect the lack of adequate documentation supporting the costs sought.

7. <u>Miscellaneous Costs and Expenses</u>

Finally, the City challenges a variety of expenses—including attorney travel, meals, lodging, long-distance phone calls, parking, and conference room fees as non-compensable under § 1920. While they may not be recoverable under § 1920, the Court finds that some of these expenses are recoverable under the relevant civil rights statutes as out-of-pocket expenses of an attorney normally billed to a client. *See Waldo,* 726 F.3d at 827 (citing *Northcross,* 611 F.2d at 639). Once again, however, the document supporting these costs and expenses is inadequate. A significant deduction would be necessary before any such costs could be awarded. Additionally, the Court does not believe the City should have to pay the costs associated with attorney Elfvin's travel from Cleveland and hotels in Akron. As the Court has already determined, plaintiffs have failed to justify why they needed to involve a Cleveland attorney when they had already employed the preeminent local disparate impact firm, and plaintiffs cannot, therefore, demonstrate that these costs were reasonably incurred as out of pocket attorney expenses.

8. <u>Award of Costs and Expenses</u>

Determining what categories of costs and expenses are legally permissible generally is a relatively straightforward task. However, determining plaintiffs' actual requests for

50

reimbursement is an impossible endeavor in light of the insufficient documentation plaintiffs have supplied. In addition to the deficiencies identified above, the Court has found evidence of internal inconsistencies and duplicative billing. The Court has attempted to reconcile the documents with plaintiffs' requests for reimbursement but has been forced to conclude that a line-by-line review of each invoice and cost statement would be impractical and a waste of judicial resources. As it did with its determination of attorney's fees, the Court elects to apply a 35% across-the-board reduction to plaintiffs' request for costs and expenses. The Court awards plaintiffs the total amount of $86,266.61 to the law firm of Thompson & Bishop and $3,369.08 to the law firm of Elfvin & Besser as reasonably incurred costs and expenses. This amount reflects the exclusion of all expert fees—with the exception of all of the fees of Dr. Johnson and one-half of the fees charged by Dr. Brink.

The Court's breakdown of costs and expenses, by law firm, is as follows:

| THOMPSON & BISHOP – Costs and Expenses | | |
|---|---|---|
| Category | Requested | Awarded |
| Dr. Robert Johnson | $    20,031.50 | $    20,031.50 |
| CentrusPS | $    69,068.66 | $    34,534.33 |
| Dr. Jeanneret | $     2,502.00 | $          -0- |
| Dr. Jacobs | $     1,500.00 | $          -0- |
| All Other Costs and Expenses | $    48,770.43 | $    31,700.78 |
|  |  |  |
| Total Costs and Expenses | $   141,872.59 | $    86,266.61 |

| ELFVIN & BESSER – Costs and Expenses | | |
|---|---|---|
| Category | Requested | Awarded |
| All Costs and Expenses | $     5,183.20 | $     3,369.08 |

**III.    CONCLUSION**

For all of the foregoing reasons, the plaintiffs' motions for attorneys' fees and costs (Doc. Nos. 615, 668, and 806) are granted, in part. In addition to the interim attorneys' fees previously awarded (Doc. Nos. 390 and 644), the plaintiffs are awarded attorneys' fees and costs in the amount of One Million Seventy-Four Thousand One Hundred Thirty-Eight and 19/100 Dollars ($1,074,138.19), consisting of Nine Hundred Eighty-Four Thousand Five Hundred Two and 50/100 Dollars ($984,502.50) in attorneys' fees and Eighty-Nine Thousand Six Hundred Thirty-Five and 69/100 Dollars ($89,635.69).

**IT IS SO ORDERED**.

Dated: March 10, 2016

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**